**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:09-cv-2084 (RMU) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, CROSS-MOTION FOR SUMMARY JUDGMENT, AND REQUEST FOR ORAL HEARING**

Plaintiff the Electronic Privacy Information Center opposes Defendant's May 27, 2010 Motion for Summary Judgment, and cross-moves for summary judgment.

A statement of genuine issues regarding Defendant's statement of material facts, a memorandum of points and authorities, and a proposed Order are filed herewith.

Pursuant to LCvR 7(f), Plaintiff requests an oral hearing on the parties' cross-motions.

Respectfully submitted,
_____ */s/ John Verdi*_____
MARC ROTENBERG
JOHN VERDI
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: June 28, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June 2010, I served the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, CROSS-MOTION FOR SUMMARY JUDGMENT, AND REQUEST FOR ORAL HEARING, including all exhibits and attachments, by electronic case filing upon:

> JESSE Z. GRAUMAN
> U.S. Department of Justice
> Civil Division, Federal Programs Branch

> _____*/s/ John Verdi*_____
> John Verdi
> *Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **)** | | |
| ELECTRONIC PRIVACY ) | | |
| INFORMATION CENTER ) | | |
| ) | | |
| Plaintiff, ) | | |
| v. ) | No. 1:09-cv-2084 (RMU) | |
| ) | | |
| UNITED STATES DEPARTMENT OF ) | | |
| HOMELAND SECURITY ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff the Electronic Privacy Information Center ("EPIC") opposes Defendant U.S. Department of Homeland Security's ("DHS") May 27, 2010 Motion for Summary Judgment, and cross-moves for summary judgment in favor of EPIC. Specifically, EPIC: 1) challenges the DHS's withholding of "2,000 test images" produced by airport body scanners; 2) challenges the DHS's withholding of "376 pages of training documents" concerning airport body scanners; and 3) seeks an order compelling the DHS to pay EPIC's fees and costs for this lawsuit, because EPIC qualifies for such relief irrespective of the outcome of the parties' cross-motions for judgment.

### FACTUAL BACKGROUND

In February 2007, the Transportation Security Administration ("TSA"), a DHS component, began testing body scanner technology – also called "full body scanners," "advanced imaging technology," or "whole body imaging" – to screen air travelers. Body scanners produce detailed,

three-dimensional images of individuals. The TSA is routinely using body scanners at airport

security checkpoints, subjecting passengers to these detailed, under-garment examinations before

they board flights.

Initially, the TSA provided various assurances regarding the use of body scanners. The TSA

stated that body scanners would not be used for primary screening. The TSA further stated that the

images produced by the machines could not be stored, transmitted, or printed. The TSA also stated

that the use of the devices would not be mandatory, i.e. passengers would be able to avoid the

invasive search if they wished. And TSA stated that an algorithm is applied to the image to mask

portions of  each image so as to safeguard privacy.

The TSA's subsequent statements and actions contradict these assurances. The TSA

removed from its website assurances that its whole body imaging technology would "incorporate a

privacy algorithm" that will "eliminate much of the detail shown in the images of the individual

while still being effective from a security standpoint." The TSA now requires passengers to submit

to body scanner screening in place of the standard metal detector search for primary screening.

Agency records disclosed as a result of this lawsuit reveal that the TSA's body scanners' are able to

collect, store, and transmit body scanners images. The DHS possesses 2,000 body scanner images

that it has refused to disclose in this litigation. On April 6, 2009, TSA announced its plans to expand

the mandatory use of whole body imaging to all airports.

On April 14, 2009, EPIC transmitted, via certified mail, a written Freedom of Information

Act ("FOIA") request to DHS for agency records. ("EPIC's First FOIA Request")  EPIC requested

the following agency records:

1.  all documents concerning the capability of passenger imaging technology to
    obscure, degrade, store, transmit, reproduce, retain, or delete images of individuals;

2.  all contracts that include provisions concerning the capability of passenger imaging

        technology to obscure, degrade, store, transmit, reproduce, retain, or delete images of individuals; and

3. all instructions, policies, and/or procedures concerning the capability of passenger imaging technology to obscure, degrade, store, transmit, reproduce, retain, or delete images of individuals.

On July 2, 2009, EPIC transmitted, via certified mail, a written FOIA request ("EPIC's Second FOIA Request") to DHS for agency records.  EPIC requested the following agency records:

1. all unfiltered or unobscured images captured using Whole Body Imaging technology;

2. all contracts entered into by DHS pertaining to Whole Body Imaging systems, including contracts for hardware, software, or training

3. all documents detailing the technical specifications of Whole Body Imaging hardware, including any limitations on image capture, storage, or copying;

4. all documents, including, but not limited to, presentations, images, and videos, used for training persons to use Whole Body Imaging systems;

5. all complaints related to the use of Whole Body Imaging and all documents relating to the resolution of those complaints; and

6.  all documents concerning data breaches of images generated by Whole Body Imaging technology.

The DHS failed to make a timely determination concerning EPIC's First FOIA Request and EPIC's Second FOIA Request ("EPIC's FOIA Requests"), and failed to disclose any records within the FOIA's deadline. EPIC filed suit concerning EPIC's First FOIA Request on November 5, 2009, initiating this lawsuit. EPIC filed suit concerning EPIC's Second FOIA Request on January 13, 2010. *EPIC v. DHS*, No. 10-0063 (D.D.C. filed Jan. 13, 2010). Due to the overlapping subject matter of the two suits, the parties requested, and the Court ordered, the cases to be consolidated in the present action. Dkt. No. 16.

The TSA made its first disclosure in response to EPIC's FOIA requests on December 1,

2009. The agency has since completed its search for, and production of, records responsive to

EPIC's FOIA Requests. The DHS has withheld "2,000 test images" and "376 pages of training

documents" concerning airport body scanners pursuant to FOIA Exemptions 2 and 3.

Defendant's Motion for Summary Judgment (the "DHS Motion") at 4-5. These records contain

critical information that would be of interest to the public and the Congress as the debate over

this controversial program continues. It is essential that the agency fully comply with its

disclosure obligations as set out in the FOIA.

　　　As set forth below, EPIC challenges the propriety of those withholdings.

## STANDARD OF REVIEW

　　　Summary judgment is appropriate when there is no genuine issue as to the material facts,

and the moving party demonstrates it is entitled to judgment as a matter of law. Fed. R. Civ. P.

56; *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA lawsuits are typically

resolved on cross-motions for summary judgment. *Reliant Energy Power Generation v. FERC*,

520 F. Supp. 2d 194, 200 (D.D.C. 2007). A court reviews agency handling of a FOIA request *de

novo*. 5 U.S.C. § 552(a)(4)(B).

　　　The U.S. Supreme Court "repeatedly has stressed the fundamental principle of public

access to Government documents that animates the FOIA." *John Doe Agency v. John Doe Corp.*,

493 U.S. 146, 151-152 (1989). "The basic purpose of FOIA is to ensure an informed citizenry,

vital to the functioning of a democratic society, needed to check against corruption and to hold

the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

242 (1978).  The FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure

unless information is exempted under clearly delineated statutory language." *Dept. of the Air*

*Force v. Rose*, 425 U.S. 352, 360-361 (1976), quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965).

The FOIA includes exemptions from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. Therefore FOIA exemptions "must be narrowly construed." *Id*. Furthermore, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also EPIC v. Dept. of Homeland Security*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005).

## ARGUMENT

I.   **FOIA Exemption 3 Does Not Permit the TSA to Withhold the 2,000 Body Scanner Images and 376 Pages of Training Documents**

The DHS has wrongly asserted that it may withhold the records sought by EPIC under the "(b)(3)" exemption. FOIA Exemption 3 permits an agency to withhold responsive records "specifically exempted from disclosure by statute," if the statute

> (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

Subsection (i) authorizes agency withholdings under FOIA when a statute "absolutely forbid[s] disclosure" and leaves no discretion to the agency. *Westchester General Hospital, Inc. v. Department of Health, Education & Welfare*, 464 F. Supp. 236, 240 (M.D. Fla. 1979). Statutes that provide a basis for Exemption 3 withholdings under Subsection (i) specifically identify the exempt documents, leaving no discretion to the agency. *E.g.* 42 U.S.C. § 2000e-5(b) (barring disclosure of "charges" filed in EEOC proceedings); 50 U.S.C. § 403g (prohibiting disclosure of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [Central Intelligence] Agency.").

5

Subsection (ii) authorizes agency withholdings under FOIA when a statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." A statute provides a basis for withholding under Subsection (ii) "if, but only if," the law "incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 629 (D.C. Cir. 1978). Statutes constitute a proper basis for Exemption 3 withholdings only when "Congress has itself made the basic decision, and has left to the administrator only the task of administration." *Kreps*, 574 F.2d at 630. "A central aim of the Freedom of Information Act has been to substitute legislative judgment for administrative discretion." *Kreps*, 574 F.2d at FN 34

Exemption 3 is "explicitly confined to material exempted from disclosure 'by statute,'" and does not apply to non-statutory rules and regulations. *Founding Church of Scientology, Inc. v. Bell*, 603 F.2d 945, 952 (D.C. Cir. 1979) (rejecting Exemption 3 withholding based on non-statutory federal rules). An agency may not base an Exemption 3 withholding on a mere rule, even if the rule was issued "under rulemaking powers delegated by Congress." *Id*.

The DHS argues that two statutes, 49 U.S.C. §§ 114(r) and 46110, and one regulation, 49 C.F.R. § 1520.5, justify its Exemption 3 withholdings in this case. DHS Motion at 11-13. However, neither statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." And Section 1520.5 is a regulation, not a statute, and therefore fails to meet the threshold test for consideration as a basis for an Exemption 3 claim.

       *a.*       *Section 46110 Does Not Apply to DHS's Exemption 3 FOIA  Determination*

6

Section 46110 sets out the agency procedure governing challenges to TSA orders, not the processing of FOIA requests. *See, e.g.,* 49 U.S.C. § 46110(a) ("a person disclosing a substantial interest in an order issued by the Secretary of Transportation … may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit …"); 49 U.S.C. § 46110(b) ("When a petition is filed under subsection (a) of this section, the clerk of the court immediately shall send a copy of the petition to the Secretary …"); 49 U.S.C. § 46110(b) ("When the petition is sent to the Secretary, Under Secretary, or Administrator, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order …") *see also* DHS Motion at 12.

Section 46110 does not contain any language concerning FOIA, Exemption 3, or withholding documents from public disclosure. The statute does not "require that the matters be withheld from the public" or "establish particular criteria for withholding." Section 46110 therefore provides no basis for the DHS's assertion of Exemption 3.

      *b.*      *Section 114(r) is Not a (b)(3) Statute and Does Not Justify the DHS Withholdings*

The DHS also argues that Section 114(r) provides a basis for its Exemption 3 withholdings in this case. However, Section 114(r) does not support the DHS's Exemption 3 claims because it grants the TSA unfettered discretion and fails to "establish particular criteria for withholding or refer to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Indeed, Section 114(r) is exactly the sort of broad, vague, discretionary provision that Congress explicitly eliminated as a basis for Exemption 3 claims in the 1976 FOIA amendments.

Section 114(r) authorizes the TSA to issue regulations barring the disclosure of information "if the Under Secretary decides that disclosing the information would … be detrimental to the security of transportation." 49U.S.C. § 114(r)(1).

7

The FOIA permits two types of statutes to provide a basis for an Exemption 3 withholding: 1) laws that "absolutely forbid disclosure," leaving no discretion to the agency; and 2) laws that "incorporate a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." *Westchester*, 464 F. Supp. at 240; *Kreps*, 574 F.2d at 629. Section 114(r) plainly vests discretion in the TSA concerning what documents might be "be detrimental to the security of transportation." Therefore, Section 114(r) does not "absolutely forbid disclosure," leaving no discretion to the agency. Section 114(r) also fails to "establish particular criteria for withholding or refer to particular types of matters to be withheld."

The "particular criteria" language has been interpreted to limit Exemption 3 to statutes where "Congress has itself made the basic decision, and has left to the administrator only the task of administration." *Kreps*, 574 F.2d at 630. Exemption 3's "unmistakable thrust … is to assure that basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch." *Id*. at 629. An agency may withhold records under the "particular criteria" standard "if, but only if, the [underlying statute] is the product of congressional appreciation of the dangers inherent in airing particular data and *incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw*." *Id.,* emphasis added.

Courts uphold Exemption 3 withholdings only if they are based on statutes that describe specific, narrow categories of documents. *E.g.*, *ACLU v. FBI*, 429 F. Supp. 2d 179, 189 (D.D.C. 2006) (providing that tax "returns and return information" are exempt under 26 U.S.C. § 6103(a)); *Irons & Sears v. Dann*, 606 F.2d at 1220 (upholding Exemption 3 claim based on 35 U.S.C. § 122, which provides "applications for patents shall be kept in confidence by the

Patent and Trademark Office ..."). These statutes describe specific kinds of records that are exempt from disclosure: tax returns and patent applications. They do not purport to exempt broad categories of records or give the agency broad authority to exempt records. These statutes provide clear guidelines for what documents may not be disclosed, and provide a proper basis for Exemption 3 withholdings.

Conversely, Section 114(r) is not particular enough to demonstrate that "Congress has itself made the basic decision, and has left to the administrator only the task of administration." *Kreps*, 574 F.2d  at 630. Instead, the statute allows the TSA Administrator to "decide" that any records are "detrimental to the security of transportation" and then unilaterally exclude those records from disclosure. While Section 114 does identify a general danger that Congress seeks to prevent (threats to "security"), it lays out no specifics: it does not incorporate a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw. *Kreps*, 574 F.2d at 629. What constitutes a disclosure that is "detrimental to the security of transportation" is anyone's guess, and completely within the discretion of the Agency. No particular types of records (photographs or training manuals, for instance) are specified. In fact, the statute doesn't even explicitly prohibit disclosure of records – instead it only uses the broader term "information." The statute simply sets out a broad general authority and fails to establish any meaningful criterion for the information that may be withheld.

The language of Section 114(r) exempts broad categories of records and gives the agency broad authority to exempt records when the TSA Administrator "decides that disclosing the information would … be detrimental to the security of transportation." Section 114(r) is more akin to the impermissibly vague language in *Administrator of FAA v. Robertson* than it is to the permissibly specific language *ACLU* and *Irons*.

9

Congress added Exemption 3's present-day "establish particular criteria" language in 1976 when it passed the Government by the Sunshine Act. *Irons & Sears v. Dann*, 606 F.2d 1215, 1219 (D.C. Cir. 1979). "Congress' goal was to legislatively overrule the Supreme Court decision *Administrator of FAA v. Robertson*, 422 U.S. 255 (1975)." *Irons & Sears*, 606 F.2d at 1219. *Robertson* upheld an Exemption 3 claim based on Section 1104 of The Federal Aviation Act. 49 U.S.C. § 1104 (barring disclosure of information that "would adversely affect the interests of [the FAA] and is not required in the interest of the public.").

Congress intended the "particular criteria" section of Exemption 3 to prevent courts from using similarly broad, vague statutes as bases for Exemption 3 claims. "The amended text and its legislative history make clear that Congress did not want the exemption to be triggered by every statute that in any way gives administrators discretion to withhold documents from the public." *Irons & Sears*, 606 F.2d at 1219. The legislative history of the 1976 FOIA amendments "expressly reveals Congress' intent to overturn *Robertson* and to narrow the scope of Exemption 3, thereby excluding from the exemption those statutes which permitted wholly discretionary non-disclosure." *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 615 (9th Cir. 1978). Section 114(r) is precisely the sort of broad statute that Congress excluded as a basis for Exemption 3 withholdings. The language would improperly "permit wholly discretionary non-disclosure," and is strikingly similar to the Section 1104 language that the post-*Robertson* FOIA amendments excluded as a basis for Exemption 3 withholdings. *Compare* Section 114(r) ("information [that] would … be detrimental to the security of transportation") *with* Section 1104 (information that "would adversely affect the interests of [the FAA].").

          c.        *Section 1520.5 Does Not Justify the DHS's Exemption 3 Withholdings*

The DHS Motion also contends that an agency regulation, 49 C.F.R. § 1520.5, justifies the agency's Exemption 3 withholdings. DHS Motion at 15 ("TSA has withheld, in full, 2,000 images … the test images constitute SSI under 49 C.F.R. § 1520.5(b)(9)(vi)."). Section 1520.5 describes fifteen categories of "sensitive security information." *Id.* However, Section 1520.5 does not support the DHS's withholdings, because agency regulations cannot serve as a basis for an Exemption 3 claim. Agency regulations are not statutes. The plain language of the FOIA requires that Exemption 3 withholdings be "specifically exempted from disclosure *by statute*." 5 U.S.C. § 52(b)(3) (emphasis added). In *Bell*, the D.C. Circuit described the threshold test under Exemption 3 – whether the purported basis for the withholding is a statute that was "affirmatively adopted by the legislature, as all statutes must be." *Bell*, 603 F.2d at 952.

Indeed, *Bell* invalidated an Exemption 3 claim involving a rule that had a stronger nexus to Congressional action than the regulation at issue here. *Bell* involved a challenge to an Exemption 3 claim based on Rule 26(c) of the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure are developed by the Supreme Court pursuant to Congress's statutory mandate, but Congress retains authority to reject any proposed rule. 28 U.S.C. § 2072; *see also Walko Corp. v. Burger Chef Systems*, 554 F.2d 1165, 1169 n29 (D.C. Cir. 1977) ("Congress' failure to suspend a proposed rule gives it the force not of a legislative enactment, but of a regulation pursuant to the Act."). The D.C. Circuit noted that although "proposed [Fed. R. Civ. P.] rules may be rejected by Congress," they "are not affirmatively adopted by the legislature" and do not provide a basis for Exemption 3 withholdings. *Bell*, 603 F.2d at 952. Section 1520.5's connection to the legislative process is weaker than the rule at issue in *Bell*. Congress retained no authority concerning the TSA's issuance of Section 1520.5. The regulation is purely a creature of administrative action, not a statute "affirmatively adopted by the legislature." Indeed, the DHS's

own publications acknowledge that Section 1520.5 is not a (b)(3) statute. The agency's annual

FOIA report to the Attorney General lists all statutes the agency relied upon as bases for

Exemption 3 claims. DHS, *2009 Annual Freedom of Information Act Report to the Attorney

General of the United States*, Feb. 2010.[1] Section 1520.5 is absent. *Id*. at 4.

      The DHS Motion cites three district court cases is support of its contention that Section

46110, Section 114(r), Section 1520.5, or some combination thereof provide a statutory basis for

the agency's Exemption 3 withholdings. DHS Motion at 11. Yet two of the cited authorities

merely illustrate that the involved parties declined to litigate the issue. *EPIC v. Dept. of

Homeland Security* notes "[t]he plaintiff does not dispute the defendants' use of these statutes in

the Exemption 3 context." *EPIC v. Dept. of Homeland Security*, 384 F. Supp. 2d 100, 110 n10

(D.D.C. 2005). In *Gordon v. FBI*, the court noted that "[t]here is no dispute that these statutes

fall within Exemption 3." *Gordon v. FBI*, 390 F. Supp. 2d 897, 900 (N.D. Cal. 2004); see also

*Sussman v. DOJ*, No. 03-3618, 2006 U.S. Dist. LEXIS 75867 at *47 (E.D.N.Y. Sept. 30, 2006)

("Plaintiff expressly waived any objections to documents redacted pursuant to § 552(b)(2) and

(3).").

      The third authority, *Tooley v. Bush*, does not bind this Court. *Tooley* holds that Section

114(r) is "a statute of exemption as contemplated by Exemption 3." *Tooley v. Bush*, No. 06-306,

2006 U.S. Dist. LEXIS 92274 at *63 (D.D.C. Dec. 21, 2006). However, *Tooley*'s only bases for

this conclusion are *Public Citizen*, a D.C. Circuit case that did not involve a FOIA request, and

*Gordon*, a California district court case in which the parties agreed as to the applicability of

Section 114(r). *Id*. at 64; *Public Citizen v. FAA*, 988 F.2d 186, 188 (D.C. Cir. 1993) ("petitioners

challenge rules the [FAA] adopted pursuant to the Aviation Security Improvement Act of 1990,

---

[1] *available at* www.dhs.gov/xlibrary/assets/foia/privacy_rpt_foia_2009.pdf.

arguing that the rules, standing alone, are not detailed enough to satisfy ASIA" (internal citations omitted)); *Gordon*, 390 F. Supp. 2d at 900.

## II.    FOIA Exemption 2 Does Not Permit the TSA to Withhold the 2,000 Body Scanner Images and 376 Pages of Training Documents

FOIA Exemption 2 permits an agency to withhold responsive records under FOIA that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).[2] Exemption 2 supports an agency withholding if the internal documents, if disclosed, would risk circumvention of the law. *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1074 (D.C. Cir. 1981). The TSA asserts that Exemption 2 provides a basis for withholding the 2,000 body scanner images and 376 Pages of Training Documents responsive to EPIC's FOIA requests. DHS Motion at 18-19.

Courts apply a two-step test to Exemption 2 assertions. In the first step, the court must evaluate whether the "material withheld should fall within the terms of the statutory language," that is, whether it is a "personnel rule or internal practice of the agency." *Founding Church of Scientology, Inc. v. Smith*, 721 F.2d 828, 831 (D.C. Cir. 1983). Courts in the D.C. Circuit have consistently held that in order to meet this first requirement, a document must be "predominantly internal" in nature, meaning that it is designed to establish rules and practices of internal interest to agency personnel and is not applicable to matters where there is a substantial public interest in disclosure. *Crooker*, 670 F.2d at 1056-1057, 1073-1074.  Courts have recognized a distinction between information designed to regulate members of the public and information designed solely

---

[2] Exemption 2 encompasses two discrete bases for exemption.  The first, Exemption 2 (low), covers "trivial internal administrative matters," defined by the Supreme Court as matters "in which the public could not reasonably be expected to have an interest." *Dep't of Air Force v. Rose,* 425 U.S. 352, 369-70 (1976). Exemption 2 (low) is not at issue in this lawsuit. The DHS has asserted Exemption 2 (high) to support its withholdings. EPIC's motion therefore restricts its discussion to Exemption 2 (high).

to regulate agency personnel. *Id.* at 1075. Only records that are used to regulate agency personnel qualify as "internal" under the statutory language. *Id.* Further, the records must "provide instructions [or] contain rules or practices for [agency] personnel." *Living Rivers v. U. S. Bureau of Reclamation*, 272 F. Supp. 2d 1313, 1318 (D. Utah 2003); *see also Audubon Society v. U.S. Forest Service*, 104 F.3d 1201, 1204 (10th Cir. 1997) (holding that Exemption 2's "phrase 'internal personnel rules' and 'practices of an agency' should not be read disjunctively; 'internal personnel' modifies both 'rules' and 'practices.'")

If the government can satisfy the first requirement, then courts consider whether or not disclosure would risk circumvention of lawful agency regulation. *Founding Church of Scientology, Inc.*, at 831. The burden is on the government to show that disclosure would create this risk. *Id.* An agency "cannot be regarded as having satisfied the second prong of the [Exemption 2] test simply by promulgating a regulation designating certain material as confidential. If such a regulation were sufficient, the result would be a *de facto* abdication by the courts of their responsibility to review *de novo* agency actions withholding documents." *National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 530 (D.C. Cir. 1986).

The 2,000 body scanner images withheld by the DHS fail to meet Exemption 2's first requirement. The images are not "personnel rule[s] or internal practice[s] of the agency." *Founding Church of Scientology*, 721 F.2d at 831. The images do not "provide instructions [or] contain rules or practices for [agency] personnel." *Living Rivers*, 272 F. Supp. 2d at 1318. The courts in *Living Rivers* and *Audubon Society* invalidated agencies' Exemption 2 assertions on the basis that the subject documents were images, not instructions or rules. *Id.* (requiring disclosure of flood plain maps); *Audubon Society*, 104 F.3d at 1204 (requiring disclosure of maps depicting owl nesting locations). Moreover, the images are not designed to establish rules and practices of

14

internal interest to agency personnel, and there is a substantial public interest in disclosure. *Crooker*, 670 F.2d at 1056-1057, 1073-1074.

The DHS cannot argue that all disclosures of body scanner images would risk circumvention of a lawful agency regulation. The TSA acknowledges that it has "already release a limited number of [body scanner] images to the public." Roberts Aff. at ¶17. Body scanner images are freely available on the internet; including on web sites operated by the DHS. *E.g.* TSA, Imaging Technology;[3] Businessweek, *Airport Security Tech*;[4] Joelle Tessler, Brisbane Times, *Naked truth: Airline Attack Could Lead to More Scanners*.[5] The DHS Motion argues that disclosure of the 2,000 withheld body scanner images would risk circumvention because they could be used to "compare and contrast more images." Yet the DHS's allegations concerning its "compare and contrast" theory are conclusory, providing no factual basis for the Court to determine why the release of one more image, or twenty more images, or 2,000 more images poses a threat of circumvention while previous image disclosures did not.

EPIC seeks disclosure of the 2,000 body scanner images because, as described in the Factual Background section above, the TSA's actions have contradicted prior agency statements concerning the body scanner program. And the DHS has not disclosed a full-size, full-resolution image obtained from a TSA-purchased body scanner to the public. Instead, the TSA has posted several different files on its web site that it claims to be body scanner images from TSA-operated

---

[3] http://www.tsa.gov/approach/tech/imaging_technology.shtm and
http://www.tsa.gov/graphics/images/approach/mmw_large.jpg.
[4] http://images.businessweek.com/ss/10/01/0107_airport_security_technology/6.htm.
[5] http://www.brisbanetimes.com.au/world/naked-truth-airline-attack-could-lead-to-more-scanners-20091231-lkh5.html.

machines, but appear to be low-resolution versions of a manufacturer-provided exemplar image. *Compare* TSA, *Millimeter Wave Image*[6] *with* L-3, *L-3 Composite*.[7]

The body scanner program is presently the subject of substantial debate in Congress, between international delegations, and in the media. Central to the dispute is whether the TSA can store and record detailed images of naked air travelers at US airports without any privacy filters. The TSA contends that it would not do this, but the agency possesses 2,000 relevant images and refuses to release any.

The Court should compel the DHS to disclose the 2,000 body scanner images. At a minimum, the Court should compel the DHS to disclose some subset of the 2,000 body scanner images that would help EPIC and the public resolve the factual dispute. In addition, the Court should compel the DHS to disclose the withheld training documents insofar as the records "contain dozens of pages of electronic [body scanner] images." Roberts Decl. at ¶22.

The DHS Motion cites several circumstances in which courts have upheld Exemption 2 withholdings concerning law enforcement records. DHS Motion at 18. However, none of the cited cases involved the withholding of photographic images. All involve written documents that set forth "personnel rule[s] or internal practice[s] of the agency." *E.g. Crooker*, 670 F.2d at 1073 (exempting document detailing "law enforcement investigative techniques"); *Gordon*, 388 F. Supp. 2d at 1035-36 (exempting document describing FBI's aviation watch list program). They are therefore unpersuasive. The DHS Motion implicitly argues that the 2,000 body scanner images qualify for Exemption 2 protection because they are related to internal agency practices involving security screening and personnel training. However, the D.C. Circuit observed:

---

[6] http://www.tsa.gov/graphics/images/approach/mmw_large.jpg (900x521 pixels).
[7] http://www.sds.l-3com.com/advancedimaging/L-3%20composite%20300dpi.jpg (2684x1506 pixels).

> In some attenuated sense, virtually everything that goes on in the Federal
> Government, and much that goes on outside of it, could be said to be "related"
> through some chain of circumstances to the "internal personnel rules and practices
> of an agency." The potentially all-encompassing sweep of a broad exemption of
> this type undercuts the vitality of any such approach.

*Vaughn v. Rosen*, 523 F.2d 1136, 1150 (D.C. Cir. 1975).

### III.     EPIC Is Entitled to Recover Its Costs and Fees

    *a.    EPIC "Substantially Prevailed" by Forcing Disclosure of DHS Records*

Irrespective of the outcome of the parties' cross-motions for summary judgment, EPIC is entitled to recover its fees and costs from the DHS in this matter. "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). "A complainant has substantially prevailed if the complainant has obtained relief through … a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* The determination of whether the plaintiff has "substantially prevailed" is "largely a question of causation." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984); *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). The key inquiry is "did the institution and prosecution of the litigation cause the agency to release the documents obtained during the pendency of the litigation?" *Church of Scientology*, 653 F.2d at 587.

EPIC has already "substantially prevailed" in this lawsuit. As described above, EPIC filed its FOIA request concerning body scanners on April 14, 2009. EPIC filed an administrative appeal challenging the DHS's failure to make a determination within statutory deadlines on July 30, 2009. On November 5, 2009, EPIC filed this lawsuit challenging the agency's failure to comply with the deadlines set forth in FOIA. As of the date of the Complaint in this lawsuit, the DHS had failed to disclose a single agency record in response to EPIC's FOIA Request. As of

17

the date of the Complaint in this lawsuit, the DHS had failed to make any determination

concerning EPIC's FOIA Request. On December 1, 2009, the TSA partially responded to EPIC's

FOIA request by disclosing 286 pages of records. The DHS subsequently disclosed over 1,000

pages of records to EPIC during the pendency of this case.

Between the date of EPIC's FOIA request and the date of this lawsuit—a period of nearly

seven months—the DHS disclosed no records and made no determination concerning EPIC's

request. Fewer than thirty days after EPIC filed its Complaint in this the case, the DHS disclosed

hundreds of pages of agency records. "The institution and prosecution" of this suit plainly

"cause[d] the agency to release the documents obtained during the pendency of the litigation."

      b.    *The Court Should Award EPIC Costs and Fees In This Case*

"The court should consider [four factors] in determining the appropriateness of an award

of costs and attorney fees." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977). The four

factors are: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial

benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought";

and 4) "whether the government's withholding of the records sought had a reasonable basis in

law." H. Comm. on Gov't Operations and S. Comm. on the Judiciary, 94th Cong., *Freedom of

Information Act and Amendments of 1974 (Pub. L. No. 93-502) Source Book,* 189-90 (J. Comm.

Print 1975).

"Public benefit" can be demonstrated by a "newsman . . . seeking information to be used

in a publication or a public interest group . . . seeking information to further a project benefiting

the general public." *Id.* at 171. The "public benefit" factor supports an award where the

complainant's victory is "likely to add to the fund of information that citizens may use in making

in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995)

(citations omitted). EPIC's FOIA suit provided substantial benefit to the public. EPIC disseminated the agency records it received on its web site and to the approximately 20,0000 recipients of its bi-weekly newsletter. Major news organizations covered the documents EPIC obtained. *E.g. Body Scanners Can Store, Send Images, Group Says*, CNN, Jan. 11, 2010;[8] Matthew Wald, *Mixed Signals on Airport Scanners*, The New York Times, Jan. 12, 2010.[9] EPIC's suit forced the disclosure of documents that informed the debate surrounding a Congressional bill that would prohibit use of body scanners as primary screening. H.R. 2200, 111th Cong., *as amended by* H. Amend. 172 (1st Sess. 2009).

"Commercial benefit to the complainant" might preclude an award if the beneficiary is a "large corporate interest (or a representative of such an interest)." *Freedom of Information Act and Amendments of 1974 Source Book* at 171. However, commercial benefit does not bar recovery "where the complainant was indigent or a nonprofit public interest group." *Id.* In fact, nonprofit organizations are "the sort of requester that Congress intended to recover attorney's fees under FOIA." *Elec. Frontier Found. v. Office of the Director of National Intelligence*, 2008 WL 2331959 (N.D. Cal. June 4, 2008). EPIC is a 501(c)(3) non-profit public interest research center. EPIC derived no commercial benefit from its FOIA request or lawsuit. The sole benefit was derived by the public, which benefited from the disclosure of the body scanner documents released in this case.

The "nature of the [complainant's] interest" factor is "closely related [to] and often considered together" with the commercial benefit criterion. *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) Favored interests are "scholarly, journalistic or public-interest oriented." *Freedom of Information Act and Amendments of 1974 Source Book* at 171. *See Long*

---

[8] http://www.cnn.com/2010/TRAVEL/01/11/body.scanners.
[9] http://www.nytimes.com/2010/01/13/us/13scanners.html.

*v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was held "wrong as a matter of law and an abuse of discretion."). As set forth above, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public-interest oriented" interests favored by the statute.

The DHS did not have a "reasonable legal basis" for failing to disclose records to EPIC or make a determination concerning EPIC's FOIA request. The DHS's delay plainly violated the FOIA's statutory deadlines. *See* 5 U.S.C. § 552(a)(6)(A). As described in EPIC's Complaint, the DHS violated statutory deadlines by failing to make a timely determination concerning EPIC's FOIA request and administrative appeal. Compl. at ¶¶24-32. The DHS has cited no legal basis in opposition to EPIC's claims regarding the untimeliness of the agency's response. An agency's representation that records were not produced more quickly due to processing backlogs, confusion, and administrative error are "practical explanations, not reasonable legal bases" for withholding. *Miller v. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985). "The FOIA does not contain a statutory exception for administrative inefficiency. When a private citizen is obliged to seek legal services in order to wrest from the government information which the government had no legal reason to withhold from him, he is entitled under the Act to be reimbursed for the cost to which he has been put." *Id.*

In this case, EPIC was forced to sue the DHS in order to wrest from the government critical information concerning the TSA's airport body scanner program. The DHS had no reason or legal basis to withhold these records, and the agency must reimburse EPIC for its costs and fees.

## **CONCLUSION**

As discussed above, Defendant's Motion for Summary Judgment should be denied as to the DHS's withholding of the 2,000 Body Scanner Images and the 376 Pages of Training Documents.  In addition, Plaintiff is entitled to recover its costs and fees because it has "substantially prevailed" in this case regardless of the outcome of the parties' cross-motions for summary judgment.  A proposed Order is attached.

Respectfully submitted,

_____ */s/ John Verdi* _____
MARC ROTENBERG
JOHN VERDI
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: June 28, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of June 2010, I served the foregoing PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, including all exhibits and attachments, by electronic case filing upon:

JESSE Z. GRAUMAN
U.S. Department of Justice
Civil Division, Federal Programs Branch

_____/s/ John Verdi_____
John Verdi
*Counsel for Plaintiff*