# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

ELECTRONIC PRIVACY INFORMATION CENTER,

Plaintiff,

v.

THE UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

Defendant.

_____

Case No. 1:09-cv-02084 (RMU)

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant United States Department of Homeland Security ("DHS") respectfully submits this Reply in support of its Motion for Summary Judgment (Dkt. No. 18) and Opposition to Plaintiff Electronic Privacy Information Center's ("EPIC's") Motion for Summary Judgment (Dkt. No. 19).

## INTRODUCTION

This action is a Freedom of Information Act ("FOIA") case stemming from two FOIA requests made by EPIC for documents concerning new advanced imaging technology ("AIT") being employed by DHS's component, the Transportation Security Administration ("TSA"). It is clear from the parties' opening briefs that the merits of the case are ripe for summary judgment, as there are no disputes of material fact and EPIC does not contest the scope of the TSA's search for responsive documents. EPIC has also conceded most of the TSA's withholdings pursuant to FOIA's statutory exemptions. Its brief purports to challenge only the

withholdings of 2,000 test images and 376 pages of training documents, and in fact challenges

only the withholdings of the test images because EPIC offers no argument in response to TSA's

assertion of Exemption 2 as to the training documents.  As to the withholdings themselves, the

withholdings of both the test images and training documents were proper under both Exemption

3 and Exemption 2.  Finally, EPIC's request that the Court rule that it is eligible for, and entitled

to, attorney's fees and costs should be denied as premature.

## ARGUMENT

### A.  EPIC HAS CONCEDED THE SUFFICIENCY OF THE SCOPE OF TSA'S SEARCH AND THE PROPRIETY OF ALL WITHHOLDINGS EXCEPT THE TEST IMAGES.

At the outset, Defendant should be granted summary judgment on all issues except for

those expressly contested by EPIC in its opposition brief.  See Franklin v. Potter, 600 F. Supp. 2d

38, 60 (D.D.C. 2009) (treating defendant's argument in summary judgment motion as conceded

where plaintiff failed to address it in plaintiff's response); Hopkins v. Women's Div., General

Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this

Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain

arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to

address as conceded."), aff'd, 98 Fed. App'x 8 (D.C. Cir. 2004); Bancoult v. McNamara, 227 F.

Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but

fails to address certain arguments made by the moving party, the court may treat those arguments

as conceded, even when the result is dismissal of the entire case.").

In its opening brief, Defendant moved for summary judgment on the sufficiency of the

scope of TSA's search for responsive documents, and on the withholdings that were in dispute

between the parties at the time.[1]  EPIC's opposition brief does not contest the scope of search,

nor does it address any of TSA's withholdings except for the withholding of 2,000 test images

produced by AIT machines, and 376 pages of training manuals and instructor guides for the

machines.  See Pl.'s Mem. of P.& A. (Dkt. No. 19) ("Pl.'s Mem.") at 1.  Thus, EPIC has

conceded any arguments as to the adequacy of TSA's search and all withholdings other than the

test images and training documents.  For the reasons set forth in Defendant's opening brief,

summary judgment should be granted to Defendant on all of the conceded issues.

Examined more closely, however, EPIC's opposition brief reveals that it has conceded

the withholdings of the training documents as well.  Only one FOIA exemption is necessary to

justify a withholding under FOIA; if a court finds that a withholding is proper under only one

exemption, it need not reach the issue of whether the assertion of the other exemption was

proper.  Coleman v. Lappin, 607 F. Supp. 2d 15, 23 (D.D.C. 2009) (citing Simon v. Dep't of

Justice, 980 F.2d 782, 785 (D.C. Cir. 1992)).  In its opening brief, Defendant asserted two

exemptions over the images and training documents, Exemption 3 and Exemption 2 ("high").

See Def.'s Mem. in Supp. of its Mot. for Summ. J. (Dkt. No. 18) ("Def.'s Mem.") at 15-17, 21.

Plaintiff has opposed TSA's assertion of Exemption 3 as to both the images and the training

documents, asserting that the statute cited by Defendant is not an Exemption 3 statute.  See Pl.'s

Mem. at 5-13; see also infra § B.1.

With regard to Exemption 2, however, Plaintiff fails to present any argument as to the

training documents.  Although Plaintiff asserts, in a heading, that "FOIA Exemption 2 Does Not

Permit the TSA to Withhold the 2,000 Body Scanner Images and 376 Pages of Training

---

[1] As outlined in Defendant's opening brief, EPIC agreed not to contest many of TSA's
withholdings after viewing a draft Vaughn index in advance of Defendant's filing of its motion
for summary judgment.  Def.'s Mem. at 5-6.

Documents," Pl.'s Mem. at 13, this conclusory assertion, on its own, does not constitute an adequate response.  See Fed. R. Civ. P. 56(e)(2) (requiring a party opposing summary judgment to "set out specific facts showing a genuine issue for trial" rather than "rely[ing] merely on allegations or denials").  In the pages following that heading, Plaintiff contests TSA's assertion of Exemption 2 only as to the test images, not the training documents.  See Pl.'s Mem. at 14 ("The 2,000 body scanner images . . . fail to meet Exemption 2's first requirement"), 15 ("The DHS cannot argue that all disclosures of body scanner images would risk circumvention of a lawful agency regulation . . . EPIC seeks disclosure of the 2,000 body scanner images"), 16 ("The Court should compel the DHS to disclose the 2,000 body scanner images").  Plaintiff only mentions the training documents when it asks the Court to "compel the DHS to disclose the withheld training documents insofar as the records 'contain dozens of pages of electronic [body scanner] images.'"  Id. at 16 (emphasis added).  Indeed, Plaintiff's entire argument against TSA's assertion of Exemption 2 is based on Plaintiff's contention that the photographic images are not "personnel rules and practices of an agency," see id. at 13-17, an argument that plainly does not apply to the training documents.  Because EPIC has not offered any argument as to why Exemption 2 does not justify the withholding of the training documents, it has conceded TSA's withholding of these documents, with the possible exception of any embedded images. Therefore, the only withholding that the Court need resolve on the merits is the withholding of the test images.

### B.  TSA'S WITHHOLDINGS WERE PROPER.

#### 1. TSA's Withholdings Were Proper Pursuant to FOIA Exemption 3.

Exemption 3 of FOIA permits an agency to withhold information that is:

specifically exempted from disclosure by statute . . . if that statute

(A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
(B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

The statute cited by Defendant in support of its withholdings under Exemption 3 is 49 U.S.C. § 114(r), and specifically, § 114(r)(1)(C).[2]  This statute states as follows:

(r) Nondisclosure of Security Activities.

(1) In general.  Notwithstanding section 552 of title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107–71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would—

(A) be an unwarranted invasion of personal privacy;

(B) reveal a trade secret or privileged or confidential commercial or financial information; or

(C) be detrimental to the security of transportation.

As set forth in Defendant's opening brief and in the Declaration of Mark Roberts, the Acting Manager of TSA's Sensitive Security Information ("SSI") Branch, the test images and training documents are clearly encompassed by specific provisions of the SSI regulations promulgated by TSA pursuant to its authority under 49 U.S.C. § 114(r).  See 49 C.F.R. § 1520.5.  The test images are prohibited from disclosure under 49 C.F.R. § 1520.5(b)(9)(v), (b)(9)(vi), and (b)(10), while the training documents are prohibited from disclosure under 49 C.F.R. § 1520.5(b)(9)(v),

_____

[2] Plaintiff suggests that Defendant has cited 49 U.S.C. § 46110 to justify its withholdings under Exemption 3.  Pl.'s Mem. at 6-7.  Defendant has not, however, argued that 49 U.S.C.  § 46110 is an "Exemption 3 statute" that provides the substantive basis for any withholdings.  Rather, as outlined in Defendant's opening brief, 49 U.S.C. § 46110 creates a jurisdictional bar to challenging TSA's designations of sensitive security information in any proceeding other than a petition for review in a United States Court of Appeals.  See Def.'s Mem. at 11-13.

(b)(9)(i), (b)(9)(vi), and (b)(10).  See Def.'s Mem. at 15-17; Roberts Decl. ¶¶ 16-24.[3]  Moreover,

TSA determined that the release of the test images and training documents would be detrimental

to transportation security and therefore designated them as SSI and prohibited their disclosure.

See Def.'s Mem. at 13 (citing Roberts Decl. ¶ 9).

Plaintiff does not attempt to dispute, nor can it, that the withheld images and documents

are encompassed by the SSI statute and its regulations.[4]  Rather, Plaintiff asserts that the statute

and regulations, as a matter of law, do not justify withholding records under Exemption 3 of

FOIA.  Pl.'s Mem. at 7-13.  Plaintiff's arguments lack merit.

Plaintiff first argues that "[s]ection 114(r) is not a (b)(3) statute" because, according to

Plaintiff, it neither "requires that the matters be withheld . . . in such a manner as to leave no

discretion on the issue" nor "establishes particular criteria for withholding or refers to particular

types of matters to be withheld."  Id. at 8-10.[5]  Plaintiff primarily relies on American Jewish

Congress v. Kreps, 574 F.2d 624 (D.C. Cir. 1978).  In American Jewish Congress, the D.C.

Circuit ruled that a section of the Export Administration Act ("EAA") did not qualify as an

Exemption 3 statute.  The statute, at the time, prohibited disclosure of any "information obtained

[under the EAA] which is deemed confidential or with reference to which a request for

confidential treatment is made by the person furnishing such information unless the head of such

---

[3] The cited pages of Defendant's opening brief and the cited paragraphs of the Roberts
Declaration explain the applicability of the various provisions of 49 C.F.R. § 1520.5 to the
withheld images and training documents.  Because Plaintiff has not challenged the applicability
of the provisions, they are not restated here in detail.

[4] Indeed, pursuant to the jurisdictional bar at 49 U.S.C. § 46110, Plaintiff cannot challenge TSA's
designations of material as sensitive security information except in a petition for review in a
Court of Appeals.  See Def.'s Mem. at 11-13.

[5] EPIC cannot argue that § 114(r) was "enacted after . . . the OPEN FOIA Act of 2009," 5 U.S.C.
§ 552(b)(3)(B), as 114(r) (originally § 114(s)) was enacted in 2002.  See Homeland Security Act
of 2002, Pub. L. No. 107-296, § 1601(b), 116 Stat. 2135, 2312 (2002).

department or agency determines that the withholding thereof is contrary to the national interest." Am. Jewish Cong., 574 F.2d at 626 (citing 50 U.S.C. App. § 2406(c) (1970)).

Section 114(r), however, is easily distinguishable from the EAA provision at issue in American Jewish Congress. Most importantly, § 114(r) includes explicit, unambiguous language manifesting Congressional intent that its provisions authorizing the TSA Administrator to designate materials as SSI apply "[n]otwithstanding section 552 of title 5" – that is, notwithstanding the requirements of the FOIA. This language – which EPIC does not address in its opposition brief – eliminates any possibility that § 114(r) must yield in the face of FOIA's disclosure requirements. Section 114(r) is nearly identical in language to a predecessor statute vesting similar authority in the Federal Aviation Administration, Pub. L. No. 93-366, § 202, 88 Stat. 409, 417 (Aug. 5, 1974) (previously codified at 49 U.S.C. App. § 1357(d)(2) (1988 & Supp. II 1990)).[6] Analyzing § 1357(d)(2), the D.C. Circuit found that the phrase "notwithstanding section 552 of Title 5 "clearly and unambiguously provides that § 1357(d), where applicable and invoked by the FAA, trumps FOIA's disclosure requirements." Pub. Citizen, Inc. v. FAA, 988 F.2d 186, 194 (D.C. Cir. 1993); see also id. at 195 ("[W]e conclude unmistakably that Congress intended the FAA to withhold from public disclosure information falling within § 1357(d), whether or not FOIA is invoked."). The Court further noted that Congress' clear intent was "to broaden the FAA's power to withhold sensitive information, not to limit that power . . .

---

[6] The FAA statute stated:

> Notwithstanding section 552 of Title 5 relating to freedom of information, the [FAA] Administrator shall prescribe such regulations as he may deem necessary to prohibit disclosure of any information obtained or developed in the conduct of security or research and development activities under this subsection if, in the opinion of the Administrator, the disclosure of such information-

> …

> (C) would be detrimental to the safety of persons traveling in air transportation.

Where disclosure of information specified in § 1357(d)(2) and the FAA's implementing regulations would jeopardize passenger safety, Congress clearly intended for the FAA to be able to withhold such information under § 1357(d)(2)." Id. at 195 (emphasis in original).

The nearly-identical disclosure prohibitions of § 114(r), like those of § 1357(d)(2), apply "notwithstanding section 552 of title 5." This language "clearly and unambiguously" shows that this section "trumps FOIA's disclosure requirements." See Tooley v. Bush, No. 06-306, 2006 WL 3783142, at *20 (D.D.C. Dec. 21, 2006), (finding that § 114(r) is an Exemption 3 statute, noting that it is "almost verbatim" identical to § 1357(d)(2)) aff'd,[7] Tooley v. Napolitano, 586 F.3d 1006 (D.C. Cir. 2009). The meaning of "notwithstanding section 552 of title 5" is plain – this language means that § 114(r) supersedes FOIA as applied to information designated by TSA as SSI. Cf. Energy Transp. Group, Inc v. Skinner, 752 F. Supp. 1, 10 (D.D.C.1990) ("[T]he phrase 'notwithstanding any other provision of law,' or a variation thereof, means exactly that; it is unambiguous and effectively supersedes all previous laws.").

In light of the unambiguous language of § 114(r), it is unsurprising that every single Court – including this Court – that has considered the statute in the context of FOIA has concluded that it authorizes TSA to withhold information specified in the statute and its regulations. See Tooley, 2006 WL 3783142, at *20; Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., 384 F. Supp. 2d 100, 110 n. 10 (D.D.C. 2005) (Urbina, J.); Gordon v. F.B.I., 390 F. Supp. 2d 897, 900 (N.D. Cal. 2004). Plaintiff's efforts to distinguish these cases are unconvincing. That the parties in two of those cases, Electronic Privacy Information Center and Gordon, did not dispute whether 49 U.S.C. § 114(r) was an Exemption 3 statute merely underscores just how "clear[] and unambiguous[]" § 114(r) is. Plaintiff also argues that the Court should disregard the well-reasoned conclusion in Tooley because Tooley relied on Public

_____

[7] The FOIA claim in Tooley was not appealed. Tooley v. Napolitano, 586 F.3d at 1008.

Citizen, which "did not involve a FOIA request."  This distinction,[8] however, is immaterial and in no way minimizes the import of the finding in Public Citizen that a statute virtually identical to § 114(r) "trump[ed] FOIA's disclosure requirements."

In addition, even leaving aside the "notwithstanding" language, 49 U.S.C. § 114(r) is distinguishable from the EAA statute at issue in American Jewish Congress because § 114(r) "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A)(ii).  The statute outlines three specific concerns that warrant the withholding of information – the invasion of personal privacy, the disclosure of confidential business information, and detriment to transportation security – and authorizes the TSA Administrator to prohibit disclosure of information in those three categories only.  This articulation of concerns "establishes particular criteria for withholding or refers to particular types of matters to be withheld."   In fact, the court in American Jewish Congress cited a similarly-worded statute as a hallmark of an Exemption 3 law.  See Am. Jewish Cong., 574 F.2d at 629 (citing 42 U.S.C. § 2162(a) (1970)) ("When . . . Congress has made plain its concern with a specific effect of publicity as when in the Atomic Energy Act of 1954 it directed that information be released only if it 'can be published without undue risk to the common defense and security' Exemption 3 is to honor that concern.").  The language of 49 U.S.C. § 114(r)(1)(C), which empowers the TSA Administrator to determine which information is "detrimental to the security of transportation," is no less "particular" than the language of 42 U.S.C. § 2162(a) regarding "undue risk to the common defense and security."  Thus, contrary to EPIC's contention, § 114(r) does not "grant[] the TSA unfettered discretion," Pl.'s Mem. at 7; rather, it

---

[8] The specific issue that confronted the court in Public Citizen was not whether the SSI provisions of § 1357(d)(2) trumped FOIA – that matter, as the court recognized, was "clear and unambiguous" – but whether, in addition, it enabled the FAA to withhold SSI from the public in contexts other than FOIA requests.  On that issue, the Court ruled in the FAA's favor, finding that § 1357(d)(2) granted the FAA such authority.

delineates specific categories of information that Congress determined should not be disclosed, and delegates to the TSA Administrator the authority to determine which documents fall into these categories.  Thus, even if it did not have the "notwithstanding" language, § 114(r) would be a proper Exemption 3 statute.

Finally, Plaintiff mischaracterizes Defendant's position by stating that "[t]he DHS Motion also contends that an agency regulation, 49 C.F.R. § 1520.5, justifies the agency's Exemption 3 withholdings."  Pl.'s Mem. at 11 (citing Def.'s Mem. at 15).  Defendant has not argued that TSA regulations, standing alone, can justify withholding information under FOIA. Rather, 49 U.S.C. § 114(r) is the statute on which TSA bases its withholdings, and the TSA Administrator – as required by the statute – has "prescribe[d] regulations prohibiting the disclosure of information obtained or developed in carrying out security."  49 U.S.C. § 114(r)(1); see also 49 C.F.R. § 1520.5(a) (stating that SSI is being defined "[i]n accordance with 49 U.S.C. 114([r])" [9]).  These implementing regulations identify in detail the types of information that, in TSA's determination, implicate the three concerns – privacy, confidential business information, and transportation security – that Congress articulated when it enacted § 114(r).  Thus, the implementing regulations, together with the statute, justify the withholdings.  See Pub. Citizen, 988 F.2d at 195 (explaining that § 1357(d)(2) properly authorized the FAA to prohibit disclosure "[w]here disclosure of information specified in § 1357(d)(2) and the FAA's implementing regulations would jeopardize passenger safety") (emphasis added).

As Defendant demonstrated in its opening brief, and as Plaintiff has not disputed, both the test images and training documents plainly fall within the definition of SSI under regulatory

---

[9] As explained in Defendant's Opening Brief, 49 U.S.C. § 114(s) was subsequently redesignated as § 114(r) but otherwise unchanged, but the implementing regulations continue to cite to § 114(s).  See Consolidated Appropriations Act, 2008, Pub.L. No. 110-161, 121 Stat. 1844, Div. E, § 568(a) (2007)

provisions enacted pursuant to § 114(r).  See, e.g., 49 C.F.R. §§ 1520.5(b)(9)(vi) (defining SSI to

include "[a]ny electronic image shown on any screening equipment monitor, including threat

images and descriptions of threat images for threat image projection systems"); (b)(10)

(prohibiting disclosure of "[r]ecords created or obtained for the purpose of training persons

employed by, contracted with, or acting for the Federal government or another person to carry

out aviation, maritime, or rail transportation security measures required or recommended by

DHS or DOT"); see also Def.'s Mem. at 15-17; Roberts Decl. ¶¶ 16-24 (explaining other

regulatory provisions that encompass the images and training documents).  They are therefore

exempt from disclosure, "notwithstanding [FOIA]," pursuant to 49 U.S.C. § 114(r).  To the

extent that EPIC wishes to argue that the images or manuals have been improperly designated as

SSI, its only recourse is to file a petition for review in a Court of Appeals.  See 49 U.S.C. §

46110; Chowdhury v. Northwest Airlines Corp., 226 F.R.D. 608, 614 (N.D. Cal. 2004); Shqeirat

v. U.S. Airways Group, Inc., No. 07-1513, 2008 WL 4232018, at *2 (D. Minn. Sept. 9, 2008)

("District Courts are without jurisdiction to entertain challenges to the TSA's decisions regarding

disclosure of SSI."); see also MacLean v. Dep't of Homeland Sec., 543 F.3d 1145, 1149 (9th Cir.

2008) (holding that a TSA determination does not require formal proceedings such as notice and

comment to qualify as an "order," reviewable only in a Court of Appeals, under § 46110).

## 2. TSA's Withholding of the Test Images[10] Was Proper Pursuant to FOIA Exemption 2.

In addition to being justified by Exemption 3, Defendant's withholding of the test images

was proper under Exemption 2 of FOIA, which exempts from disclosure information "related

---

[10] As discussed supra, Plaintiff has not argued in its opposition brief that the withholding of the training documents pursuant to Exemption 2 was improper; thus, the Court should treat this issue as conceded.  The justification for the Exemption 2 withholding of the training documents is fully set forth in pages 17 through 21 of Defendants' opening brief and in paragraphs 21 through 24 of the Roberts Declaration.

solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Specifically, TSA properly asserted Exemption 2 ("high"), which protects information that both "meets the test of 'predominant internality,'" and whose disclosure "significantly risks circumvention of agency regulations or statutes." Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (en banc)).

Plaintiff appears to argue that the test images cannot meet the statutory criteria for Exemption 2 because they are images, rather than "written documents that set forth personnel rules or internal practices of the agency." Pl.'s Mem. at 16 (internal quotation marks and brackets omitted). In support of its argument, Plaintiff cites a Tenth Circuit case, Audubon Society v. U.S. Forest Service, 104 F.3d 1201 (10th Cir. 1997), and a district court case within that circuit, Living Rivers v. U.S. Bureau of Reclamation, 272 F. Supp. 2d 1313 (D. Utah 2003), which explicitly relies on Audubon Society. See Living Rivers, 272 F. Supp. 2d at 1317-18. In these cases, the courts found that certain maps did not relate to internal personnel rules and practices and did not qualify for Exemption 2.

These cases are distinguishable. In reaching their conclusions, Audubon Society (and therefore, by extension, Living Rivers) relied on the narrow construction of Exemption 2 articulated in Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 763 (D.C. Cir. 1978) (en banc) (limiting Exemption 2 to "matters relating to pay, pensions, vacations, hours of work, lunch hours, parking, etc."). See Audubon Soc'y, 104 F.3d at 1204. This holding in Jordan has been expressly overruled and is no longer good law in the D.C. Circuit. See Crooker, 670 F.2d at 1075 ("We turn away from the rationale of Jordan because it does not appear to comport with the full congressional intent underlying FOIA."). In addition, the documents at issue are distinguishable. The documents in Audubon Society were maps showing nest site locations for

Mexican spotted owls.  See Audubon Soc'y, 104 F.3d at 1202.  The documents in Living Rivers

were "inundation maps" showing the possible effects of a failure of the Hoover Dam on the

surrounding area.  See Living Rivers, 272 F. Supp. 2d at 1315.  Neither of these documents was

used, as the TSA test images are, to train government personnel who actively carry out security

responsibilities, or to develop and refine security practices being carried out by those personnel.

See Roberts Decl. ¶¶ 16-19.

As the D.C. Circuit recently explained, records meet the first prong of Exemption 2

("high") if they are "'used for predominantly internal purposes,' and relate to 'rules and practices

for agency personnel.'"  Elliott v. U.S. Dep't of Agric., 596 F.3d 842, 847 (D.C. Cir. 2010).  A

piece of information "need not take the form of a rule or practice . . . to fall within the high 2

exemption.  Rather, the exemption expressly protects from disclosure material 'related' to

agency rules or practices."  Id. at 848.  The test images meet this standard.  They are "used for

predominantly internal purposes," as they are kept at a TSA test facility and not disseminated to

the public.  In addition, they "relate to rules and practices for agency personnel" because they are

used both to test the accuracy of the AIT machines that are owned by TSA and operated by TSA

personnel, and to train TSA employees how to use the machines to detect threats to aviation

security.  Roberts Decl. ¶ 16.  That they are photographic images and not written documents is

not dispositive of this inquiry.  See Elliott, 596 F.3d at 849-50 (finding blueprints for USDA

buildings covered by Exemption 2); Milner v. U.S. Dep't of the Navy, 575 F.3d 959, 970 n. 6

(9th Cir. 2009) (finding that Exemption 2 justified withholding of Navy maps depicting blast

radii of explosives, "declin[ing] to draw distinctions [for Exemption 2 purposes] based on

whether the information appears in images, numbers, words, or any other format").  Thus, the

connection between these images and "rules and practices for agency personnel" is not

"attenuated," as Plaintiff asserts, but strong.[11]   Accordingly, the test images meet the first prong

of Exemption 2.[12]

On the second prong of Exemption 2 ("high"), the Declaration of Mark Roberts provides

a sufficient basis for the Court to find that disclosure of the test images would risk circumvention

of agency regulations or statutes.  See Elec. Privacy Info. Ctr., 384 F. Supp. 2d at 106 (noting

that in a FOIA case, a court may grant summary judgment to an agency on the basis of its

affidavits if they "(a) describe the documents and the justifications for nondisclosure with

reasonably specific detail, (b) demonstrate that the information withheld logically falls within the

claimed exemption, and (c) are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith").  As the Roberts Declaration outlines, disclosure of the images

risks circumvention of federal law and TSA's airline security procedures because the images

would enable terrorists to learn, and exploit, the capabilities and limitations of AIT machines.

Roberts Decl. ¶ 17.  Because each test image contains various threat objects, id. ¶ 20, each one

could be used by terrorists to gain "insight into difficulties that may exist in identifying specific

types of prohibited items, their sizes and shapes and consistencies, methods or locations of

obscuring or camouflaging threat objects and the degree to which TSA settings and calibrations

of screening equipment are distinct from the standards used by other organizations."  Id. ¶ 17.

Finally, although Plaintiff suggests that TSA might be able to release a subset of the test images

without compromising aviation security, Pl.'s Mem. at 15-16, TSA cannot make even a limited

---

[11] Moreover, even if the connection to agency rules and practices were somewhat "attenuated,"
TSA's assertion of Exemption 2 "high" would still be proper given that disclosure of the images
would compromise aviation security.  See Schwaner v. Dep't of the Air Force, 898 F.2d 793, 796
(D.C. Cir. 1990).

[12] It goes without saying that the training manuals – whose withholding under Exemption 2
Plaintiff does not contest – meet this prong, as they are indistinguishable from the documents at
issue in "Crooker, the canonical high 2 case," which involved an "ATF training manual [that]
instructed government agents how to perform their official job duties."  Elliott, 596 F.3d at 848.

disclosure of the images because of the rarity and sensitivity of these images.  Roberts Decl. ¶ 17.

Plaintiff suggests that TSA's descriptions of the risks to aviation security that would result from disclosure of the images are "conclusory."  Pl.'s Mem. at 15.  Plaintiff's assertion is misplaced, however, because when evaluating the use of FOIA exemptions in the security context, "a reviewing court 'must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm.'"  Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting Halperin v. CIA, 629 F.2d 144, 149 (D.C. Cir. 1980)) (omission in original).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  Id. at 374-75.  As both Plaintiff and the Court are aware, the danger posed by terrorists who attempt to circumvent airline security is far from speculative and is very real.  See, e.g., Eric Schmitt & Eric Lipton, Suspect in Terror Attempt Claims Ties to Al Qaeda, N.Y. Times, Dec. 27, 2009, at A1 (describing attempt by terrorist to detonate airliner on December 25, 2009 using explosive chemicals and a syringe sewn into his underwear).  TSA has made its determinations of potential harm based on its expertise in evaluating threats to aviation security.  The justifications set forth in the Roberts Declaration for withholding highly sensitive test images produced by AIT machines are both "logical" and "plausible" to justify the withholding of the test images under Exemption 2, and Plaintiff has presented no evidence of agency "bad faith" that would controvert or undermine these justifications.[13]

---

[13] Plaintiff attempts to impugn TSA's declarations by arguing that "as described in the Factual Background section above, the TSA's actions have contradicted prior agency statements concerning the body scanner program."  Pl.'s Mem. 15.  Plaintiff's Factual Background section contains a series of allegations, with no citation, that mischaracterize TSA's statements and actions.  For example, EPIC alleges that "[t]he TSA now requires passengers to submit to body scanner screening" and that "TSA announced its plans to expand the mandatory use of whole

Notwithstanding Plaintiff's claim that there is a "substantial public interest in disclosure" of the test images, the public interest is not a relevant factor in evaluating withholdings under Exemption 2 ("high").  See Crooker, 670 F.2d at 1074 ("It is not up to this court to balance the public interest in disclosure against any reason for avoiding disclosure [in Exemption 2 ("high") cases]"); Peay v. Dep't of Justice, No. 04-1859, 2007 WL 788871, at *2 (D.D.C. Mar. 14, 2007) ("Congress has not authorized the weighing of the public interest in disclosure against any reason for avoiding disclosure under exemption 2.") (internal quotation marks and citations omitted); Judicial Watch Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146, 165 (D.D.C. 2004) (finding the public interest in disclosure "legally irrelevant" in a "high 2" case); see also James Madison Project v. C.I.A., 607 F. Supp. 2d 109, 123-24 (Urbina, J.) (upholding agency's use of Exemption 2 ("high") without weighing public interest).  But cf. Duncan v. DEA, No. 06-1032, 2007 WL 1576316, at *5 (D.D.C. May 30, 2007) (considering, and rejecting, the public interest in materials withheld under Exemption 2 ("high")).  Rather, if the Court finds that the test images meet the elements of Exemption 2 ("high"), it must sustain TSA's withholdings regardless of any public interest in disclosure.  See Peay, 2007 WL 78871, at *2 ("[I]f . . . the agency demonstrates

---

body imaging." Pl.'s Mem. 2.  In fact, AIT screening continues to be optional.  Transp. Sec. Admin., TSA: Frequently Asked Questions: Advanced Imaging Technology (last visited July 8, 2010), http://www.tsa.gov/approach/tech/ait/faqs.shtm ("[I]maging technology screening is optional for all passengers. Passengers who do not wish to receive imagining technology screening will receive alternative screening, including a physical pat-down.").  Likewise, Plaintiff alleges that TSA removed assurances regarding privacy from its website.  Pl.'s Mem. 2. In fact, TSA's website contains assurances regarding privacy.  Transp. Sec. Admin., TSA: Privacy: Advanced Imaging Technology (last visited July 8, 2010), http://www.tsa.gov/approach/tech/ait/privacy.shtm.  In short, plaintiff's allegations do not even approach a showing that would warrant discounting or minimizing TSA's sworn declarations. See Nat'l Sec. Archive v. F.B.I., 759 F. Supp. 872, 878 (D.D.C. 1991) noting that absent a evidence of "either bad faith or inconsistencies," agency declarations in a FOIA case have a presumption of regularity).

that the withheld information meets the test of predominant internality, and if disclosure significantly risks circumvention of agency regulations or statutes, the inquiry ends.").

Moreover, even if the public interest were a factor for the Court to consider, Plaintiff's assertion of a "substantial public interest in disclosure" is faulty. Plaintiff claims that the public interest is triggered by a "substantial debate in Congress, between international delegations, and in the media" over "whether the TSA can store and record detailed images of naked air travelers at US airports without any privacy filters." Pl.'s Mem. at 16. As TSA has already explained, the AIT machines at airports are not enabled to store images. Janet Decl. ¶ 15. However, the public release of the 2,000 test images at issue would shed no light on capability (or lack thereof) of the AIT machines deployed at airports to store or record images. These images were produced at a TSA test facility, using TSA models, with machines set to test mode. Id. Their release would establish nothing about storage and recording beyond what EPIC already knows, namely, that when set to test mode – and only when set to test mode – AIT machines can store images. Thus, even if the public interest were a factor for the Court to consider, it would not weigh in favor of disclosing the test images.

### C.  PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED AS PREMATURE.

In addition to contesting the withholdings of the test images, EPIC also asks the Court, in its summary judgment brief, to rule that it is both eligible for, and entitled to, attorney's fees and costs. EPIC's de facto motion for attorney's fees is premature, as it has been made prior to the Court's resolution of the merits of the case and without the conference required by this Court's Local Rules to determine whether the parties can resolve the issues of fees and costs without the need for the Court's intervention. As such, the Court should defer consideration of attorney's

fees and costs until after it resolves the merits of the case.  At that time, the Court can consider

these issues if the parties are unable to resolve the question of fees and costs through negotiation.

In the normal course of events, in a FOIA case or otherwise, a motion for fees and costs

is made <u>after</u> the entry of judgment.  <u>See</u>, <u>e.g.</u>, <u>Davy v. C.I.A.</u>, 550 F.3d 1155, 1158 (D.C. Cir.

2008) ("After the agency filed a superseding motion for summary judgment [in a FOIA case], the

district court granted the agency's motion.  Davy thereafter timely filed a motion for attorney's

fees under 5 U.S.C. § 552(a)(4)(E)."); <u>N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border</u>

<u>Protection Bureau</u>, 563 F. Supp. 2d 217, 219-20 (D.D.C. 2008) (describing FOIA plaintiff's

motion for attorney's fees filed after the court ruled on summary judgment).  This is the course

contemplated by both the Federal Rules of Civil Procedure and the Local Rules of this Court.

<u>See</u> Fed. R. Civ. P. 54(d)(2)(B)(i) (requiring that a motion for attorney's fees be made "no later

than 14 days <u>after the entry of judgment</u>"); 54(d)(2)(B)(ii) (requiring that a motion for attorney's

fees "<u>specify the judgment</u> and the statute, rule, or other grounds entitling the movant to the

award"); Local Civ. R. 54.1(a) (requiring that a bill of costs be filed "within 21 days <u>after entry</u>

<u>of judgment</u>"); 54.2(a) ("In any case in which a party may be entitled to an attorney's fee from

another party, the court may, <u>at the time of entry of final judgment</u>, enter an order directing the

parties to confer and to attempt to reach agreement on fee issues.") (emphasis added for all

preceding citations).  In particular, Local Rule 54.2(a) clearly contemplates that the parties

should be given an opportunity to negotiate and resolve fee disputes after entry of judgment,

without the Court's intervention.  Although the Local Rules do not preclude pre-judgment

applications for fees, <u>see</u> Local Civ. R. 54.2(c), it is clear that such applications are the exception

and not the rule.

Accordingly, EPIC's request for the Court to adjudicate the issues of its eligibility for, and entitlement to, attorney's fees and costs is premature.  It effectively asks the Court to render an advisory opinion about a matter that the parties may be able to resolve without Court intervention.  The United States and its agencies frequently settle fee disputes in FOIA cases – typically after the entry of judgment – and there is simply no need for the Court to rule on the issues of eligibility and entitlement for fees at this early stage.  In addition, even assuming, <u>arguendo</u>, that EPIC could establish its eligibility for attorney's fees under the "catalyst theory" adopted in 5 U.S.C. § 552(a)(4)(E)(ii), based on its assertion that its initiation of litigation caused TSA to release non-exempt, responsive documents, in order to establish its entitlement to attorney's fees, EPIC must further show that the balance of four factors – "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents" – tip in its favor.  <u>Davy</u>, 550 F. 3d at 1159.  Although EPIC argues in its brief that these factors have been met, an evaluation of the first and fourth factors – the public benefit derived from the case and the reasonableness of TSA's withholdings – will necessarily depend on how the Court resolves the merits of the instant summary judgment motion as to the exemptions TSA has asserted over the test images and training documents.  Accordingly, a ruling on Plaintiff's entitlement to attorney's fees at this point would be premature.

EPIC's request for fees and costs is additionally premature because it filed these requests without conferring with Defendant pursuant to Local Rule 7(m).  This rule provides:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. The duty to confer also applies to non-incarcerated parties appearing pro se. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the

motion is opposed.

Local Civ. R. 7(m).  As this Court has recognized, a motion for attorney's fees – even one that is related to a dispositive motion – is a nondispositive motion that is subject to the requirements of Rule 7(m).  Alberts v. HCA Inc., 405 B.R. 498, 502 (D.D.C. 2009) (Urbina, J.).  Failure to comply with the rule results in denial of the motion at issue.  Id. at 501 (citing Abbott GmbH & Co. KG v. Yeda Research & Dev., Co., 576 F. Supp. 2d 44, 48 (D.D.C. 2008); U.S. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency, 456 F. Supp. 2d 46, 52 (D.D.C. 2006); Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 102 (D.D.C. 2006)).

The purpose of Rule 7(m) is "to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court." Alberts, 405 B.R. at 501 (quoting Ellipso, 460 F. Supp. 2d at 102) (internal quotation marks omitted).  This rationale is squarely applicable here.  Put simply, there is no need for the Court to consider the issues of fees and costs now, when the parties have not yet discussed or attempted to resolve these issues, and when Plaintiff made no attempt to approach Defendant to ascertain its position on fees and costs before filing its motion.

To the extent that EPIC argues that it has not made a motion for attorney's fees and costs that would trigger Rule 7(m)'s duty to confer, but has merely moved for summary judgment on the issues of eligibility and entitlement, the Court should reject that argument.  Although styled as a portion of a summary judgment motion, in substance, EPIC's request is a motion for attorney's fees and costs.  That EPIC has moved only on the issues of eligibility and entitlement to fees and costs, but not on the precise amount, is immaterial.  The issues of fees and costs are

separate from the merits of EPIC's FOIA claims and should be resolved pursuant to a separate

motion, made at the proper time and after a conference pursuant to Rule 7(m).[14]

Accordingly, Defendant asks that the Court deny Plaintiff's request for judgment on the

issues of eligibility and entitlement to fees and costs as premature.[15]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant asks that the Court grant its motion for summary

judgment, and deny Plaintiff's motion for summary judgment.


Date: July 12, 2010                                Respectfully submitted,

                                                   TONY WEST
                                                   Assistant Attorney General

                                                   RONALD S. MACHEN JR.
                                                   United States Attorney for
                                                   the District of Columbia

                                                   ELIZABETH J. SHAPIRO
                                                   Deputy Branch Director

                                                    /s/ Jesse Z. Grauman
                                                   JESSE Z. GRAUMAN (Va. Bar No. 76782)
                                                   U.S. Department of Justice
                                                   Civil Division, Federal Programs Branch

---

[14] Similarly, to the extent that EPIC may rely on a paragraph in the Parties' Joint Status Report and Proposed Schedule (Dkt. No. 15) to argue that its request for fees and costs is properly raised at summary judgment, such reliance is also misplaced.  In the status report, the parties agreed that "after Defendant has issued its final document production, the issues that will remain to be resolved are Defendant's compliance with FOIA's requirements and Plaintiff's eligibility and entitlement to attorney's fees and litigation expenses. These issues can be resolved by motions, filed according to an agreed-upon briefing schedule."  Jt. Status Rep't ¶ 8.  This language merely reflected the parties' anticipation of the issues that would ultimately need to be resolved and does not relieve Plaintiff of its obligation to file a motion for fees and costs at the proper time, or of its duty to confer on nondispositive motions such as those for attorney's fees and costs.

[15] To the extent that the Court agrees with Plaintiff that these issues are ripe for review now, Defendant respectfully requests that the Court issue an Order for full briefing on the merits of Plaintiff's requests for fees and costs.

Mailing Address:
Post Office Box 883
Washington, D.C.  20044

Courier Address:
20 Massachusetts Ave., N.W.
Washington, D.C. 20001

Telephone:        (202) 514-2849
Fax:              (202) 616-8460
Email:            jesse.z.grauman@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|                                                        |                              |
| ------------------------------------------------------ | ---------------------------- |
| ELECTRONIC PRIVACY INFORMATION CENTER,                 | )                            |
|                                                        | )                            |
| Plaintiff,                                             | )                            |
|                                                        | )                            |
| v.                                                     | ) Case No. 1:09-cv-02084 (RMU) |
|                                                        | )                            |
| THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY,     | )                            |
|                                                        | )                            |
| Defendant.                                             | )                            |
|                                                        | )                            |

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**NOT IN GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h) of the Rules of the United States District Court for the

District of Columbia, Defendant United States Department of Homeland Security ("DHS")

hereby submits the following response to Plaintiff's Statement of Material Facts Not in Genuine

Dispute (Dkt. No. 19-2):

1. Undisputed.

2. Undisputed.

3. Defendant does not dispute that TSA made its first disclosures of documents to EPIC

on December 1, 2009. Janet Decl. ¶ 9. Defendant disputes the allegation, however, to the extent

that EPIC alleges that DHS made no timely determinations as to EPIC's FOIA Requests. DHS

informed EPIC that it was referring its requests to TSA on April 29, 2009 and July 16, 2009,

respectively. Janet Decl. Exs. B, D. In addition, on May 4, 2009, TSA informed EPIC that it

was denying its request for expedited processing as to the April 14, 2009 request. See Ex. A.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

Date: July 12, 2010                    Respectfully submitted,

                                       TONY WEST
                                       Assistant Attorney General

                                       RONALD S. MACHEN JR.
                                       United States Attorney for
                                       the District of Columbia

                                       ELIZABETH J. SHAPIRO
                                       Deputy Branch Director

                                        /s/ Jesse Z. Grauman
                                       JESSE Z. GRAUMAN (Va. Bar No. 76782)
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch

                                       Mailing Address:
                                       Post Office Box 883
                                       Washington, D.C.  20044

                                       Courier Address:
                                       20 Massachusetts Ave., N.W.
                                       Washington, D.C. 20001

                                       Telephone:    (202) 514-2849
                                       Fax:          (202) 616-8460
                                       Email:        jesse.z.grauman@usdoj.gov

                                       Attorneys for Defendants