**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC PRIVACY INFORMATION CENTER

Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY

Defendant.

No. 1:09-cv-2084 (RMU)

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff the Electronic Privacy Information Center ("EPIC") submits the following reply in support of its motion for summary judgment against Defendant the U.S. Department of Homeland Security ("DHS"). EPIC challenges the DHS's withholding of "2,000 test images" produced by airport body scanners and "376 pages of training documents" concerning airport body scanners. EPIC also seeks its attorneys' fees and costs in this lawsuit, because EPIC qualifies for such relief irrespective of the outcome of the parties' cross-motions for judgment.

**FACTUAL BACKGROUND**

This lawsuit arises from EPIC's Freedom of Information Act ("FOIA") lawsuit against the DHS concerning the agency's use of body scanner technology – also called "full body scanners," "advanced imaging technology," or "whole body imaging" – to screen air travelers. Body scanners produce detailed, three-dimensional naked images of travelers. The TSA is using full body scanners at airport security checkpoints, screening passengers before they board flights.

The DHS does not dispute that it possesses 2,000 body scanner images and 376 pages of training documents concerning airport body scanners that are responsive to EPIC's July 2, 2009 FOIA Request ("EPIC's FOIA Request"). The DHS has refused to disclose these documents in this litigation and asserts FOIA Exemptions 2 and 3 as the bases for its withholdings. Defendant's Motion for Summary Judgment (the "DHS Motion") at 4-5.

EPIC's reply supports its cross-motion for summary judgment, Dkt. No. 19 ("EPIC's Motion") and opposes the DHS's Reply in Support of its Motion For Summary Judgment, and Opposition to Plaintiff's Cross-Motion for Summary Judgment, Dkt. No. 21 ("DHS's Reply").

**ARGUMENT**

The DHS's Reply reiterates the agency's claim that the 2,000 body scanner images and 376 pages of training documents at issue in the parties' cross motions are exempt form disclosure under FOIA. But the DHS's Reply concedes that two of the agency's three previously cited bases for its FOIA Exemption 3 claims are insufficient. And the sole remaining alleged basis, 49 U.S.C. § 114(r), is precisely the sort of overly broad statute that was eliminated as a basis for Exemption 3 claims by the 1976 FOIA amendments.

Further, the 2,000 images and 376 pages of training documents (to the extent they contain images), cannot be properly withheld pursuant to FOIA Exemption 2, because they are not "personnel rule[s] or internal practice[s] of the agency." 5 U.S.C. § 552(b)(2).

Finally, the DHS's Reply argues that EPIC's motion for attorneys' fees and costs

is premature, but fails to present any substantive opposition to the attorneys' fees section of EPIC's Motion. Moreover, the agency cites no authority prohibiting the Court from awarding attorneys' fees at this juncture, and merely cites authority in support of the proposition that the relief EPIC seeks is also available at a later date.

**I. FOIA Exemption 3 Does Not Permit the TSA to Withhold the 2,000 Body Scanner Images and 376 Pages of Training Documents**

FOIA Exemption 3 permits an agency to withhold responsive records "specifically exempted from disclosure by statute," if the statute

> (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

The DHS's motion for summary judgment, Dkt. No. 18 ("DHS Motion"), asserts three bases for the agency's Exemption 3 withholdings: 49 U.S.C. § 114(r), 49 U.S.C. § 46110, and 49 C.F.R. § 1520.5. DHS Motion at 11-13. EPIC's Motion details the insufficiency of the DHS's alleged bases. EPIC's Motion at 6-12.

The DHS's Reply concedes that 49 U.S.C. § 46110 does not constitute a "substantive basis for any withholdings." DHS's Reply at 5 n.2.

The DHS's Reply also concedes that 49 C.F.R. § 1520.5 cannot, "standing alone, … justify withholding information under FOIA." DHS's Reply at 10. Instead, the agency argues that 49 C.F.R. § 1520.5, "together with [49 U.S.C. § 114(r)], justify the withholdings." *Id*. Yet Section 1520.5 simply does not form any basis for withholding, either independently or in conjunction with Section 114(r).

Section 1520.5 is not a statute, and was not "affirmatively adopted by the legislature, as all statutes must be." *Founding Church of Scientology, Inc. v. Bell*, 603

F.2d 945, 952 (D.C. Cir. 1979). The regulation therefore fails the critical, threshold test under Exemption 3 – it does not describe a category of information "specifically exempted from disclosure *by statute*." 5 U.S.C. § 52(b)(3) (emphasis added). Employing an agency regulation as a basis for an Exemption 3 claim would also frustrate a "central aim" of the FOIA – to "substitute legislative judgment for administrative discretion." *Times v. United States* DOC, 236 F.3d 1286, 1289 (11th Cir. 2001). The DHS cannot use Section 1520.5, alone or in combination with a statute, to justify its Exemption 3 claims, even if the rule was issued "under rulemaking powers delegated by Congress." *Bell*, 603 F.2d at 952. The regulation plays no proper role in the Court's analysis of the DHS's Exemption 3 withholdings.

Unlike Section 1520.5, the DHS's final alleged basis for withholding, 49 U.S.C. § 114(r), is a statute. However, the DHS's Reply fails to distinguish Section 114(r) from Section 7(c) of the Export Administration Act ("EAA"), a law that the D.C. Circuit refused to recognize as a basis for Exemption 3 claims. *American Jewish Congress v. Kreps*, 574 F.2d 624, 632 (D.C. Cir. 1978) *Kreps*, held that the EAA was insufficiently specific to serve support an assertion of Exemption 3. *Id*. at 630. Section 114(r) and the EAA are indistinguishable.

The DHS's Reply claims that "Section 114(r), however, is easily distinguishable from the EAA provision at issue in *American Jewish Congress*," but fails to make any attempt to distinguish the virtually identical language used in the two provisions. DHS's Reply at 7. Section 114(r) authorizes the TSA to issue regulations barring the disclosure of information "if the Under Secretary decides that disclosing the information would … be *detrimental to the security of transportation*." 49 U.S.C. § 114(r)(1) (emphasis added).

The EAA states "no department … shall publish or disclose information obtained hereunder … unless the head of such department or agency determines that the withholding thereof is *contrary to the national interest*." 50 U.S.C.App. § 2406(c) (1970) (emphasis added). *Kreps* held that the EAA's "contrary to the national interest" language is too general to provide a basis for an Exemption 3 withholding. *Kreps*, 574 F.2d at 631. Section 114(r)'s "detrimental to the security of transportation" therefore also precludes the statute from supporting the DHS's Exemption 3 claim in the present case. Further, *Kreps* recognizes that this sort of broad, vague language gives agencies "'*cart blanche'* – precisely the kind of situation that Exemption 3 was amended to avoid." *Id*. The DHS's Reply's failure to distinguish between the EAA and Section 114(r) is unsurprising. Like the language at issue in *Kreps*, "perhaps there is a metaphysical distinction between" the two provisions, "but such a difference would not warrant dissimilar treatment under the Freedom of Information Act." *Id*.

## II. FOIA Exemption 2 Does Not Permit the TSA to Withhold the 2,000 Body Scanner Images and 376 Pages of Training Documents

FOIA Exemption 2 permits an agency to withhold responsive records under FOIA that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 supports an agency withholding if the internal documents, if disclosed, would risk circumvention of the law. *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1074 (D.C. Cir. 1981).

EPIC's Motion describes Exemption 2's inapplicability to the 2,000 body scanner images and 376 pages of training documents (insofar as the training document contain images) because the images do not qualify as agency records. EPIC Motion at 12-16. Moreover, only records that are used to regulate agency personnel qualify as "internal"

under the statutory language. *Crooker,* 670 F.2d at 1075. Further, the records must "provide instructions [or] contain rules or practices for [agency] personnel." *Living Rivers v. U. S. Bureau of Reclamation*, 272 F. Supp. 2d 1313, 1318 (D. Utah 2003). The images at issue in this case neither regulate agency personnel nor provide rules and instructions.

*Living Rivers* and *Audubon Society* invalidated agencies' Exemption 2 assertions on the basis that the subject documents were images, not instructions or rules. *Living Rivers*, 272 F. Supp. 2d at 1318; (requiring disclosure of flood plain maps); *Audubon Society v. U.S. Forest Service*, 104 F.3d 1201, 1204 (10th Cir. 1997) (requiring disclosure of maps depicting owl nesting locations). The DHS's Reply argues that *Living Rivers* and *Audubon Society* are inapposite because they rely on *Jordan*, portions of which were later overruled by *Crooker*. DHS's Motion at 12; *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 763 (D.C. Cir. 1978). However, neither *Jordan* nor *Crooker* involve FOIA disputes concerning images. Both cases involved FOIA requests for law enforcement manuals. *Jordan*, 591 F.2d at 757; *Crooker,* 670 F.2d at 1074. *Living Rivers* and *Audubon Society*'s refusal to accord images Exemption 2 protection applies equally to the frameworks described in *Jordan* and *Crooker*.

Moreover, the Court should be reluctant to extend Exemption 2 protection to images when the very legitimacy of the "High 2" exemption is in question. Although the D.C. Circuit recognizes the High 2 exemption, the Federal Circuits have not consistently recognized or applied High 2. Petition for Writ of Certiorari at 22–30, *Milner v. U.S. Dept. of the Navy,* 575 F.3d 959 (9th Cir. 2009) *cert. granted*, 78 U.S.L.W. 3762 (U.S. June 28, 2010) (No. 09-1163). It is not surprising that many courts do not recognize the

existence of High 2, given the plain language of the statute, which exempts "related solely to the internal personnel rules and practices of an agency," but makes no mention of circumvention or risk. 5 U.S.C. § 552(b)(2). For example, the Sixth and Eighth Circuits do not recognize High 2. *E.g. Rugiero v. DOJ*, 257 F.3d 534, 549 (6th Cir. 2001) (Exemption 2 applies only "to routine matters of merely internal significance"); *Cox v. Levi,* 592 F.2d 460, 462-63 (8th Cir. 1979) (holding Exemption 2 "exempts only 'housekeeping' matters."). The Fifth Circuit has declined to accept or reject High 2. *Stokes v. Brennan,* 476 F.2d 699, 702-03 (5th Cir. 1973). Four circuits, including this one, have adopted the High 2 Exemption, but use different tests to apply it. Petition for Writ of Certiorari at 24.

In June 2010, the Supreme Court granted certiorari in *Milner*, indicating that it intends to revisit the propriety of the High 2 exemption. This Court should exercise restraint in relying upon High 2 to prevent the disclosure of agency records that provide critical information concerning a controversial federal program. The Court should be particularly cautious given the circuit split regarding the existence of High 2 and the absence of language describing the exemption in the Freedom of Information Act.

## III. EPIC Is Entitled to Recover Its Costs and Fees

"The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). "A complainant has substantially prevailed if the complainant has obtained relief through … a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. The key inquiry is "did the institution and prosecution of the litigation

cause the agency to release the documents obtained during the pendency of the litigation?" *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981).

The DHS's Reply does not dispute the substance of EPIC's claim for attorneys' fees in this case. DHS's Motion at 17-21. The DHS's Reply does not dispute that EPIC has substantially prevailed. The agency does not, and cannot, dispute that EPIC's lawsuit forced the disclosure of over 1,000 pages of records that would have otherwise remained secret.

The DHS's Reply does not dispute that EPIC is entitled to recover fees under the standard, four-part balancing test used in FOIA cases. *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977) ("The court should consider [four factors] in determining the appropriateness of an award of costs and attorney fees."). The DHS's Reply alleges in passing that the first and fourth factors – the public benefit and the reasonableness of the agency's response – "will necessarily depend on how the Court resolves the merits of the instant summary judgment motion." DHS's Reply at 19. But that claim is not supported by the facts of this case. As described in EPIC's Motion, the public has already derived substantial benefits from EPIC's prosecution of this suit. EPIC Motion at 18. And DHS's seven-month delay in disclosing agency records cannot be supported by any "reasonable legal basis." *Id*. at 19-20. None of the four factor hinges on the Court's adjudication of the parties' motions for summary judgment.

Unable to contest the merits of EPIC's fee request, the agency argues that EPIC's request is premature. *Id*. at 17-18 ("the Court should defer consideration of attorney's fees and costs until after it resolves the merits of the case."). However, the Federal Rules specifically contemplate summary adjudication of liability, even when the amount of

damages is uncertain. Fed. R. Civ. P. 56(d)(2) ("An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."). EPIC seeks just such a judgment in this case – Plaintiff has proved its entitlement to attorneys' fees, asks for summary judgment as to the DHS's liability, and will submit a bill of costs at the conclusion of the lawsuit.

Further, judicial economy favors the prompt, summary adjudication of all disputes that do not involve disputed issues of material facts. *See* Fed. R. Civ. P. 56(d)(1) ("If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue."). This is particularly true when the issue at hand—EPIC's entitlement to attorneys' fees and costs—is clear, and when the opposing party offers no substantive opposition. As discussed in EPIC's Motion, EPIC is plainly entitled to recover its attorneys' fees in this matter under 5 U.S.C. § 552(a)(4)(E). The DHS's Reply fails to rebut EPIC's entitlement to fees in this case. The agency argues that EPIC's request is premature, but does not cite any authority that prohibits the Court from granting EPIC's request for fees. The DHS's Reply cites ample authority for the proposition that EPIC may petition the Court for fees after the parties' cross-motions are resolved. But it does not demonstrate that this is EPIC's exclusive remedy, nor that the Court may not grant EPIC's request for fees at this stage.

**CONCLUSION**

For the foregoing reasons, EPIC asks the Court to deny Defendant's Motion for Summary Judgment and grant EPIC's Cross-motion for Summary Judgment as to the DHS's withholding of the 2,000 Body Scanner Images and the 376 Pages of Training Documents. Further, EPIC is entitled to recover its costs and fees because it has "substantially prevailed" in this case regardless of the outcome of the parties' cross-motions for summary judgment.

Respectfully submitted,

_________*/s/ John Verdi*________
MARC ROTENBERG
JOHN VERDI
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: July 26, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of July 2010, I served the foregoing PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, including all exhibits and attachments, by electronic case filing upon:

JESSE Z. GRAUMAN
U.S. Department of Justice
Civil Division, Federal Programs Branch

_______*/s/ John Verdi*________________
John Verdi
*Counsel for Plaintiff*