UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | : : : | Civil Action No.: | 09-2084 (RMU) |
| Plaintiff, | : : | | |
| v. | : : | Re Document Nos.: | 18, 20 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | : : : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment. The plaintiff – a non-profit organization that reviews federal activities and policies to determine their possible impacts on civil liberties and privacy interests – submitted two requests to the defendant, the Department of Homeland Security ("DHS"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking information pertaining to whole-body imaging technology used to screen air travelers. DHS produced some responsive documents, but withheld 2,000 images produced by body scanning technology, invoking two of the exemptions enumerated in FOIA. DHS has filed a motion for summary judgment, asserting that it has produced all of the information that FOIA requires. Because the withheld images fall within FOIA's exemption 2-high, the court grants DHS's motion for summary judgment and denies the plaintiff's cross-motion for summary judgment.

## II. BACKGROUND

### A. Factual History

The Transportation Security Administration ("TSA"), a component of DHS, uses "body scanners," machines that produce three-dimensional images of individuals, to screen airline passengers prior to boarding their flights. Compl. ¶ 6, *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, No. 09-2084 (D.D.C. Nov. 5, 2010). The plaintiff submitted two separate FOIA requests to DHS in April 2009 and July 2009 seeking information on the TSA's use of body scanning technology or "whole body imaging." Def.'s Statement of Material Facts Not in Dispute[1] ("Def.'s Statement") ¶¶ 1-2. Among other things, the plaintiff sought "[a]ll unfiltered or

---

[1] With one minor exception having no bearing on this court's ruling, the parties agree on the facts as presented in the Defendant's Statement of Material Facts. *See* Pl.'s Statement of Genuine Issues in Opp'n to Def.'s Statement at 1; *see also* LCvR 7(h) (noting that "the court may assume facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

unobscured images captured using body scanner technology.[2] *Id.* ¶ 2.

DHS transferred the requests to TSA believing that TSA would likely possess the responsive records. *Id* ¶¶ 1-2. Ultimately, DHS produced 1,766 pages of responsive documents,

---

[2] The plaintiff's first request, submitted in April 2009, sought the following records:

1. All documents concerning the capability of passenger imaging technology to obscure, degrade, store, transmit, reproduce, retain, or delete images of individuals;

2. All contracts that include provisions concerning the capability of passenger imaging technology to obscure, degrade, store, transmit, reproduce, retain, or delete images of individuals; and

3. All instructions, policies, and/or procedures concerning the capability of passenger imaging technology to obscure, degrade, store, transmit, reproduce, retain, or delete images of individuals.

Def.'s Statement ¶ 1.

In July 2009, the plaintiff submitted a second FOIA request to the defendant, which sought

1. All unfiltered or unobscured images captured using Whole Body Imaging Technology.

2. All contracts entered into by DHS pertaining to Whole Body Imaging systems, including contracts for hardware, software, or training.

3. All documents detailing the technical specifications of Whole Body Imaging hardware including any limitations on image capture, storage, or copying.

4. All documents, including, but not limited to, presentation, images, and videos used for training persons to use Whole Body Imaging systems.

5. All complaints related to the use of Whole Body Imaging and all documents relating to the resolution of those complaints.

6. All documents concerning data breaches of images generated by Whole Body Imaging technology.

Def.'s Statement ¶ 2.

many of which were redacted.³  Def.'s Statement ¶ 5.  DHS further withheld in full 2,000 images produced by the body scanners and 376 pages of TSA training materials.  Def.'s Statement ¶ 5.

According to TSA, the 2,000 images contain "various threat objects dispersed over the bodies," Def.'s Mot., Roberts Decl. ¶ 20, and were "created for the purpose of testing the degree to which vendors' [body scanners] conform[ed] to the detection standards issued by TSA in its procurement specifications," *id.* ¶ 16.  Although TSA has released a "limited number of images to the public," it has determined that "any further release of images would constitute a threat of transportation security."  *Id*. ¶ 17.

Additionally, DHS withheld in full 376 pages of "security training materials."  *Id.* ¶ 21.  This material consists of instructor guides and training manuals that "were created to train TSA employees who operate" the body scanners.  *Id. ¶* 22.  Many of the 2,000 withheld images were also used in developing TSA training materials.  *Id.*¶¶ 16, 22.

### B.  Procedural History

The plaintiff commenced a suit on November 5, 2009 with regard to its first request, and then commenced a second suit on January 13, 2010 with regard to its second request, alleging in both cases that DHS failed to respond in a timely fashion to its FOIA requests.  *Id.* ¶ 4.  The court, upon the parties' joint motion, consolidated the actions in March 2010.  Minute Order, *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, No. 09-2084 (D.D.C. Mar. 17, 2010).

---

3  DHS withheld responsive parts of these documents under exemptions 2-high, 3, 4, and 5.  *See* Def.'s Mot., Ex. M.  The plaintiff does not challenge that these documents were properly exempt.  *See generally* Pl.'s Cross-Mot.; Pl.'s Reply.  Accordingly, the court grants summary judgment to DHS with regard to its redactions of the 1,766 responsive documents.  *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (holding that "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded" (citing *Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997))).

DHS has moved for summary judgment, asserting that it conducted a reasonable search for responsive records,[4] Def.'s Mot. at 9, properly invoked FOIA exemptions 2-high and 3, *id.* at 10-26, and reasonably segregated exempt from non-exempt documents, *id.* at 26-28. The plaintiff has filed a cross-motion for summary judgment challenging DHS's refusal to disclose the 2,000 images and 376 pages of training materials under exemptions 2-high and 3.[5] *See generally* Pl.'s Cross-Mot. With these issues now ripe for review, the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for Summary Judgment in FOIA Cases

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the

---

[4] The plaintiff does not respond to DHS's arguments regarding the adequacy of its search for responsive documents. *See generally* Pl.'s Cross-Mot.; Pl.'s Reply. Thus, the court grants summary judgment to DHS with regard to this issue. *See Buggs v. Powell*, 293 F. Supp. 2d at 141.

[5] In its cross-motion, the plaintiff also moves the court for an award of attorney's fees. Pl.'s Cross-Mot. at 17-20. DHS maintains that such a request is premature. Def.'s Reply at 17. The court agrees with DHS that resolution of this issue is premature, but shall allow the parties to brief this issue in accordance with the schedule set forth in the Order accompanying this Memorandum Opinion. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 37 n18 (D.C. Cir. 1998) (observing that the district court's discussion of attorney's fees had been premature where summary judgment had not yet been resolved); *see also Wheeler v. Exec. Office of United States Attorneys*, 2008 WL 178451, *7 (D.D.C. Jan. 17, 2008) (ordering further briefing on the issue of attorneys fees upon concluding that resolution of the issue was premature at summary judgment stage).

party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA and that the agency has adequately segregated exempt from non-exempt materials. 5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency may meet its burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the reason for the withholding. *Summers*, 140 F.3d at 1080; *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987); *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn* index"). Additionally, the court may grant summary judgment to an agency on the basis of its affidavits if they:

> [(a)] describe the documents and the justifications for nondisclosure with reasonably specific detail, [(b)] demonstrate that the information withheld logically falls within the claimed exemption, and [(c)] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

### B. The Court Grants DHS's Motion for Summary Judgment and Denies the Plaintiff's Cross-Motion for Summary Judgment

#### 1. Legal Standard for Exemption 2-High

FOIA's exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Materials exempt under exemption 2 fall into two categories: 2-high and 2-low. *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Exemption 2-high, the only category at issue in this case, protects "[p]redominantly internal documents[,] the disclosure of which would risk circumvention of agency statutes." *Id*.

This Circuit has articulated a two-step inquiry to determine if information is exempt under exemption 2-high. *Elliot v. U.S. Dep't of Agriculture*, 596 F.3d 842, 847 (D.C. Cir. 2010). First, the information must be "used for predominantly internal purposes" and relate to "rules and practices for agency personnel." *Id.* (citing *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc)). Second, if the threshold requirement is satisfied, "the agency can defeat disclosure by demonstrating that release of the material would significantly risk circumvention of federal regulations or statutes." *Id.* (citing *Schiller*, 964 F.2d at 1207). "[W]here the asserted government interest is, by definition, to prevent circumvention of the law, the threshold inquiry may be somewhat less demanding." *Id.* (recognizing that "judicial willingness to sanction a weak relation to 'rules and practices' may be greatest when the asserted government interest is relatively weighty").

7

### b. DHS Properly Invoked Exemption 2-High

DHS argues that the test images and training materials are properly withheld under exemption 2-high because they are "predominately internal" materials "designed to establish rules and practices for agency personnel." Def.'s Mot. at 18-19. DHS asserts that these materials are "solely internal and have not left the agency at all." *Id.* at 19; Janet Decl. ¶ 36. DHS further maintains that the images and training materials "reveal the types of objects typically searched for (or not searched for) . . . by TSA officials, as well as [Body Scanners'] detection capabilities and limitations for each object." Def.'s Mot. at 21. Thus, DHS concludes, "the images, if released, would reveal certain security vulnerabilities of the machines themselves, as well as searching and screening techniques employed by TSA." *Id.*

The plaintiff contends that images do not constitute "personnel rules or internal practices of the agency." Pl.'s Cross-Mot. at 14; Pl.'s Reply at 6. Additionally, the plaintiff submits that the images were not "designed to establish rules and practices of internal interest to agency personnel, and there is a substantial public interest in disclosure." Pl.'s Cross-Mot. at 15. Lastly, the plaintiff argues that because TSA has already released a limited number of body scanner images to the public, it cannot argue that any further disclosure of these images would not circumvent a lawful agency regulation. *Id.*

As a threshold matter, the court observes that the plaintiff has not challenged DHS's invocation of exemption 2-high with respect to the non-image training materials. *See* Pl.'s Cross-Mot. at 13-17; Pl.'s Reply at 5-7. Indeed, the plaintiff argues only that exemption 2-high does not apply to the training documents "insofar as the training document[s] contain images," Pl.'s Reply at 5, and asks that the court "compel [DHS] to disclose the withheld training documents insofar as the records contain dozens of pages of electronic body scanner images."

Pl.'s Cross-Mot. at 16 (internal citations omitted). Thus, the court concludes that the plaintiff has conceded that the non-image training materials are properly withheld under exemption 2-high. *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (holding that "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded" (*citing Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997))). Accordingly, the court turns to consider whether DHS has properly withheld all of the images, including those used in the training materials, under exemption 2-high.

"Information need not take the form of a rule or practice . . . to fall within the high 2 exemption. Rather, the exemption expressly protects from disclosure material 'related' to agency rules or practices." *Elliot*, 596 F.3d at 848. Additionally, exemption 2-high "encompasses materials that are so closely related to rules and practices that disclosure could lead to disclosure of the rule or practice itself." *Id.* (internal citation omitted). Under this reasoning, this Circuit has allowed an agency to redact the symbols on Federal Bureau of Investigation documents, information which, if released, would shed light on the FBI's practice of using symbols to communicate about secret informants, *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 795-96 (D.C. Cir. 1990), as well as "routing instructions" appearing on FBI documents that would reveal the agency's internal routing and distribution practices. *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 829 (D.C. Cir. 1983). Further, the rules and practices governing agency personnel are not limited to "minor employment matters," but also cover "significant matters like job training for law enforcement personnel," *Crooker*, 670 F.2d at 1056, and, more generally, information "used for the internal purpose of instructing

agency personnel on how to do their jobs," *Milner v. U.S. Dep't of the Navy*, 575 F.3d 959, 969 (9th Cir. 2009).

Accordingly, the images at issue can be exempt under 2-high they are so closely related to TSA's rule or practice that their disclosure could reveal the rule or practice itself. *See Milner*, 575 F.3d at 970 n.6 (9th Cir. 2009) (observing that "the fact that the information at issue was expressed in the form of a map is utterly irrelevant to [an exemption 2] analysis"); *see also Elliot*, 596 F.3d at 848 (holding that a blueprint is properly withheld under exemption 2-high). DHS has shown, moreover, through the declaration of Mark Roberts, the acting manager of the Sensitive Security Information ("SSI") Branch of TSA, that the release of the images could reveal the rules and practices used by TSA officials to enforce transportation security. *See* Roberts Decl. ¶ 9. According to Roberts, the purpose underlying the creation of these images was to allow TSA to test the degree to which the body scanners it owned and operates conform to TSA's "detection standards." *Id*. ¶ 16. Revealing these images, Roberts states, would provide "insight into difficulties that may exist in identifying specific types of prohibited items, their sizes and shapes and consistencies, methods or locations of obscuring or camouflaging threat objects and the degree to which TSA settings and calibrations of screening equipment are distinct from the standards used by other organizations." *Id*. ¶ 17. Additionally, TSA has used many of these images in training its employees on how to use the machines to detect a security threat. *Id.* Thus, according to Roberts, the release of the images, would expose "TSA's processes, routines, vulnerabilities, the types of materials for which TSA searches (and conversely *does not search*), the location of those materials, and the limitations on TSA's capabilities." *Id.* ¶ 23. Because the disclosure of these images would reveal TSA's detection standards, the court concludes that they relate to the rules and practices of TSA. *See Cox v. U.S. Dep't of Justice*, 602 F.2d 1, 4 (D.C.

Cir. 1979) (noting that exemption 2 applied to information "prescrib[ing] the methods and strategy to be followed by law enforcement agents in the performance of their duties").

Moreover, the plaintiff does not dispute that the images were prepared solely for internal review and use within TSA. *See generally* Pl.'s Cross-Mot, Pl.'s Reply; *see also* Roberts Decl. ¶ 36; Def.'s Mot. at 19. Thus, the court also concludes that the images are "used for predominantly internal purposes." *Elliot*, 596 F.3d at 847.

Finally, the court considers whether DHS has demonstrated that the release of the images would "significantly risk circumvention of federal regulations or statutes." *Id.* An agency need not "identif[y] a specific statute or regulation threatened by disclosure," where "disclosure of a particular set of documents would render those documents operationally useless." *Schiller*, 964 F.2d at 1208 (quoting *Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 530-31 (D.C. Cir. 1986)). Additionally, "it is well-established that a court may rely on government affidavits to support the withholding of documents under FOIA exemptions," and "[i]t is equally well-established that the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003); *see also Zadvydas v. Davis*, 533 U.S. 678, 696 (2001) (noting that "terrorism or other special circumstances" might warrant "heightened deference to the judgments of the political branches").

As elaborated earlier, the images sought by the plaintiff provide insight into TSA's capabilities to detect a threating object during airline passenger screening. *See* Roberts Decl. ¶¶ 17, 23. TSA has "determined that any further release of images would constitute a threat to transportation security because it would enable terrorists, by comparing and contrasting more images to determine" TSA's capabilities and limitations. *Id.* Although the plaintiff may

disagree with TSA's assessment, *see* Pl.'s Cross-Mot. at 15, it provides no basis for the court to question TSA's reasonable conclusion that the disclosure of the images at issue may provide terrorists and others with increased abilities to circumvent detection by TSA and carry threatening contraband onboard an airplane, undoubtedly violating countless penal statutes and regulations, *see*, *e.g.*, 49 C.F.R. § 1540.111 (prohibiting the "carriage of weapons, explosives, and incendiaries by individuals" in airport screening); 18 U.S.C. § 844 (outlawing the transportation of explosives in interstate commerce). The court therefore concludes that DHS has met its burden of demonstrating that the release of the images would allow individuals to circumvent the law. *See Military Audit Project*, 656 F.2d at 738 (deferring to the agency's assertions in holding that the information could cause serious damage to the national security); *Gardels v. Cent. Intelligence Agency*, 689 F.2d 1100, 1104 (D.C. Cir. 1982) (stating that "[o]nce satisfied that proper procedures have been followed and that the information logically falls into the exemption claimed, the courts need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith").

Accordingly, the court determines that DHS has properly invoked exemption 2-high in withholding the 2,000 images produced by the body scanners. Because all of the images were withheld under this exemption, the court need not reach the question of whether exemption 3 also applies. *See Simon v. U.S. Dep't of Justice*, 980 F.2d 782, 784-85 (D.C. Cir. 1992) (declining to analyze whether other exemptions apply where the information at issue was properly withheld under exemption 2).

### 3. DHS Has Satisfied the Segregability Requirement

#### a. Legal Standard for Segregability Requirement

FOIA mandates that "any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). By 1977, it had "long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent.*, 566 F.2d at 260. The Circuit has made clear that "the 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C. Cir. 1984). In fact, the segregability requirement is so essential to a FOIA inquiry that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

To demonstrate that the withholding agency has disclosed all reasonably segregable material, "the withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King*, 830 F.2d at 224 (internal quotations omitted). The agency, however, is not required to provide so much detail that the exempt material effectively would be disclosed. *Mead Data Cent.*, 566 F.2d at 261. Furthermore, conclusory language in agency declarations that do not provide a specific basis for segregability findings by a district court may be found inadequate. *Animal Legal Def. Fund, Inc. v. Dep't of Air Force,* 44 F. Supp. 2d 295, 301 (D.D.C. 1999). This Circuit, though expressly disclaiming any attempt to provide "an encompassing definition of 'conclusory assertions,'"

noted that "it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987).

### b. DHS Has Demonstrated That Exempt Material Is Inextricably Intertwined With Non-Exempt Material

DHS maintains that "[n]o aspect of the images is segregable because *each image* contains various threat objects dispersed throughout the bodies reflected on those images." Def.'s Mot. at 26-27 (citing Roberts Decl. ¶ 20). The plaintiff does not address the segregability issue. *See generally* Pl.'s Cross-Mot.; Pl.'s Reply. Nevertheless, the court has an "affirmative duty" to consider whether any non-exempt segregable material can be released. *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1123 (D.C. Cir. 2007).

It is reasonable to conclude that the removal of the "dispersed" threat objects from the image of a human body may provide valuable information as to where one can hide such contraband. *See Elliott*, 596 F.3d at 851 (affirming district court's determination that a blueprint exempt from disclosure was not segregable from blueprints of surrounding buildings because providing the non-exempt blueprints "would effectively tip off intruders that potential targets such as biological agents are located in buildings whose blueprints were withheld"). Thus, the court concludes that to the extent that parts of the images contain no "dispersed threat," and can be considered non-exempt material, they are inextricably intertwined with parts of the images properly withheld under exemption 2-high and need not be released. *See Mead Data Cent.*, 566 F.2d at 260 (noting that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions").

14

## IV. CONCLUSION

For the foregoing reasons, the court grants DHS's motion for summary judgment and denies the plaintiff's cross-motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 12th day of January, 2011.

RICARDO M. URBINA
United States District Judge