# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ELECTRONIC PRIVACY                      )
INFORMATION CENTER,                     )
                                        )
      Plaintiff,                     )
                                        )
      v.                             )          Case No. 1:09-cv-02084 (RMU)
                                        )
THE UNITED STATES DEPARTMENT OF         )
HOMELAND SECURITY,                      )
                                        )
      Defendant.                     )
_____)

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff Electronic Privacy Information Center ("EPIC") has moved the Court for an award of attorneys' fees and costs against defendant Department of Homeland Security ("DHS") in this Freedom of Information Act ("FOIA") action. For the reasons stated below, EPIC's motion should be denied. First, EPIC filed its motion without conferring with defendant in violation of Local Civil Rule 7(m), and its motion should be denied for that reason alone. In particular, EPIC's motion should be denied because it refused, without explanation, to engage in settlement negotiations regarding fees and costs when defendant offered to do so.

If the Court reaches the issue of whether FOIA entitles EPIC to fees, it should nonetheless deny EPIC's motion. First, although EPIC may be eligible for fees, it is not entitled to them because the release of the information in question did not have a "public benefit" and because any initial "withholdings" by TSA were a function of delay and not bad faith or obduracy. In the alternative, if EPIC is found both eligible for and entitled to fees and costs,

EPIC's request for $33,729.40 in fees and costs is unreasonable.  EPIC has unreasonably requested a 20 percent increase in its fees, a request that is wholly unsupportable and should be denied.  Moreover, EPIC has billed for expenses that are not compensable under FOIA, and has generally charged an excessive and unreasonable number of hours on what, at bottom, is a simple, straightforward FOIA case.  If EPIC's request is not denied in its entirety, it should be substantially reduced to an amount of $2463.25.

## **BACKGROUND**

The instant case comprises two consolidated actions, Civil Action Nos. 1:09cv2084 (EPIC v. DHS I) and 1:10cv63 (EPIC v. DHS II), both of which were brought under the FOIA. In both cases, EPIC alleged in its complaints that it had made a FOIA request for documents concerning "whole body imaging" ("WBI") by defendant's component, the Transportation Security Administration ("TSA"), and that defendant did not respond to the request within the statutory time period.  The original FOIA requests were made in April 2009 and July 2009 respectively.

Although TSA has conceded that it did not initially respond to EPIC's two requests during the FOIA's statutory time periods, it provided EPIC with an interim response to the April 2009 request on December 1, 2009, less than a month after EPIC filed its Complaint in EPIC v. DHS I.  TSA and EPIC then agreed on a production schedule for the remainder of the responsive documents, which the Court adopted.  See Dkt. No. 15.  The parties later agreed to consolidate the two actions due to the overlapping subject of the two FOIA requests (including some items in the two FOIA requests that the parties agreed were substantially the same, see Def.'s Mem. in Support of Summary Judgment (Dkt. No. 18) at 4), and agreed that the scheduling order from EPIC v. DHS I would govern both actions.  See Dkt. No. 16.  TSA completed its production of

over 1,700 pages of documents on April 15, 2010, and on May 18, 2010 provided a draft <u>Vaughn</u>

index to plaintiff listing the specific FOIA exemptions it was planning to assert over any

withheld documents or excerpts.  <u>See</u> Dkt. No. 18 at 5.  Plaintiff agreed not to challenge most of

the asserted withholdings, and also did not challenge the scope of TSA's search.  <u>See id.</u>

     Defendant moved for summary judgment on May 27, 2010.  <u>See</u> Dkt. No. 18.  In its

response, EPIC challenged only the withholdings of two categories of documents: 2,000 test

images maintained in a TSA facility, and 376 pages of training documents.  <u>See</u> Dkt. No. 19.

Both of these sets of records were withheld pursuant to FOIA Exemptions 2 ("high") and 3.  On

January 12, 2011, the Court granted defendant's summary judgment motion and denied

plaintiff's motion, finding that TSA's application of Exemption 2 ("high") was proper without

reaching the question of whether Exemption 3 applied.  <u>See</u> Dkt. No. 25.  The Court also set a

schedule for briefing on the issue of attorneys' fees and costs, ordering that any motion for

attorneys' fees be filed by January 21, 2011.  <u>See</u> Minute Order, Jan. 12, 2011.

     On January 14, 2011, two days after the Court's order, counsel for defendant requested,

via email, that plaintiff's counsel provide its fee demand and billing records to determine

whether the parties could settle the issue of attorneys' fees.  <u>See</u> Ex. A.  Plaintiff's counsel

indicated that he would provide the records, likely in the following week.  <u>See</u> Ex. B.  Plaintiff's

counsel did not provide the requested records, but instead filed a Motion for Attorneys' Fees and

Costs (Dkt. No. 26) on January 21, requesting a total of $33,729.40, including $700 in costs and

$33,029.40, in fees, representing a 20 percent increase over current <u>Laffey</u> matrix rates.[1]

---

[1] EPIC did not actually include the $33,729.40 figure anywhere in its motion filed on January 21, but in fact requested a total of $28,224.50 in fees and costs in its motion and attachments.  <u>See</u> Pl.'s Mot. at 14 & Dkt. No. 26-4.  However, EPIC included, in the text of its motion, a request for a 20 percent increase over the amounts in the <u>Laffey</u> matrix, and then belatedly filed a Proposed Order on January 24 that would require a total payment of $33,729.40 and would also require that any fee be paid within 30 days (a requirement not discussed at all in EPIC's motion).

## STANDARD OF REVIEW

A plaintiff must satisfy a two-step inquiry to receive fees and costs in a FOIA action. First, the plaintiff must show that it is eligible for an award.  To meet this standard, the plaintiff must show that it has "substantially prevailed," that is, that it obtained relief through either (1) "a judicial order, or an enforceable written agreement or consent decree;" or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  The second of these two options "essentially codifies the 'catalyst theory'" of recovery, under which a plaintiff is eligible for fees if the "litigation substantially caused the requested records to be released."  N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau, 563 F. Supp. 2d 217, 221 (D.D.C.2008) (internal citation omitted).

Eligibility does not end the inquiry, however, as not all FOIA plaintiffs who are eligible for fees and costs are entitled to them.  Church of Scientology of Cal. v. Harris, 653 F.2d 584, 590 (D.C. Cir. 1981).  Factors that traditionally guide the entitlement inquiry include (1) the public benefit derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law.  See Davy v. CIA, 550 F. 3d 1155, 1159 (D.C. Cir. 2008).  Ultimately, the decision on whether a plaintiff is entitled to attorneys' fees "rests in the sound discretion of the district court."  Church of Scientology, 653 F.2d at 590.

If the Court finds that EPIC is entitled to attorneys' fees, it must determine a reasonable amount of fees.  An appropriate starting point is typically the lodestar, a reasonable number of hours multiplied by a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1982).  Fees for unsuccessful claims are not awarded.  See Judicial Watch v. U.S. Dep't of

---

See Dkt. No. 27.  In light of the Proposed Order and the request for a 20 percent increase included in the text of EPIC's brief, defendants understand EPIC to be asking the Court to award it a total of $33,729.40, including $33,029.40 in fees and $700 in costs.

Commerce, 470 F.3d 363, 369 (D.C. Cir. 2006); Nat'l Sec. Archive v. U.S. Dep't of Defense, 530 F. Supp. 2d 198, 204-205 (D.D.C. 2008).  Moreover, as a decision to award fees is discretionary, a court "may deny in its entirety a request for an 'outrageously unreasonable' amount, lest claimants feel free to make 'unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.'"  Envtl. Defense Fund, Inc. v. Reilly, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quoting Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir.1980)).  If overbilling is less egregious but still unreasonable, the Court "may impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request."  Id. (citing Farris v. Cox, 508 F. Supp. 222, 227 (N.D. Cal. 1981)).

## ARGUMENT

### A.  EPIC's Motion Should be Denied Because of Its Failure to Confer with Defendant and its Unexplained Refusal to Engage in Settlement Negotiations Regarding Attorneys' Fees.

EPIC's motion for attorneys' fees should be denied because EPIC failed to confer with defendant as required by Local Civil Rule 7(m), even after defendant's counsel specifically requested EPIC's fee records.  Such failure to confer, particularly given that defendant placed EPIC on notice of this requirement earlier in this litigation, is fatal to EPIC's motion, which, therefore, should be denied in its entirety.

Local Rule 7(m) provides:

Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. The duty to confer also applies to non-incarcerated parties appearing pro se. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the

motion is opposed.

Local Civ. R. 7(m).  As this Court has held, a motion for attorneys' fees – even one that is related

to a dispositive motion – is a nondispositive motion that is subject to the requirements of Rule

7(m).  Alberts v. HCA Inc., Misc. No. 06-0088, 405 B.R. 498, 501-02 (D.D.C. May 19, 2009)

(Urbina, J.) (citing Niedermeier v. Office of Baucus, 153 F. Supp. 2d 23, 26 (D.D.C. 2001).

Failure to comply with Rule 7(m) "will result in denial of the motion."  Alberts, 405 B.R. at 501

(citing Abbott GmbH & Co. KG v. Yeda Research & Dev., Co., 576 F. Supp. 2d 44, 48 (D.D.C.

2008); U.S. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency, 456 F. Supp. 2d 46, 52

(D.D.C. 2006); Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 102 (D.D.C. 2006)).[2]

EPIC's instant motion marks the second time it has moved for attorneys' fees without

complying with Rule 7(m).  It initially did so in its summary judgment motion.  See Dkt. No. 19

at 17-20.  Defendant argued in its opposition brief that EPIC had failed to meet Rule 7(m)'s

conference requirement, see Dkt. No. 21 at 19-21.  The Court found, in its opinion granting

summary judgment to DHS, that EPIC's fee motion was premature.  See Dkt. No. 25 at 5 n.5.

EPIC now again moves for fees notwithstanding its failure to comply with Rule 7(m).

Moreover, not only did EPIC fail to make any affirmative effort to confer with defendant, it also

failed to respond, without explanation, to Defendant's attempts to engage in negotiations to

attempt to resolve or narrow the fee issue without the need for court intervention.  As outlined

above, on January 14, 2011, two days after the Court granted summary judgment to DHS,

undersigned counsel e-mailed counsel for EPIC, requesting EPIC's fee records in an attempt to

determine whether the fee dispute could be settled.  See Ex. A.  This offer was not without

---

[2] Moreover, EPIC cannot argue that the requirements of Rule 7(m) were unnecessary in light of
defendant's instant opposition to plaintiff's motion.  See Alexander v. F.B.I., 186 F.R.D. 197,
199 (D.D.C. 1999) ("Local Rule [7(m)] would be meaningless if a party could . . . file any
nondispositive motion they chose without meeting and conferring, and later argue that a Local
Rule [7(m)] argument is moot simply because the motion is later opposed.").

precedent; indeed, undersigned counsel and EPIC recently resolved a fee dispute in another case without the need for briefing.  <u>See</u> Notice of Acceptance with Offer of Judgment, <u>EPIC v. U.S. Dep't of Justice</u>, No. 1:09cv2394, Dkt. No.16 (Ex. C).  Although counsel for EPIC indicated that he would forward documents regarding fees, likely in the following week, <u>see</u> Ex. B, EPIC never forwarded such documents, nor did EPIC provide an explanation for not doing so.  Rather, Defendant received EPIC's fee records when EPIC filed them with its motion for attorneys' fees and costs on January 21.

This Court and others have noted a district court's authority to reject or limit attorneys' fee awards when good-faith settlement efforts are rebuffed.  <u>See</u> <u>American Lands Alliance v. Norton</u>, 525 F. Supp. 2d 135, 144 (D.D.C. 2007) (explaining that "[a] district court has discretion to limit an award of attorneys' fees when a substantial settlement offer is rejected and subsequent hours litigating the matter are expended," and citing <u>Moriarty v. Svec</u>, 233 F.3d 955, 967 (7th Cir. 2000) for the principle that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorneys' fees, even where Rule 68 does not apply").  These rationales are applicable here.  Although defendant, unlike the defendants in those cases, never made an actual "substantial settlement offer," it should not be penalized for this as it was not in a position to do so until EPIC tendered the requested billing records, which EPIC never did prior to filing its motion.  Consequently, EPIC's fee award should be denied, or in the alternative, substantially reduced for its unexplained failure to respond to defendant's offer to negotiate fees.[3]

---

[3] At minimum, as discussed further below, EPIC should be denied "fees on fees" due to its failure to engage in negotiations despite defendant's efforts.  <u>See</u> <u>infra</u> Part C.5.

As this Court held in <u>Alberts</u>, EPIC's failure to engage in any conference whatsoever pursuant to Rule 7(m) with defendant warrants denial of its fee petition. Moreover, denial is further warranted by EPIC's failure to respond to defendant's good faith efforts to negotiate fees.

**B.  EPIC Is Not Entitled to Fees and Costs under FOIA.**

If the Court does reach the legal issues of EPIC's eligibility for and entitlement to attorneys' fees and costs, it should deny EPIC's motion because EPIC is not entitled to fees and costs under the circumstances presented here.

As a general matter – not as applied to any particular billing item – defendant assumes that EPIC is <u>eligible</u> for an award of costs and attorneys' fees under FOIA's "catalyst theory." See 5 U.S.C. § 552(a)(4)(E)(ii)(II). Defendant also assumes <u>arguendo</u> that the "commercial benefit" and "nature of the complainant's interest" prongs likely favor EPIC, at least as to the merits of its FOIA case, in that EPIC, based on its representations, is a not-for-profit organization with an interest in bringing information about electronic privacy issues to light.[4]

However, the documents released did not have a "public benefit." This factor "speaks for an award [of fees] when the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." <u>Cotton v. Heyman</u>, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (internal citations omitted). However, when the information released is already in the public domain, fees should not be awarded. <u>See</u> <u>Tax Analysts v. U.S. Dep't of Justice</u>, 965 F. 2d 1092, 1094 (D.C. Cir. 1992) (affirming lower court's finding that release of publicly available information was "less than overwhelming" benefit to public); <u>Laughlin v. Comm'r</u>, 117 F. Supp. 2d 997, 1002 (S.D. Cal. 2000) (finding "no conceivable public purpose" to the release of a "readily accessible" report).

---

[4] That said, in light of EPIC's significant requests for attorneys' fees, EPIC's motivation for bringing suit under FOIA may very well be, at least in part, commercial.

EPIC argues that the litigation had a "public benefit" because it disseminated the released documents on its website and to its newsletter recipients, and because "[m]ajor news organizations covered the documents EPIC obtained."  Pl.'s Mot. at 6.  Based on the citations to the news articles in its brief, EPIC appears to be relying exclusively on the release and media coverage of documents that indicated that TSA's advanced imaging technology ("AIT") machines are capable of storing images when in "test mode" (although that mode is disabled, and cannot be activated, when the machines are deployed at airports).  See Pl.'s Mot. at 6 nn. 1 & 2.[5]  However, DHS addressed this issue in Privacy Impact Assessments ("PIA's") that were made available to the public long before EPIC instituted this litigation or made the FOIA requests at issue.  A PIA originally published in January 2008 states:

> While the equipment has the capability of collecting and storing an image, the image storage functions will be disabled by the manufacturer before the devices are placed in an airport and will not have the capability to be activated by operators.

U.S. Dep't of Homeland Security, Privacy Impact Assessment for TSA Whole Body Imaging (Jan. 2, 2008), at 4 (Ex. D).  This document was published on the DHS Privacy Office's website between January 1 and March 31, 2008, notice of which was provided in the Federal Register.  See Department of Homeland Security: Published Privacy Impact Assessments on the Web, 73 Fed. Reg. 40589 (July 15, 2008) (Ex. E) (providing notice of publication of the January 2, 2008 PIA on "Whole Body Imaging").

Moreover, at the time of its April 2009 FOIA request, EPIC was clearly aware, at the very least, of an updated version of the PIA published in October 2008, as EPIC cited that PIA in

---

[5] EPIC's brief cites the following articles: Cnn.com, Body scanners can store, send images, group says, http://www.cnn.com/2010/TRAVEL/01/11/body.scanners/ (Jan. 11, 2010), and N.Y. Times, Mixed Signals on Airport Scanners, http://www.nytimes.com/2010/01/13/us/13scanners.html (Jan. 12, 2010).  Both articles focus on the capability of AIT machines to store images while in "test mode."

its FOIA request.  See EPIC FOIA Request (Ex. F ), Apr. 14, 2009, at 2 n.9 (citing TSA Privacy

Impact Assessment).  That PIA contained the identical above-quoted language.  See U.S. Dep't

of Homeland Security, Privacy Impact Assessment for TSA Whole Body Imaging (October 17,

2008), at 4 (Ex. G).  Given that EPIC, at the time of its FOIA request, was aware, or should have

been aware, of defendant's above-referenced publicly available statements on this subject, and

had the capability of disseminating this information to the public, TSA's release of substantially

the same information in December 2009 cannot constitute a "public benefit."

        Moreover, based on the fourth factor, whether the government's withholding had a

reasonable basis in law – a factor that is often "dispositive," Davy v. C.I.A., 550 F.3d 1155, 1162

(D.C. Cir. 2008) (quoting Chesapeake Bay Found., Inc. v. U.S. Dep't of Ag., 11 F.3d 211, 216

(D.C. Cir. 1993)) – the Court should find that EPIC is not entitled to fees because any

"withholding" was merely a function of delay and not the result of obduracy or bad faith.

Although TSA did not provide responsive records to EPIC within FOIA's statutory time frame,

TSA at no point "withheld" any records that EPIC subsequently received.  Rather, TSA began to

process EPIC's request shortly after receiving it, holding a conference call with EPIC to discuss

the request's scope on May 4, 2009.  Dkt. No. 18 at 3 (citing Janet Decl. ¶ 6).  However,

processing was delayed due to a combination of TSA's FOIA backlog as well as administrative

error.  Although plaintiff cites Miller v. Dep't of State, 779 F.2d 1378, 1390 (8th Cir. 1985) for

the principle that backlogs, confusion, and administrative error do not constitute reasonable bases

for withholding, there is considerable authority for the opposite proposition, namely, that absent

obduracy or bad faith, delay alone does not entitle a FOIA plaintiff to an award of fees and costs.

See, e.g., Read v. F.A.A., 252 F. Supp. 2d 1108, 1112 (W.D. Wash. 2003) ("[D]elay due to

bureaucratic ineptitude alone is not sufficient to weigh in favor of an award of attorneys' fees.");

Ellis v. United States, 941 F. Supp. 1068, 1080 (D. Utah 1996) ("Since plaintiffs' challenge is to the government's delay in releasing the records rather than its substantive claims of exemption, the reasonableness factor does not favor a fee award so long as the government did not engage in obdurate behavior or bad faith."); Simon v. United States, 587 F. Supp. 1029, 1032 (D.D.C. 1984) (finding the fourth factor favoring the government, and denying fees, because "while there was undeniably delay, there was never any 'withholding' of documents. The government never refused to release documents or asserted a frivolous legal defense to plaintiffs' action.")

Although its response to EPIC was delayed, once put on notice of EPIC's requests after that initial delay – one that did not result from any affirmative "withholding" – TSA moved expeditiously to respond to EPIC's request and to deal with EPIC in good faith, holding a conference call to discuss the request's scope, providing EPIC with a draft Vaughn index explaining its withholdings, and agreeing to waive all fees associated with EPIC's request.  See Dkt. No. 18 at 4-5.  Moreover, all of TSA's actual withholdings pursuant to FOIA exemptions were either conceded by EPIC or upheld by this Court, and therefore clearly had a "reasonable basis in law."  See Chesapeake Bay Found., 11 F.3d at 216 ("Indeed, it is the law that if the Government's position in a FOIA case is correct as a matter of law, that will be dispositive.") (internal quotation marks and citations omitted).  Under these circumstances, EPIC is not entitled to an award of fees.

## C.  Even if EPIC is Entitled to Fees, its Requested Fees are Unreasonable.

If the Court does find that EPIC is entitled to fees, it should substantially reduce the amounts claimed by EPIC, which are unreasonable.  EPIC has claimed an unwarranted 20 percent increase over the presumptively reasonable Laffey matrix rates, and seeks thousands of dollars in fees for expenses that simply are not compensable under FOIA, including fees for

unsuccessful motions and fees for reviewing FOIA releases.  Finally, even as to tasks for which

fees may be compensable, EPIC, particularly given its claimed expertise in FOIA litigation, has

claimed an inordinate amount of hours, which should be substantially reduced.

> **1.   EPIC's Request for a 20 Percent Increase Above the <u>Laffey</u> Matrix Amounts is Unwarranted and Without Basis in Law.**

For the purpose of calculating reasonable hourly rates for attorneys practicing in the

District of Columbia who do not themselves have actual hourly rates, the updated "<u>Laffey</u>

matrix," <u>see</u> http://www .justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html, is

"presumptively reasonable."  <u>District of Columbia v. Jeppsen</u>, 686 F. Supp. 2d 37, 38 (D.D.C.

2010).  Not content with the rates in the updated <u>Laffey</u> Matrix, however, EPIC requests a 20

percent increase above those rates, based on its "unique expertise in litigating FOIA cases" and

"EPIC's unusually exhaustive administrative filings in this matters, which narrowed the issues

for litigation."  Pl.'s Mot. at 10-13.  Neither provides any basis for the increase EPIC seeks.

First, assuming <u>arguendo</u> that EPIC has special expertise in FOIA litigation, such

expertise cannot justify an increase.  Contrary to EPIC's contention that its expertise "would not

be captured by the <u>Laffey</u> Matrix," Pl.'s Mot. at 13, the purpose of the <u>Laffey</u> matrix is just that:

to account for an attorney's expertise by assigning higher rates for attorneys who have practiced

law for a longer period of time, and as such have accumulated expertise.  As Judge Facciola has

stated, rejecting virtually the same argument EPIC makes here,

> [E]ven though Claiborne argues that his expertise in the area of e-discovery
> justifies a higher hourly rate, the very heart of the <u>Laffey</u> matrix takes into
> account an attorneys' years of experience and compensates him accordingly,
> based on the rationale that an attorneys' experience in a given area renders him
> more efficient.

<u>McDowell v. Gov't of D.C.</u>, No. 02-1119, 2006 WL 1933809, at *2 (D.D.C. July 11, 2006).  The

Supreme Court has recognized this principle as well.  <u>See</u> <u>Pennsylvania v. Del. Valley Citizens'</u>

Council for Clean Air, 478 U.S. 546, 565 (1987) (noting that "the novelty [and] complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.") (internal quotation marks omitted).  See also Judicial Watch v. U.S. Dep't of Commerce, 384 F. Supp. 2d 163, 174-75 (D.D.C. 2005), rev'd in part on other grounds, 470 F.3d 363 (D.C. Cir. 2006) (rejecting fee enhancement in FOIA case based on counsel's alleged successes and "tremendous effort").

Indeed, as EPIC concedes in its brief, the Supreme Court recently reaffirmed that the "lodestar" amount for attorneys' fees should be increased only in "extraordinary circumstances." Perdue v. Kenny A., 130 S.Ct. 1662, 1669 (2010).  EPIC attempts to distinguish Perdue by noting that it involved fees assessed against state and local, rather than federal governments, but offers no reason why such a distinction is meaningful.  Accord Rosenfeld v. United States, 859 F.2d 717, 724 (9th Cir.1988) ("[T]he legislative history of the FOIA demonstrates no congressional intent to construe its attorneys' fees provision differently from other such statutory provisions.").  Indeed, the rationale suggested by EPIC for limiting fee increases against state and local governments – that payment of attorneys' fees diverts funds from government programs, see Pl.'s Mot. at 12,  – applies with equal force to the federal government, particularly given that FOIA attorneys' fees are paid out of the budget of the defendant agency, and not from the Judgment Fund.  See Open Government Act of 2007, Pub. L. No. 110-175, § 4(b), 121 Stat. 2524, 2525 (2007), codified at 5 U.S.C § 552 note.  Thus, payment of such fees directly impacts the ability of a defendant agency to allocate money to other agency priorities.

Moreover, even if specialized expertise warranted an increase over the Laffey amounts – which it does not – EPIC offers no reason why any special expertise was required to litigate this

case.  This case was a common FOIA fact pattern – EPIC sued DHS after it did not obtain certain requested records within the statutory time period, a production schedule was established, and DHS asserted exemptions over certain records, two of which were challenged – unsuccessfully – by EPIC.  Nothing about this case comes close to constituting "extraordinary circumstances" justifying a fee increase above the lodestar.  Additionally, as set forth in greater detail infra, notwithstanding its alleged expertise, EPIC used no fewer than three attorneys, and a claimed total of nearly 100 hours, to litigate this straightforward FOIA case.  This unreasonable number of hours claimed belies any assertion that EPIC's alleged expertise enabled it to litigate this case more efficiently.[6]  See Skaff v. Le Meridien, No. CV 05-00027-R, 2008 WL 4346792, at *11 (C.D. Cal. Sept. 16, 2008) ("[T]he knife is double-edged.  [Plaintiff's] counsel cannot claim expertise in this area, thus justifying a substantial hourly rate, and at the same time obtain compensation for a large amount of attorney time to conduct legal research in basic areas of [the relevant] law.")

Similarly, EPIC should receive no increase due to its "carefully researched and unusually comprehensive" FOIA requests and administrative filings.  Pl.'s Mot. at 11.  Making a FOIA request and exhausting administrative remedies are necessary prerequisites to filing suit.  See, e.g., Judicial Watch v. F.B.I, 190 F. Supp. 2d 29, 32-33 (D.D.C. 2002) (citing Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61 (D.C. Cir. 1990).  That EPIC exhausted such remedies – "carefully," "comprehensive[ly]" or otherwise – does not justify a fee increase.  Moreover, such an increase would amount to a fee award for work performed at the administrative level, which FOIA does not permit.  See Nw. Coal. for Alternatives to Pesticides v. Browner, 965 F. Supp.

---

[6] Indeed, further highlighting the unreasonableness of its arguments, EPIC claims that its expertise-based increase should be awarded even to the 63.9 hours worked by Ginger McCall, a 2009 law school graduate whose work in FOIA litigation began in the same year and whose work included, inter alia, "researching who [sic] to address complaint to."  McCall Aff. ¶¶ 4, 8; Doc. 26-6 (McCall Records) line 7.

59, 65 (D.D.C. 1997) ("FOIA does not authorize fees for work performed at the administrative stage.").

EPIC provides no basis for the Court to award fees at rates higher than the "presumptively reasonable" rates in the Laffey matrix. Jeppsen, 86 F. Supp. 2d at 38. Moreover, EPIC's attorneys, notwithstanding their request for increased fees, appear to concede as such, stating in their affidavits that their fees pursuant to the updated Laffey matrix are "reasonable," and not even mentioning the augmented rates. See Rotenberg Aff. ¶¶ 11-12; Verdi Aff. ¶¶ 11-12; McCall Aff. ¶¶ 12-13. EPIC's proposed increase is without any basis, and should be rejected. Accordingly, as a baseline for assessing EPIC's fees and costs in the remainder of this brief, defendant will use the amount specified in Document 26-4, $28,224.50, which does not reflect the 20 percent increase, rather than the amount specified in EPIC's proposed Order (Dkt. No. 27), $33,729.40.

### 2. EPIC Has Used Improper Billing Rates.

Even using the Laffey matrix rates, EPIC's fee calculation is based on incorrect rates in two respects: first, EPIC has requested current-year rates for work performed in prior years, and second, it has charged attorney rates for work performed by Ginger McCall prior to her admission to the Pennsylvania bar.

### a.  Use of Current Laffey Rates for Prior Years.

Normally, "[a]ttorneys' fees awarded against the United States government must be based on the prevailing market rates at the time the services were performed, rather than rates current at the time of the award." Nw. Coalition, 965 F. Supp. at 66 (citing Library of Congress v. Shaw, 478 U.S. 310 (1986) (emphasis in original)). As shown in the updated Laffey Matrix

attached to plaintiff's motion, Dkt. No. 26-8,[7] different rates apply for the periods of June 1, 2009 through May 31, 2010 ("2009-2010"), when the vast majority of EPIC's work on this case was performed, and June 1, 2010 through May 31, 2011 ("2010-2011").  However, EPIC seeks fees for the entire time period based on the 2010-2011 ("current") rates.  See Dkt. No. 26-4. Such a calculation overvalues the hours worked in 2009-2010, and should be adjusted to use the rates for the years in which the work was performed ("historic") rates.  See Nw. Coalition, 965 F. Supp. at 66.

Although this Court has, in some cases, awarded current Laffey rates for work performed in prior years, it has done so in circumstances distinguishable from this case – namely, cases that spanned a lengthy period of time.  In such cases, using current rates may be appropriate to compensate plaintiff's counsel for a substantial delay between the time services are rendered and the time counsel receives payment.  See Does I, II, III v. District of Columbia, 448 F. Supp. 2d 137, 141-42 (D.D.C. 2006) (case settled four years after plaintiff's counsel began work).  This case, however, is distinguishable as the entire court action, including the fee briefing, has spanned just over one year, and all of the work on the merits of the case took place over the span of less than one year.  Under such circumstances,

> [g]iven the brief period of time between initiation of [the] suit, subsequent to which most of counsel's hours were expended, and final judgment, Plaintiffs would not be prejudiced by application of historic hourly rates. The progress of this case has not been protracted; nor has it spanned multiple years. Consequently, it differs from those cases which have permitted use of current hourly rates for services rendered in the past. See, e.g., Laffey, 572 F. Supp. at 380 (adjustment for delay where case spanned thirteen years); Missouri v. Jenkins 491 U.S. 274, 283, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (adjustment proper where there has been a "substantial delay in payment.").

Bolden v. J & R Inc., 135 F. Supp. 2d 177, 179 (D.D.C. 2001).  Because the case at bar is clearly more analogous to Bolden than to Does I, II, III, historic Laffey rates should be used.

---

[7] See also http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html.

**b.   Fees For Ginger McCall Prior to Her Bar Admission.**

EPIC has claimed fees for 63.9 hours of time spent by Ginger McCall, categorizing her as an attorney with 1-3 years experience.  See Dkt. Nos. 26-4, 26-8.  In her affidavit, Ms. McCall states that she graduated law school in 2009 and is a member in good standing of the Bar of Pennsylvania.  McCall Aff. ¶¶ 4-5.  However, Ms. McCall does not state in her affidavit the date on which she was admitted to practice law.  According to publicly available Pennsylvania Bar records, Ms. McCall was admitted to practice on November 25, 2009.  See Ex. H.  11.3 of Ms. McCall's hours (nearly 18 percent of her total hours recorded) were recorded prior to that date. See Dkt. No. 26-7.  Because Ms. McCall had not yet been admitted to practice law, it is unreasonable for EPIC to seek rates for her that would apply to a practicing attorney.  Rather, Ms. McCall's time prior to November 25, 2009 should be billed at the lower rate applicable to law clerks.

**c.   Proper <u>Laffey</u> Rates.**

Based on the foregoing and on the updated <u>Laffey</u> matrix, the following reasonable hourly rates, rather than those used by EPIC in its calculations, should apply to any hours reasonably expended by EPIC's attorneys:

| | May 31, 2010 and earlier | June 1, 2010 - present |
|---|---|---|
| Mark Rotenberg | $465 | $475 |
| John Verdi | $330 | $335 |
| Ginger McCall | $130 (prior to 11/25/09)<br>$225 (11/25/09 and later) | $230 |

Using these corrected rates, based on EPIC's  fee records, defendants have calculated EPIC's claimed fees (not including costs), as follows:

| | May 31, 2010 and earlier | June 1, 2010 - present | Total |
|---|---|---|---|
| Mark Rotenberg | $1255.50 | $1662.50 | $2918.00 |

| | | |
|---|---|---|
| John Verdi | $7392 | $2378.50 | $9770.50 |
| Ginger McCall | $1469 (prior to 11/25/09) | $5497 | $13423.50 |
| | $6457.50 (11/25/09 and later) | | |
| | | | **$26112** |

As shown below, however, to the extent that the Court awards EPIC any fees, this number must

be further reduced substantially.

### 3. EPIC Has Claimed Fees for Expenses That Are Not Compensable Under FOIA.

EPIC has claimed fees for two categories of work that cannot be properly billed as

litigation expenses under FOIA.  Because EPIC is not eligible for such fees, they should be

denied.

### a. Fees for Unsuccessful Motions.

EPIC seeks fees for work on two motions on which it did not succeed.  First, it seeks fees

associated with its request for an entry of default (Dkt. No. 4) and its accompanying opposition

to DHS's Motion for Extension of Time to Answer (Dkt. No. 10).  Second, EPIC seeks fees for

work on its unsuccessful motion for summary judgment that challenged TSA's assertion of

Exemptions 2 and 3.  Under FOIA, a plaintiff is not entitled to fees and costs on claims for which

it was unsuccessful.  See Weisberg v. Dep't of Justice, 745 F.2d 1476, 1499 & n. 34 (D.C. Cir.

1984); Summers v. U.S. Dep't. of Justice, 477 F. Supp. 2d 56, 64 (D.D.C. 2007) ("Nor should

fees be granted for hours spent on unsuccessful claims that are distinct in all respects from

successful claims"); Piper v. U.S. Dep't of Justice, 339 F. Supp. 2d 13, 24 (D.D.C. 2004) (citing

Hensley, 461 U.S. at 434 (same).  Accordingly, EPIC cannot receive any fees for its work on the

two motions on which it did not prevail.

In its filings on the default issue, EPIC attempted to have DHS held in default for failure

to respond to the Complaint within 30 days of service, although EPIC's service on the United

States Attorney was, in fact, defective. <u>See</u> Dkt. No. 11 at 5-6.  The Court did not enter the default, and later granted defendant's motion for an extension of time to answer.[8]  <u>See</u> Minute Order, Aug. 10, 2010.  In the second motion at issue, EPIC sought the disclosure of 2,000 test images and 376 pages of training documents over which DHS asserted FOIA Exemptions 2 and 3.  <u>See</u> Dkt. No. 19.  The Court denied EPIC's motion and granted DHS's, finding that the documents at issue were properly withheld.  <u>See</u> Dkt. No. 25.

Both of these unsuccessful motions were clearly separate and distinct from any work done by EPIC in furtherance of the only relief it obtained as a result of this litigation, and the only relief that could serve as the basis for the recovery of any attorneys' fees: the disclosure of non-exempt documents.  As such, no fees should be awarded for work on these unsuccessful motions.  See <u>Piper</u>, 339 F. Supp. 2d at 24 ("Plaintiff's claims on these issues were ultimately unsuccessful and thus fees should not be granted for time spent on them.").  EPIC's billing records include the following entries pertinent to the default issue: Dkt. No. 26-5 ("Rotenberg Records") lines 3-7; Dkt. No. 26-6 ("Verdi Records") lines 10, 12-24; Dkt. No. 26-7 ("McCall Records") lines 18-21; 23-24, 26.  They also include the following entries relevant to summary judgment briefing: Verdi Records lines 42-46; McCall Records lines 35-37.  Accordingly, using the proper historic <u>Laffey</u> rates explained above,[9] EPIC's claimed fee request should be further reduced by the following amounts:

| | Default | Summary Judgment | Total Reduction |
|---|---|---|---|
| Mark Rotenberg | $465 | $0 | $465 |

[8] Is it unclear what EPIC was attempting to accomplish by seeking an entry of default, given that an entry of default in a FOIA case would likely have few, if any, practical implications.

[9] The reduction amounts below have been calculated by multiplying the number of hours claimed by each attorney for the tasks enumerated in the above-specified lines in EPIC's fee records by the proper, historic <u>Laffey</u> matrix rates for each attorney at the times specified, see <u>supra</u> Part C.2.c.

| | | | |
|---|---|---|---|
| John Verdi | $3267 | $1507.50 | $4774.50 |
| Ginger McCall | $1552.50 | $1840 | $3392.50 |

| | |
|---|---|
| **Total reduction:** | **$8632** |
| **Previous total:** | **$26112** |
| **Remaining total:** | **$17480** |

### b. Fees for Document Review and Other Work Performed After Obtaining Relief Sought.

EPIC has also improperly billed fees for its review of the documents produced by TSA, meetings and phone calls associated with such review, and other work performed after receiving TSA's document productions – tasks for which FOIA does not permit attorneys' fees. These fees, too, should be denied.

The provision in FOIA authorizing an award of attorneys' fees and other litigation costs is a limited waiver of the federal government's sovereign immunity. See Kennedy v. Andrus, 459 F. Supp. 240, 242 (D.D.C. 1978). Although "[t]he federal government may waive its sovereign immunity by statute," such a waiver "'must be unequivocally expressed in statutory text.'" Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (quoting Lane v. Peña, 518 U.S. 187, 192 (1996)). Moreover, "[c]ourts must strictly construe any waiver of sovereign immunity, in terms of its scope, in favor of the sovereign." Id. (internal quotation marks and citations omitted). Accordingly, "an express waiver is required before attorneys' fees can be assessed against the federal government." Kennedy, 459 F. Supp. at 242; see also N.Y.C. Apparel F.Z.E., 563 F. Supp. 2d at 226-27 (construing the FOIA attorneys' fee provision narrowly because of concerns that a broader construction would impermissibly go beyond the scope of Congress's explicit waiver of sovereign immunity).

The waiver of sovereign immunity in FOIA's attorneys' fee provision is limited to "fees and costs incurred in litigating a case brought pursuant to the FOIA[.]" U.S. Dep't of Justice,

Ofc. of Information Pol'y, <u>Department of Justice Guide to the Freedom of Information Act</u>, at 835 (2009) (emphasis in original); 5 U.S.C. § 552(a)(4)(E)(i) (authorizing a court to award "attorney fees and other <u>litigation</u> costs reasonably incurred in any <u>case</u>") (emphasis added). Thus, fees and costs may only be assessed for services rendered "in connection with litigation." <u>Associated Gen. Contractors v. EPA</u>, 488 F. Supp. 861, 864 (D. Nev. 1980).  For this reason, a court may not award fees for work performed at the administrative level.  <u>See</u> <u>Nw. Coalition</u>, 965 F. Supp. at 65; <u>Associated Gen. Contractors</u>, 488 F. Supp. at 864; <u>cf.</u> <u>Kennedy</u>, 459 F. Supp. at 244 (finding attorneys' fees unavailable for work performed at administrative level under the Privacy Act, 5 U.S.C. § 552a).

Like work performed at the administrative level, review of released documents, meetings and memoranda discussing those documents, and <u>any</u> expenses incurred subsequent to an agency's complete document production – assuming that the plaintiff does not later successfully challenge the agency's withholdings – is not a litigation expense and therefore is not subject to the waiver of sovereign immunity in 5 U.S.C. § 552(a)(4)(E)(i).  Because, under FOIA, courts only have jurisdiction to "enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld," 5 U.S.C. § 552(a)(4)(B), a party may only obtain fees insofar as such fees relate to an agency's withholding of documents.  <u>Uhuru v. U.S. Parole Comm'n</u>, __ F. Supp. 2d __, No.  09-0566, 2010 WL 3377710, at *4 (D.D.C. Aug. 24, 2010).  EPIC's claim of eligibility for attorneys' fees is based on its argument that "'the institution and prosecution' of this suit . . . 'cause[d] the agency to release the documents obtained during the pendency of the litigation.'"  Pl.'s Mot. at 5 (quoting <u>Church of Scientology</u>, 653 F.2d at 587.  Assuming <u>arguendo</u> that EPIC's initiation of litigation catalyzed a response to EPIC's FOIA requests, this does not provide a basis on which EPIC may obtain fees for

reviewing the released documents.  Such work was performed <u>after</u> EPIC obtained all the relief it requested – release of the documents – and EPIC did not later obtain any additional relief from the Court based on its review of the released documents.  <u>See</u>, <u>e.g.</u>, <u>Weisberg</u>, 745 F.2d at 1496 (holding that a party seeking attorneys' fees under FOIA "must show that the prosecution of the action could reasonably be regarded as necessary to obtain the information . . . and that a causal connection exists between that action and the agency's surrender of the information"); <u>see also</u> <u>Ajluni v. FBI</u>, 947 F. Supp. 599, 611 (N.D.N.Y. 1996) (limiting plaintiff's award to "fees incurred up to, and including" the point at which "the last of the . . . documents were released" in a case where (as here) the defendant agency was granted summary judgment on its use of exemptions); <u>Steenland v. CIA</u>, 555 F. Supp. 907, 911 (W.D.N.Y. 1983) (finding that work performed after records were released, where defendant's asserted exemptions were subsequently upheld, "would assess a penalty against defendants which is clearly unwarranted").

After the filing of the Complaint in this case and after the institution of an agreed-upon schedule, TSA performed in accordance with FOIA's statutory requirements, processing and releasing to EPIC over 1,700 pages of documents as quickly as practicable.  EPIC obtained no relief whatsoever – through court order or otherwise – as a result of its reading the released documents, reading or discussing defendant's <u>Vaughn</u> index, or for any work it undertook subsequent to TSA's final document release on April 15, 2010.  Indeed, the relief EPIC sought after the complete release – an order directing TSA to release certain withheld records – was denied by this Court.

Moreover, the review of released documents is work that EPIC would have performed irrespective of whether it had instituted litigation, and in this manner is indistinguishable from an initial FOIA request or work at the administrative level, tasks for which FOIA does not permit

the recovery of attorneys' fees.  See Nw. Coalition, 965 F. Supp. at 65; Associated Gen.

Contractors, 488 F. Supp. at 864; Kennedy, 459 F. Supp. at 244.  Accordingly, time spent

reviewing documents released during litigation or reading a Vaughn index, to the extent that

such work does not itself cause the agency to release additional records or otherwise change its

position, is not compensable.  Indeed, under an alternative holding, an award of fees would not

constitute reasonable compensation for litigation expenses, but would instead amount to "a

sanction for the [defendant's] delay in responding to [a] FOIA request, [and] the FOIA does not

recognize such a claim." Uhuru, 2010 WL 3377710, at *4.  The production of responsive

documents constituted the relief specifically requested in the Complaint; thus, to the extent that

EPIC is eligible for or entitled to any fees, it is eligible for fees for the work performed that was

necessary to obtain release of the non-exempt documents, and nothing more.

Accordingly, EPIC should not receive any fees for tasks reflected the following entries in

its fee records: Rotenberg Records lines 13-14; Verdi Records lines 9, 33-34, 39-41; McCall

Records lines 22, 29-34.  EPIC's claimed fees should therefore further be reduced, again using

the proper, historic Laffey rates, as follows:

|  | Document Review And Other Tasks After Release of Records |
|---|---|
| Mark Rotenberg | $279 |
| John Verdi | $957 |
| Ginger McCall | $4027.50 |
| **Total Reduction:** | **$5263.50** |
| **Previous total:** | **$17480** |
| **Remaining total:** | **$12216.50** |

**4.   EPIC's Fee Request for Preparing the Complaint in EPIC v. DHS I
     Should be Significantly Reduced.**

In the sections above, defendant has outlined the portions of EPIC's fee request that are not compensable at all as a matter of law.  The remaining total, however, contains numerous entries that are unreasonable and demonstrate lack of "billing judgment."  In particular, the amount of time and fees claimed for preparing the initial Complaint are excessive.  If the Court awards fees to EPIC, it should significantly reduce this amount for the reasons stated below.

EPIC's claimed hours and fees must reflect, at minimum, considered judgment as if EPIC were billing those amounts to a private client.  As the D.C. Circuit has stated:

> Compiling raw totals of hours spent . . . does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time reasonably expended. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority. Thus, no compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.

Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980).  Moreover, when a plaintiff seeks recovery from the federal government under a fee-shifting statute, the bar for reasonableness of expenses is higher.  See In re North, 8 F.3d 847, 852 (D.C. Cir. 1993) ("Some expense items, though perhaps not unreasonable between a first class law firm and a solvent client, are not supported by indicia of reasonableness sufficient to allow us justly to tax the same against the United States.").

At the outset, EPIC, notwithstanding its asserted expertise in FOIA matters, staffed this simple FOIA case with three attorneys – one senior attorney, one attorney in his eighth year of practice, and one junior attorney who was a recent law school graduate.  A court should not award fees for "time spent in duplicative, unorganized or otherwise unproductive effort." Jordan v. Department of Justice, 691 F.2d 514, 518 (D.C. Cir. 1982).  Such was the case here, where EPIC's attorneys billed an inordinate amount of time preparing the initial FOIA complaint.

EPIC billed a total of 16.7 hours – 11.3 by Ms. McCall, 5.3 by Mr. Verdi, and 0.1 by Mr.

Rotenberg – associated with the filing and service of the Complaint in EPIC v. DHS I.  See

McCall Records lines 2-17; Verdi Records lines 2-8; Rotenberg Records line 2.  Using the

proper, historic Laffey matrix rates, see supra Part C.2.c, the amounts claimed[10] total as follows:

**Initial Complaint**

| | |
|---|---|
| Mark Rotenberg | $46.50 |
| John Verdi | $1749 |
| Ginger McCall | $1469 |
| **Total:** | **$3264.50** |

Such hours included time for numerous "meeting[s]," revisions, "reviewing sample complaints,"

"researching who to address complaint to," and the filing of the Complaint itself, a task for

which both Mr. Verdi and Ms. McCall billed time, see Verdi Records line 7; McCall Records

line 14.

The Complaint itself is also noteworthy in a number of respects.  First, it contains eleven

paragraphs of factual allegations about the underlying TSA technology that is the subject of the

documents requested by EPIC – facts that are completely irrelevant and unnecessary to a FOIA

complaint that merely seeks the disclosure of agency records and nothing more.  See Compl. ¶¶

5-15.  Second, the remainder of the Complaint – the portions relevant to the FOIA action itself –

is a "boilerplate" FOIA action that in substance is virtually identical to an earlier-filed FOIA

complaint by EPIC (represented by the same counsel) in this Court, see Complaint, EPIC v. Fed.

Trade Comm'n, 1:08cv448 (Ex. I), as well as to a subsequently-filed one, see Complaint, EPIC

---

[10] Using the current Laffey rates proffered by plaintiff, plus plaintiff's proposed 20 percent
increase, plaintiff actually seeks $5306.40 for these hours.

v. Dep't of Justice, 1:09cv2394 (Ex. J).[11]  Under these circumstances, EPIC's expenditure of

time and request for fees for the preparation and filing of its initial Complaint was

unreasonable.[12]  See Elec. Frontier Found. v. Office of Dir. Of Nat'l Intelligence, No. C 07-

05278 2008 WL 2331959, at *5 (N.D. Cal. June 4, 2008) (finding "12.0 hours for drafting and

reviewing [a FOIA] complaint" to be "unreasonable").

Instead, a reasonable measure of the time and fees for the initial Complaint is the amount

claimed by EPIC for the Complaint filed in the second of these two consolidated actions, EPIC v.

DHS II.  See EPIC v. DHS II, Dkt. No. 1.  Like the Complaint in EPIC v. DHS I, this too was a

"boilerplate" FOIA Complaint similar to those filed by EPIC in previous and subsequent cases.

The second Complaint was apparently prepared by Ms. McCall exclusively.  See McCall

Records line 25.  Ms. McCall charged 3.4 hours of time for this preparation, and using the Laffey

rate of $225 based on Ms. McCall's experience as a junior attorney in 2009-2010, the fee for her

work amounts to $765.  Defendant therefore submits that an appropriate assessment of fees for

the first Complaint, too, would be $765, for a total of $1530 for both Complaints.  Accordingly,

using the proposed reduction for the initial Complaint, EPIC's remaining fees are:

| | |
|---|---|
| Amount Claimed for Initial Complaint | - $3264.50 |
| Replacement Amount for Initial Complaint | + $765.00 |
| **Previous total:** | **$12216.50** |
| **New total:** | **$9717** |

### 5.  EPIC's Request for "Fees on Fees" Should Be Denied or Substantially Reduced.

---

[11] These cases involve different FOIA requests submitted on different dates, and as such necessarily contain different factual allegations; however, in substance, the allegations in the complaints are substantially the same.

[12] To the extent that EPIC responds that most of the hours spent preparing the initial Complaint were spent by Ms. McCall, a recent law school graduate who may have been less familiar with FOIA than EPIC's more senior attorneys, EPIC's desire to provide its more junior attorneys with experience and training is clearly one whose expense must be borne by EPIC, not by taxpayers.

EPIC also requests compensation for its time spent researching and drafting its Motion for Attorneys' Fees and Costs.  EPIC's request should be denied, or in the alternative, substantially reduced.

Whether "fees on fees" are available in a FOIA action is an unresolved question.  As EPIC notes, Pl.'s Mot. at 13, one court in this circuit and one in the Eastern District of California have held that "fees on fees" are available in FOIA actions.  See Nat. Veterans Legal Svcs. Prog. v. U.S. Dep't of Veterans Affairs, No. 1:96cv01740, 1999 WL 33740260, at *8 (D.D.C. Apr. 13, 1999); Assembly of the State of Cal. v. U.S. Dep't of Commerce, No. Civ. S-91-990, 1993 WL 188328, at *16 (E.D. Cal. May 28, 1993).  Conversely, another federal court in California has disagreed, finding "fees on fees" in a FOIA case to be "part of the general cost of doing business" and already accounted for and compensated through an attorney's hourly rate.  See Birkland v. Rotary Plaza, Inc., 643 F. Supp. 223, 227 (N.D. Cal. 1986).  Given the implications of sovereign immunity and the strong presumption in favor of construing waivers of sovereign immunity, including grants of attorneys' fees, narrowly, see supra Part C.3.b, this Court should find the Birkland decision persuasive.

However, even assuming that "fees on fees" may be available as a general matter in a FOIA action, EPIC should not receive "fees on fees" in this case because it filed its motion without responding to good-faith efforts by defendant to negotiate the issue of attorneys' fees and costs, as detailed extensively above.  See supra Part A.  As a result of this failure to negotiate, defendant was left without an opportunity to determine whether the fee dispute could be resolved, or even narrowed.  The Court has discretion to deny or limit a fee request under such circumstances, see American Lands Alliance, 525 F. Supp. at 144; Moriarty v. Svec, 233

F.3d at 967, and should do so here.  Awarding EPIC "fees on fees" would reward its recalcitrance and penalize defendant (and federal taxpayers) unfairly.

Alternatively, even if the Court grants EPIC "fees on fees," such an award should be reduced significantly.  First, the time EPIC's attorneys spent litigating the fee issue is disproportionately large compared to the time it spent on the substance of this case.  EPIC claims a total of 22 hours for work on its fee petition – 3.5 for Mr. Rotenberg, 2.6 for Mr. Verdi, and 15.9 for Ms. McCall.  See Rotenberg Records lines 15-16; Verdi Records lines 47-49; McCall Records lines 38-43.  Notably, Ms. McCall and Mr. Rotenberg spent more time on the fee petition in this case than they spent on EPIC's summary judgment motion, and Mr. Verdi spent only slightly less.  Using the proper, historic Laffey rates, the amounts claimed for "fees on fees" are:

|  | Fees on Fees |
|---|---|
| Mark Rotenberg | $1662.50 |
| John Verdi | $871 |
| Ginger McCall | $3657 |
| **Total claimed fees on fees:** | **$6190.50** |
| **Previous total, including fees on fees:** | **$9717** |
| **Previous total, excluding fees on fees:** | **$3526.50** |

As shown above, assuming the Court adopts defendant's proposed fee of $765 for the initial Complaint, "fees on fees" would amount to 1.75 times the amount of fees awarded to EPIC on the merits.[13]  Such a disproportionate amount is inappropriate for a simple FOIA case,

---

[13] Indeed, even if the Court were merely to eliminate fees for the two categories of non-compensable hours, see supra Part C.3, without reducing the excessive amount of fees charged

particularly here, where EPIC chose to bring this issue directly to the Court for resolution rather than, as requested, submitting its fee records to defendant prior to incurring "fees on fees." Moreover, EPIC had previously moved for summary judgment on the issues of its eligibility for and entitlement to attorneys' fees.  A significant portion of EPIC's instant fee motion is substantially similar to, if not virtually identical to, the portion of its summary judgment motion that requested fees.  Compare Dkt. No. 19 (S.J. Mot.) at 17-20 with Dkt. No. 26 (Fee Motion) at 4-7.  This renders the claimed 22-hour total even more unreasonable.

Moreover, to the extent that the Court agrees with defendant that many or most of EPIC's fee demands are unwarranted or unsupported, the amount of "fees on fees" should be reduced accordingly.  See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n. 10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); Nat'l Veterans Legal Svcs. Prog. 1999 WL 33740260, at *5-*6 (citing Jean, finding that an award of "fees on fees" should be reduced by the amount of time spent unsuccessfully defending hours eliminated by the court).  Accordingly, if EPIC receives an award of "fees on fees" at all, that amount should be substantially reduced to reflect any reduction in an award of fees on the merits ordered by this Court.

Defendant submits that should the Court decide to award "fees on fees," an appropriate metric for a maximum amount of attorneys' fees was adopted by Judge Hogan in LaShawn A. v. Barry, Civ. No. 89-1754, 1998 WL 35243112, (D.D.C. Feb. 18, 1998), which capped plaintiff's recovery for "fees on fees" at 15 percent of any recovery for litigation of the merits of the case. See id. at *6 (citing Coulter v. Tennessee, 805 F.2d 146, 151 (6th Cir.1986)).  Using that

---

for the initial Complaint, EPIC's "fees on fees," $6190.50, would be approximately the same amount as the reasonable amount of fees available to EPIC on the merits, $6026.

percentage, and using the figure of $3526.50 representing a reasonable fee award for the merits, see supra at 28, plaintiff's recovery for fees on fees should be limited to $529.[14]

### 6.  Proposed fee and cost awards.

As set forth in Parts A and B, defendant's position is that EPIC is not entitled to any fees or costs, at all.  However, in the alternative, should the Court deem EPIC entitled to fees and costs, for the reasons set forth above, defendant proposes the following amounts as reasonable:

> Fees on merits: $3526.50
> Fees on fees: $0
> Costs: $700
> Total: $4226.50

However, as noted supra, if the Court determines EPIC's initial fee request was unreasonable, it retains discretion to award EPIC no fees, or reduced fees, in lieu of these amounts in order to discourage fee petitioners from submitting an excessive request.  See Envtl. Defense Fund, 1 F.3d at 1258.  Given the excessive nature of EPIC's request, such a further reduction of 50 percent in the requested fees warranted.  This would put EPIC's final award at $1763.25 in fees, plus $700 in costs, for a total of $2463.25.

### D.  If the Court Orders Defendant to Pay Fees and Costs, It Should Not Adopt The Arbitrary 30-Day Deadline for Payment from EPIC's Proposed Order.

In its proposed Order (Dkt. No. 27), belatedly filed on January 24, EPIC proposes an additional requirement for any payment of fees and costs, namely, that they must be paid within 30 days.  No rationale for this deadline is provided in EPIC's motion or proposed Order.  As the

---

[14] Alternatively, the Court could reduce EPIC's requested "fees on fees" by  the same percentage by which its requested fees on the merits is reduced.  Including the requested 20 percent increase, EPIC has moved for $33,029.40 in fees, of which $25,600.80 would be for fees on the merits and $7428.60 would be for fees on fees.  As discussed above, if EPIC is awarded any fees, a reasonable amount for fees on the merits would be $3526.50.  This would constitute about 14 percent of the amount of fees on the merits EPIC seeks.  Accordingly, if the Court awards EPIC fees on fees, the amount awarded should represent the same fraction of the amount sought by EPIC.  This amounts to approximately $1040.

Court undoubtedly understands, authorization of payments from federal agencies takes time, particularly when, as now, the federal government is operating under the budget constraints of a Continuing Resolution.  If the Court does determine that defendant is liable for fees and costs, defendant respectfully requests that it not adopt EPIC's 30-day deadline for payment, but instead allow defendant to make any payments as expeditiously as is practicable.

## CONCLUSION

EPIC's motion for fees and costs should be denied.

Date: January 28, 2010                              Respectfully submitted,

                                                    TONY WEST
                                                    Assistant Attorney General

                                                    RONALD S. MACHEN JR.
                                                    United States Attorney for
                                                    the District of Columbia

                                                    ELIZABETH J. SHAPIRO
                                                    Deputy Branch Director

                                                     /s/ Jesse Z. Grauman
                                                    JESSE Z. GRAUMAN (Va. Bar No. 76782)
                                                    U.S. Department of Justice
                                                    Civil Division, Federal Programs Branch

                                                    Mailing Address:
                                                    Post Office Box 883
                                                    Washington, D.C.  20044

                                                    Courier Address:
                                                    20 Massachusetts Ave., N.W.
                                                    Washington, D.C. 20001

                                                    Telephone:     (202) 514-2849
                                                    Fax:           (202) 616-8460
                                                    Email:         jesse.z.grauman@usdoj.gov

                                                    Attorneys for Defendants