**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
)
ELECTRONIC PRIVACY                     )
INFORMATION CENTER                     )
)
    Plaintiff,                         )
    v.                                 )      No. 1:09-cv-02084 (RMU)
)
UNITED STATES DEPARTMENT OF            )
HOMELAND SECURITY                      )
)
    Defendant.                         )
———————————————————————)

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

    Plaintiff Electronic Privacy Information Center ("EPIC") moved the Court for an award of attorneys' fees and costs against Defendant Department of Homeland Security ("DHS") in this Freedom of Information Act ("FOIA") action. Dkt. No. 28. DHS filed a memorandum in opposition. Dkt. No. 29 ("DHS Opp."). EPIC now replies in support of its motion for attorneys' fees and costs. For the reasons stated below, EPIC's motion should be granted. Furthermore, EPIC asks the Court to award EPIC its attorneys' fees incurred in the preparation of this reply and all other filings subsequent to the filing of DHS' memorandum in opposition.

### Introduction

    First, as set forth below, EPIC's motion for fees is exempt from the "meet and confer" requirements of Local Civil Rule 7(m). And even if the Court finds that EPIC's motion contains a technical violation of Rule 7(m), the appropriate remedy is not denial of EPIC's motion. Further, EPIC remedied any alleged violation in its Amended Motion

for Fees and Costs. EPIC's Motion for Leave to Amend Exhibit 1 at 1, Dkt. No. 30.

Second, DHS concedes that EPIC is eligible to recover its attorneys' fees and costs in this matter. EPIC substantially prevailed in this lawsuit because the suit was the catalyst for the release of documents.

Third, EPIC is entitled to recover its attorneys' fees and costs. DHS concedes that EPIC prevails on two prongs of the D.C. Circuit's "entitlement" analysis: 1) EPIC derived no commercial benefit from the records; and 2) the journalistic, public-interest oriented nature of EPIC's interest is a favored interest under FOIA's fee recovery provision.  DHS' challenge to EPIC's entitlement under the remaining two prongs ignores the massive public benefit derived from EPIC's lawsuit and unsuccessfully attempts to characterize the agency's complete, indefensible failure to comply with statutory deadlines as somehow demonstrating a reasonable basis in law for the DHS' withholdings.

Fourth, EPIC's request for $33,729.40 in fees and costs is reasonable and supported by caselaw. EPIC has reasonably requested a 20 percent increase over *Laffey* rates based on its unique expertise in FOIA litigation and especially detailed administrative filings. DHS' opposition fails to rebut the clear precedent that permits courts to enhance FOIA attorneys' fees above Laffey matrix rates.

Finally, DHS fails to rebut EPIC's claim for fees on fees.

### A.      EPIC's Motion for Fees Complies with Local Rule 7(m)

EPIC 's motion for fees complies with Local Rule 7(m) because it is a dispositive

motion, and therefore exempt from Rule 7(m)'s "meet and confer" requirement. The rule

states that:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the
> anticipated motion with opposing counsel, either in person or by telephone, in a
> good-faith effort to determine whether there is any opposition to the relief sought
> and, if there is opposition, to narrow the areas of disagreement.

Local Rule 7(m).

The government cites a recent decision by this Court, *Alberts v. HCA*, Misc. No.

06-0088, 405 B.R. 498 (D.D.C. May 19, 2009), to support its assertion that EPIC's

motion for attorneys' fees and costs is a "nondispositive motion" for the purposes of Rule

7(m). DHS Opp. At 6. *Alberts*, however, concerned a motion for discovery sanctions in

the form of attorney's fees. More recent case law from the D.C. District Court has

distinguished motions for discovery sanctions (like those in *Alberts*) from motions for

attorneys' fees brought pursuant to fee-shifting statutes. *Tripoli Rocketry Ass'n, Inc. v.*

*Bureau of Alcohol, Tobacco, Firearms & Explosives*, 698 F. Supp. 2d 168 (D.D.C. 2010)

(holding "motions seeking attorney's fees for discovery sanctions are nondispositive

because they are tangential to the merits of the litigation and would not result in the

determination of a particular claim in the case"). "Under a fee-shifting statute, however,

the plea for attorney's fees is itself the underlying claim and it therefore satisfies the

*Burkhart* standard [for dispositive motions] because its resolution will result in 'the

determination of a particular claim on the merits or elimination of such claim from the

case.'" *Id.* at 173, citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d

1207, 1215 (D.C. Cir. 1997).

The United States Supreme Court holds that the FOIA is indisputably a fee-shifting statute. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.,* 532 U.S. 598, 644 fn. 10 (2001). Therefore, EPIC's motion for attorneys' fees and costs under the FOIA is a dispositive motion not subject the Rule 7(m).

Even if the court finds that EPIC's motion for fees was a nondispositive motion for the purposes of Rule 7(m), denial of the motion would be extraordinary relief and inappropriate in this case. District of Columbia courts have often found that violations of 7(m) should not result in denial of the motion in question based on the "general judicial preference for resolving motions on their merits rather than dismissing them on technicalities." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001). Courts rarely deny a motion under Rule 7(m) without some showing of bad faith or repeated violation by the party. *See e.g. Nat'l Shopmen Pension Fund v. Folger Adam Sec., Inc.,* 274 B.R. 1, 3 (D.D.C. 2002) (Urbina, J.) (refusing to deny motion but admonishing counsel that "repeated failure" to follow Rule 7(m) may result in denial). Moreover, denial of a motion under Rule 7(m) is typically without prejudice.

EPIC has acted in good faith throughout these proceedings. After reviewing DHS' opposition concerning Rule 7(m), EPIC sought a good faith resolution of the dispute. Notwithstanding EPIC's conviction that its motion for fees is exempt from Rule 7(m), EPIC conferred with DHS concerning EPIC's motion for fees and sought DHS' consent to amend the motion for fees to remedy any alleged technical deficiency. EPIC's Motion for Leave to Amend at 2, Dkt. No. 30; EPIC's Motion for Leave to Amend Exhibit 1 at 1. Despite EPIC's good faith efforts to resolve the dispute, DHS opposed EPIC's motion to

amend, refused to consent or oppose EPIC's motion for fees on the merits, and opposed

EPIC's amended motion for fees as untimely.

> **B.     EPIC's Motion for Fees Should Not be Reduced Based Upon a
>          Fictional "Settlement Offer" from DHS**

DHS argues that EPIC's fee award ought to be reduced because EPIC did not

accept DHS' non-existent settlement offer. DHS Opp. at 7. DHS cites a single case,

*American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 144 (D.D.C. 2007), to support

this proposition. DHS Opp. at 7. *American Lands Alliance*, however, does not stand for

the proposition that DHS is asserting. In fact, in *American Lands Alliance*, the court

refused to reduce attorney's fees because the plaintiffs did not act in bad faith. Contrary

to DHS' assertion, the mere rejection of a settlement offer was not considered a sufficient

basis for reducing attorneys' fees. *American Lands Alliance* court cited *Public Interest

Research Group of N.J., Inc. v. Widnall,* No. 90-CV-2138, 1995 WL 836144, at *5

(D.N.J. Nov.13, 1995), for the proposition that a court "could not penalize an attorney for

a client's decision to reject a settlement offer unless the rejection was motivated by bad

faith or vexatious, wanton, or oppressive reasons." *American Lands Alliance v. Norton,*

525 F. Supp. 2d at 144. Like the plaintiff in *American Lands Alliance*, EPIC has not acted

in bad faith in its dealings with DHS. It was, in fact, impossible for EPIC to reject a

settlement offer in bad faith, because DHS never made any settlement offer in this case.

EPIC had no obligation whatsoever, under *American Lands Alliance* or any other case

law, to accept a non-existent settlement offer. As DHS rightly points out in its

memorandum in opposition, "defendant, unlike the defendants in those cases, never made

an actual 'substantial settlement offer.'" DHS Opp. at 7. Not only did DHS never make a

"substantial" settlement offer – it never made a settlement offer at all. This is certainly

not an unimportant distinction. DHS is asking the court to punish EPIC for not accepting a settlement offer that was never made by DHS. DHS' argument that it was unable to make such an offer is groundless. Plaintiffs hold no monopoly on the extension of settlement offers. If DHS wanted to make a settlement offer, it could have put forth an offer at any time via email or telephone. DHS is asking the Court to obligate EPIC to put forth a settlement offer on DHS' behalf and then accept that settlement offer, or face a reduction in attorneys' fees.

### C.      EPIC is Eligible for and Entitled to Fees and Costs under FOIA

Defendant concedes that EPIC is eligible to recover its fees and costs from the DHS in this matter because EPIC "substantially prevailed" in this lawsuit under the catalyst theory. 5 U.S.C. § 552(a)(4)(E)(i), DHS Opp. at 8.

Defendant also concedes EPIC's entitlement to fees under two of the four entitlement prongs: "commercial benefit" and "nature of the complainant's interest." DHS Opp. at 8.

### 1.      The "Public Benefit" Factor Weighs in EPIC's Favor

Defendant challenges the public benefit of the documents EPIC obtained as a result of this litigation. DHS Opp. at 8. DHS' opposition, in an apparent misunderstanding of the citation term "*e.g,*"[1] disingenuously limits its analysis to one fact uncovered by one document: the revelation that airport body scanners are capable of storing images, which was included in the TSA Procurement Specifications document obtained by EPIC in this lawsuit. DHS Opp. at 9. Contrary to DHS' limited analysis, as a

---

[1] According to the Blue Book, *e.g.* is used "to introduce an authority that is one of multiple authorities … directly stating the same proposition." The Blue Book: a Uniform System of Citation R.B3.2 at 5 (Columbia Law Review Ass'n et al. eds. 19th ed. 2010). Contrary to DHS' interpretation, "*e.g.*" is not a signal of limitation.

result of this lawsuit, EPIC obtained hundreds of pages of documents, including not only

the TSA Procurement Specifications document, but also traveler complaints, vendor

contracts, and Operational Requirements. The many revelations contained in these

documents were covered by the national media (Fox News, MSNBC, CNN, USA Today,

the New York Times and many others), were publicized by EPIC on its website,[2] and

were discussed at numerous conferences, including EPIC's own January 6, 2011

conference (broadcast on CSPAN 2).[3] The public benefit of these documents was in no

way limited to demonstrating that the machines were capable of storing images. In fact,

even the news stories cited as examples by EPIC in its motion for fees, and referenced by

DHS in its memorandum in opposition, discuss several other revelations: that the

scanners have ten adjustable levels of privacy, that they are designed to be capable of

"exporting of image data" and provide "a secure means for high-speed transfer of image

data." *Body Scanners Can Store, Send Images, Group Says*, CNN, Jan. 11, 2010;[4]

Matthew Wald, *Mixed Signals on Airport Scanners*, The New York Times, Jan. 12,

2010.[5] EPIC, in fact, publicly disseminated a memorandum summary of documents

obtained in this lawsuit that highlights nine key revelations contained in the initial batch

of DHS disclosures.[6]

     EPIC publicized more important discoveries in later documents, which were

widely reported in national media. *See e.g. Travelers File Complaints Over TSA Body

Scanners*, PC World, March 9, 2010.[7] The documents disclosed by DHS as a result of

---

[2] http://epic.org/privacy/airtravel/backscatter/epic_v_dhs.html
[3] http://epic.org/events/tsa/
[4] http://www.cnn.com/2010/TRAVEL/01/11/body.scanners.
[5] http://www.nytimes.com/2010/01/13/us/13scanners.html.
[6] http://epic.org/2010/11/epic-releases-analysis-on-tsa.html
[7] http://www.pcworld.com/article/191067/travelers_file_complaints_over_tsa_body_scanners.html

this litigation revealed many facts to which the American public had never before been

privy: the machine's USB transfer capabilities, the security flaws in the machines

(Ethernet capabilities and Windows operating system), the "adjustable levels" of privacy,

the high capacity storage drives, etc. This information had never previously been in the

public domain. The traveler complaints, TSA Procurement Specifications document, TSA

Operational Requirements document, and vendor contracts had never previously been

released to the public. DHS' characterization of the public import and novelty of these

documents is clearly inaccurate.

### 2. The "Reasonable Basis in Law" Factor Weighs in EPIC's Favor

The DHS next argues that EPIC does not satisfy the fourth prong of the

entitlement test: whether to government's withholding had a reasonable basis in law.

DHS falsely states that this factor, in and of itself, is "often dispositive" and cites *Davy v.

C.I.A.*, 550 F.3d 1155, 1162 (D.C. Cir. 2008), to support this proposition. DHS Opp. at

10. But DHS mischaracterizes *Davy*. In fact, *Davy* plainly holds, "*No one factor is

dispositive*, although the court will not assess fees when the agency has demonstrated that

it had a lawful right to withhold disclosure." *Id.* at 1159 (emphasis added).  Thus, "if the

Government's position is correct as a matter of law, that will be dispositive." *Id.* at 1162.

If, however, "the Government's position is founded on a colorable basis in law, that will

be weighed along with other relevant considerations in the entitlement calculus." *Id.* at

1162. Contrary to DHS' assertion, *Davy* only makes this factor dispositive "if the

Government's position is correct as a matter of law." *Id.* Otherwise, this factor is only

"weighed along with other relevant considerations." *Id.*

Typically, in finding that an agency is "correct as a matter of law," courts find that the agency correctly withheld documents under an exemption. *See e.g. Brayton v. Office of U.S. Trade Representative*, 657 F. Supp. 2d 138, 145 (D.D.C. 2009) (Urbina, J.). Conversely, the DHS' position in this matter is plainly incorrect as a matter of law. DHS did not withhold documents because it (correctly) believed them to be exempt under FOIA's delineated exemptions. DHS simply failed to respond at all, in direct violation of the Freedom of Information Act. The Freedom of Information lays out clear deadlines for agency response. The act states that:

> Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—
>
> (i) determine within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and
>
> (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A).

DHS repeatedly failed to comply with the statute – it did not comply with statutory deadlines regarding either of EPIC's two FOIA requests or EPIC's two FOIA appeals. The agency's position was clearly not "correct as a matter of law," hence this factor is not "dispositive" as DHS claims it is.

Because the agency was not correct as a matter of law, this factor must be weighed, along with the other three factors. For the fourth factor to weigh in the agency's

favor, the agency must present at least a "colorable basis in law." *Davy v. C.I.A.,* 550 F.3d at 1163.  Contrary to DHS's claims, this factor would weigh in EPIC's favor because the government has no "colorable basis in law." The Defendants' use of *Davy v. C.I.A.* to support its proposition is curious because this case proves EPIC's point exactly. In *Davy*, the court held that the plaintiff was entitled to attorney's fees in part because the agency had no reasonable basis in law for withholding the documents. *See id.* In *Davy,* as in EPIC v. DHS, the agency withheld documents until after the FOIA requester filed suit. *See id.* The court found this factor weighed heavily in the plaintiff FOIA requester's favor, stating "Failing to explain the basis for deferring its response to his second request until after he filed suit is exactly the kind of behavior the fee provision was enacted to combat. For the agency to receive the benefit of the fourth factor it must present at least a 'colorable basis in law' for its failure to respond to Davy's second request, and it has not done so." *Davy v. C.I.A.,* 550 F.3d at 1163. DHS asserts that its own "administrative error" is somehow a reasonable basis in law for failing to comply with the FOIA statute and improperly withholding documents from EPIC. DHS Opp. at 10. EPIC has properly cited *Miller v. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985), as relevant precedent in this area. The court in *Miller* strongly admonished the agency's inefficiency as it ruled in favor of the FOIA requester on this factor:

> The Department has explained that these documents were not produced more quickly because of a combination of factors, including processing backlogs, confusion, and administrative error. While these reasons are plausible, and we do not find them to be evidence of bad faith on the part of the Department, they are practical explanations, not reasonable legal bases. The FOIA does not contain a statutory exception for administrative inefficiency.

*Miller v. U.S. Dept. of State*, 779 F.2d 1378, 1390 (8th Cir. 1985)

*Miller* has been cited favorably in hundreds of cases (including cases before this Court), has never been overturned, and remains good law. *E.g. Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004); *James v. Drug Enforcement Admin.*, 657 F. Supp. 2d 202, 205 (D.D.C. 2009) (Urbina, J.); *Jones v. U.S. Dept. of Justice*, 601 F. Supp. 2d 297, 300 (D.D.C. 2009) (Urbina, J.). *Miller* is precisely on point, describing (and dismissing) exactly the argument made in DHS' reply. Following *Miller*, Courts have held that agency withholdings due to delay or backlog are not a colorable basis under law. In *Electronic Frontier Foundation v. Office of Dir. of Nat. Intelligence*, C0705278 SI, 2008 WL 2331959 (N.D. Cal. June 4, 2008), the court held that the agency's claims that it "worked diligently to release responsive records to plaintiff 'as soon as practicable,' " were simply not sufficient to "explain[] why it needed four months to process plaintiff's FOIA request." As such, the court ruled that the fourth favor weighed in favor of the plaintiff requester. *Id*; *see also Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 740 (E.D. Va. 2005) (reiterating that, under *Miller*,  "a defendant's failure to produce documents due to backlog or administrative issues does not constitute a 'reasonable basis in law.'"). DHS simply cannot claim that its administrative inefficiency in responding to FOIA requests is a "reasonable" basis in law.

DHS cites two cases in support of its position – one from the Western District of Washington, *Read v. F.A.A.*, 252 F. Supp. 2d 1108 (W.D. Wash. 2003), one from a Utah District Court, *Ellis v. United States*, 941 F. Supp. 1068 (D. Utah 1996). DHS Opp. at 10-11. Neither case binds this Court. Nor is either case persuasive. *Reed* and *Ellis* were highly fact–specific. *Reed* turned on the agency's reasonable efforts to stay in contact

with the FOIA requester, a factor wholly absent in the present case. *Ellis* turned on the requester's uncooperative behavior, a factor that is likewise absent here.

Here, there was no colorable basis upon which DHS could withhold documents for months beyond FOIA's deadlines: EPIC's request was clear and well-written. EPIC's request was for a limited and specific set of documents. DHS did not fail to disclose documents because it was confused about the request or because it reasonably believed that a particular exemption might apply. It simply failed to respond. DHS has provided no colorable basis in law to withhold the documents that have since been disclosed (TSA Procurement Specifications, TSA Operational Requirements, vendor contracts, and traveler complaints). Hence, this factor weighs against DHS and in favor of EPIC.

Moreover, not only did the agency not have a "colorable basis in law," but there is reason to believe that it acted in bad faith. The agency twice failed to conform with FOIA statutory deadlines to respond to FOIA requests and twice failed to conform with FOIA statutory deadlines to respond to FOIA appeals. When sued, the agency *again* failed to respond within the lawful deadline, effectively ignoring the deadline to answer EPIC's complaint without explanation or reasonable excuse. This clearly shows a deliberate lack of cooperation on the agency's part, in violation of FOIA and President Obama's stated transparency objectives.[8] It is, as the court in *Davy v. C.I.A.* so aptly stated: "exactly the kind of behavior the fee provision was enacted to combat." *Davy v. C.I.A.,* 550 F.3d at 1163.

Even if the court finds no bad faith on DHS' part, from a policy standpoint, allowing agencies to simply ignore FOIA deadlines with no fear of accountability

---

[8] http://www.whitehouse.gov/the_press_office/TransparencyandOpenGovernment/

undermines the FOIA statute. DHS failed to respond to EPIC's request for more than

nine months. The agency only responded after EPIC filed suit. But "if the government

could defeat an award of fees by citing a lack of resistance after the requester files a

lawsuit to obtain requested documents, then it could force plaintiffs to bear the costs of

litigation." *Davy v. C.I.A.,* 550 F.3d 1155, 1163 (D.C. Cir. 2008). DHS has done exactly

that. DHS Opp. at 2. Litigation was the only device by which EPIC could unclog the

agency's process and receive the documents to which it was entitled, yet DHS asks the

court to make EPIC bear that cost. The fee-shifting scheme in the FOIA exists to provide

a disincentive for unreasonable agency delay. If the agency could simply delay its

response to FOIA requests until requester files suit, then push the costs of litigation off on

that requester, then there is no disincentive for agency delay and lack of cooperation.

### D.      EPIC's Requested Fees are Reasonable

DHS bears the burden of showing the EPIC's fee claims are unreasonable.

*Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004). DHS has failed to meet that

burden.

Courts have established that plaintiffs seeking fee awards must submit

"supporting documentation with the motion for attorney's fees, providing sufficient detail

so that the Court can determine *'with a high degree of certainty'* that the hours billed

were actually and reasonably expended, that the hourly rate charged was reasonable, and

that the matter was appropriately staffed to do the work required efficiently and without

duplicative billing." *Heard v. Dist. of Columbia*, CIV.A.02-296 CKK, 2006 WL 2568013

(D.D.C. Sept. 5, 2006), *quoting Watkins v. Vance,* 328 F.Supp.2d 23, 26 (D.D.C.2004).

"Once the plaintiff has provided such information, there is a presumption that the number

of hours billed and the hourly rate are reasonable." *Watkins v. Vance*, 328 F. Supp. 2d at 26. EPIC has submitted proper supporting documentation, and, as such, the presumption favors EPIC's fee request. DHS has failed to overcome that presumption by showing any real deficiencies in EPIC's requests. Therefore, the court should grant EPIC's request.

EPIC has submitted a reasonable request for fees to this court. EPIC has kept detailed records of its work and asks that that work be fairly compensated. EPIC cites current Laffey rates and has properly requested that the court use its discretion to grant a 20% increase over the Laffey amounts to compensate for EPIC's unique expertise and the high quality of its administrative filings. EPIC's request for fees on fees is well-founded in law. Moreover, EPIC has made claims for appropriate tasks and the amount of time EPIC cites for each particular work task is reasonable. DHS objects to the expense created by EPIC's fees motion. But the fault for this expense lies with the agency, not with EPIC. As the court in *Los Angeles Gay & Lesbian Community Serv. Center v. IRS*, 559 F Supp. 2d 1055(C.D. Cal. 2008), stated:

> Defendant cannot put Plaintiff through the time and expense of enforcing compliance with FOIA and then complain that the resources were out of proportion to the good obtained. Reminding the Court of the waste of resources engendered by Defendant's failure to comply with its obligations hardly persuades the Court to reduce the fee award.

### 1. EPIC Properly Requested a 20% Increase Above the Laffey Matrix

Courts have acknowledged that the Laffey matrix is not the final word regarding reasonable fee rates. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983) (holding that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward"); *Long v. U.S. I.R.S.,* 932 F.2d 1309 (9th Cir. 1991) (finding that

14

"[t]he court may authorize an upward or downward adjustment from the lodestar figure if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary"). EPIC has asked the court to use its discretion to grant a 20% increase due to EPIC's unique expertise and highly-detailed administrative filings. Courts have discretion to increase or decrease fee awards based on a variety of factors, as noted in *Weisberg v. United States Dep't of Justice,* 720 F. Supp. 1 (D.C. Dist. 1989), where the court permitted the award of fee enhancements. As DHS concedes, the Supreme Court has acknowledged that there are circumstances that justify an upward departure from lodestar rates. DHS Opp. at 13, *Perdue v. Kenny A.,* 130 S. Ct. 1662 (2010). DHS can argue the wisdom of granting this request, but it cannot truthfully say that such an increase is impermissible, unprecedented, or outside of the Court's discretionary power.

EPIC provides extraordinary expertise in FOIA cases. FOIA cases are, with the exception of one recent non-FOIA lawsuit, the only kinds of cases that EPIC litigates. EPIC has no less than eight FOIA cases presently in some stage of litigation. Mr. Rotenberg, Mr. Verdi, and Ms. McCall work on FOIA litigation nearly every day and, literally, wrote the book on FOIA (*Litigation Under the Federal Open Government Laws 2010)*. All three attorneys have far more substantive expertise in the FOIA realm than the average attorney could claim. Ms. McCall, specifically, may be a recent law school graduate, but, unlike most second year attorneys, she bears a considerable amount of responsibility for substantive litigation work, oversees other attorneys who work on FOIA litigation, routinely drafts briefs and motions in FOIA cases, and has provided expert commentary on FOIA issues for a variety of conferences and national news

venues. Few, if any, attorneys can claim the level of expertise in FOIA work that EPIC attorneys possess.

DHS incorrectly claims that by billing 100 hours in this case, EPIC negates its claim of expertise. 100 hours is little more than two weeks of work. This litigation dragged out over the course of more than a year and required several unusual filings, in part thanks to DHS' failure to answer EPIC's Complaint within the prescribed time limit. EPIC's attorneys have efficiently used their time, and their expertise has given them the ability to understand and articulate arguments regarding FOIA exemptions, withholding, and fees more quickly than a typical attorney would. *Am. Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 438 (11th Cir. 1999) (finding that a higher than local market rate "could be reasonable and cost-sensible, especially if it resulted in lower costs than would otherwise be necessary").

EPIC's comprehensive, specific, and well-researched administrative filings also provide justification for the increase. EPIC's detailed research on body scanners allowed it to submit a detailed but very specific and narrow request. EPIC provided the agency with background information to streamline the process and a very narrow request for specific documents (which should have made those documents quite easy to locate, had the agency made an effort to locate them in a timely manner).

The cases EPIC has cited above and in its initial motion for attorneys' fees and costs illustrate that it is within the court's discretion to grant an increase based on these factors. Because EPIC's expertise and detailed administrative filings enabled increased efficiency in this matter, the 20% increase in fees is justified.

**2.      EPIC is Entitled to Recovery Fees for Document Review and Other
Work Performed in the Prosecution of This Lawsuit**

DHS opposes EPIC's recovery of fees for document review and other work

performed after the agency's final disclosure of records. DHS Opp. at 20-23. First, the

agency likens EPIC's work in prosecuting this lawsuit to work performed by FOIA

requesters at the administrative level. DHS Opp. at 20. The agency cites no authority for

this proposition. And contrary authority abounds. Courts routinely distinguish between

fees incurred by a requester during the administrative process and fees incurred after the

initiation of a lawsuit. *E.g. N.W. Coal. for Alternatives to Pesticides v. Browner*, 965 F.

Supp. 59, 65 (D.D.C. 1997) (awarding attorneys' fees for litigation work but declining to

award fees for administrative work).

EPIC filed its Complaint in this matter on November 5, 2009. Complaint, Dkt.

No. 1. EPIC's Motion for Fees seeks reimbursement for work performed preparing the

Complaint and for subsequently legal work performed in the prosecution of this lawsuit.

None of the timesheets attached to the EPIC Motion for Fees reflect work performed

during the administrative stage of this dispute. Motion for Fees at Ex. 4-6. No time

entries reflect work performed by EPIC's attorneys concerning the preparation of

administrative filings regarding EPIC's FOIA requests. DHS's attempt to mischaracterize

EPIC's motion for fees incurred in the litigation of this matter as fees incurred during the

administrative process is unavailing.

DHS also challenges EPIC's fees incurred after the agency disclosed its final

production of records to EPIC. These fees include EPIC's document review to determine

the sufficiency of the production and the lawfulness of the exemptions asserted by DHS.

Such work is part and parcel of the normal legal work required to prosecute a FOIA

claim. EPIC is entitled to review and challenge the sufficiency of the agency's response. Indeed, a failure to do so could be inconsistent with EPIC's duty to diligently pursue the suit.

DHS cites *Weisberg v. U.S. Dept. of Justice*, 745 F.2d 1476 (D.C. Cir. 1984) in support of its argument. DHS Opp. at 22. However, *Weisberg* involved a FOIA plaintiff who had obtained 60,000 pages of records in the administrative process and brought a subsequent lawsuit in an attempt to force disclosure of additional records. *Id*. at 1496. The *Weisberg* court merely held that the 60,000 pages of pre-litigation disclosures should not be considered when analyzing whether the plaintiff "substantially prevailed." *Id*. Indeed, *Weisberg* makes clear that plaintiffs are not required to demonstrate that each litigation activity undertaken by a plaintiff led directly to an agency disclosure. Rather, the D.C. Circuit held that a plaintiff "must show that the prosecution of the *action* could reasonably be regarded as necessary to obtain the information ... and that a causal nexus exists between that *action* and the agency's surrender of that information." *Id*. (emphasis added). In this case, there is no question that EPIC's lawsuit (the action in question) caused the agency's surrender of records.

### 3.    EPIC is Entitled to Fees for All Filings in This Lawsuit

EPIC has only claimed fees that are reasonably compensable under FOIA. EPIC's request for compensation regarding its Motion for Default and motions related to the test images and training manuals is reasonable. These claims are not segregable from the larger litigation, in which EPIC has substantially prevailed. In its opposition, DHS once again misinterprets precedent.  In *Hensley v. Eckerhart,* 461 U.S. 424, 440, (1983), the Supreme Court stated "Where the plaintiff has failed to prevail on a claim that is

distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. *Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.*" *Id*. (emphasis added). In order for a claim to be segregable for fee purposes, it must be distinct *in all respects* from his successful claims was a deciding factor. If the claims are "related" then they should be considered as a whole and the overall success should be evaluated. D.C. District courts have routinely applied this standard, "EPA argues that plaintiffs should not recover fees for their work on an APA claim that was dismissed as moot. That argument is mistaken. Plaintiffs' APA claim was not 'distinct in all respects' from their FOIA claim." *Northwest Coalition for Alternatives to Pesticides v. Browner,* 965 F. Supp. 59, 65 (D.D.C. 1997). In *Northwest Coalition for Alternatives to Pesticides*, the plaintiffs were raising an APA claim that was far more distinct than the claims raised by EPIC in this case. EPIC's arguments regarding the 2,000 test images and 376 pages of training manuals are much more similar to the claims raised by Judicial Watch in it's recent FOIA case, where Judicial Watch expended considerable time and effort on unsuccessful discovery related to a FOIA request. There, the court found that the unsuccessful discovery could not "reasonably be viewed as divorced from or unrelated to Judicial Watch's principal FOIA claim." *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 470 F.3d 363, 370 (D.C. Cir. 2006). EPIC's claims all stemmed from FOIA, not from a separate statute. EPIC's claims were all a part of the same FOIA case, related to the same two requests, and were not easily segregable. While individual claims or

motions may have failed, EPIC did substantially prevail in this case, obtaining hundreds of pages of documents.[9]

DHS' claim that EPIC should not be compensated for its Motion for Default Judgment is particularly audacious since that motion was only filed as a result of DHS' own "administrative error", *See* Dkt. No. 11 at 5-6, and failure to answer EPIC's complaint within the designated time period.[10]

### 4. EPIC's Fee Request for Preparing the Complaint in EPIC v. DHS I is Reasonable

EPIC's billing is reasonable for both of its Complaints. DHS erroneously argues that 16.7 hours for complaint preparation, including filing and service, is excessive. The preparation of the complaint included research regarding the proper filing procedures and addressees of the complaint, the actual drafting of the complaint itself, which included a substantial amount of original material, the preparation and printing of the complaint and service documents, and a trip to D.C. District Court to file the Complaint. 16.7 hours, the equivalent of about two work days, is completely reasonable in light of this. Courts have found far greater time expenditures on Complaint preparation and filing to be reasonable. *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999) (determining that 40 hours was a reasonable amount of hours to bill for complaint preparation and filing).

DHS cites the amount of preparation time billed for the second complaint (in EPIC v. DHS II) as the proper amount of time. But there are obvious reasons that the

---

[9] DHS has not disputed that EPIC, overall, "substantially prevailed" for the purposes of FOIA fees.
[10] DHS attempts to recast this failure to answer by claiming that EPIC's service was defective, when it has already admitted in its filings that "the United State Attorney's Office does have a record of receipt of a piece of certified mail matching the receipt filed by Plaintiff." Defendant's lack of organization or communication within its own agency is not EPIC's fault, and EPIC ought not be punished for defendant's failure to answer.

drafting, preparation, and filing of the second complaint took less time: because the research had already been done, large portions of the complaint could simply be copied from EPIC v. DHS I, the service addressees had already been determined, etc. If EPIC were billing as many hours for this Complaint as for the first complaint, then DHS would have reasonable grounds for skepticism, but as EPIC has fairly, accurately, and honestly billed its rates, EPIC properly billed less time for the preparation of the second, related, Complaint.

> **5.     EPIC Should Receive "Fees on Fees"**

DHS argues that "whether fees on fees are available in a FOIA action is an unresolved question." DHS Opp. at 27. On the contrary, this is settled law in the D.C. Circuit. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Heard v. Dist. of Columbia*, CIV.A.02-296 CKK, 2006 WL 2568013 (D.D.C. Sept. 5, 2006) (internal citations omitted). In fact, the D.C. District courts have upheld fees on fees in the FOIA context many times. *See e.g. Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec.,* CIV.A.08-2133, 2009 WL 1743757 (D.D.C. June 15, 2009); *Nat. Veterans Legal Services Program v. U.S. Dept. of Veterans Affairs,* 1:96-CV-01740-NHL, 1999 WL 33740260 (D.D.C. Apr. 13, 1999). Defendant cites nothing but older, non-binding case law in an attempt to rebut these more recent and applicable cases. EPIC's motion for fees is reasonable and is compensable under D.C. caselaw.

Defendant also argues that EPIC's fees ought to be reduced because of its failure to respond to DHS' non-existent settlement offer. As discussed above, EPIC has no obligation to accept a settlement offer, even if such an offer had existed. Here, DHS

never made any actual offer, so it would be particularly inappropriate to punish EPIC by reducing its fee award for alleged "recalcitrance." DHS Opp. at 28.

DHS also argues that EPIC spent an inappropriately large amount of time preparing its fees petition. DHS Opp. at 28. In fact, D.C. District courts have found far greater drafting times to be appropriate. *Heard v. Dist. of Columbia,* CIV.A.02-296 CKK, 2006 WL 2568013 (D.D.C. Sept. 5, 2006) (finding that "within 120 hours" was an appropriate amount of time for the preparation of a fee petition). Ms. McCall billed less than two days worth of work (15.9 hours) for EPIC's fees motion – a 14 page motion which involved several complex legal theories (which had not been made in EPIC's previous summary judgment motion) as well as hours of research to buttress arguments EPIC had previously made. Ms. McCall's 15.9 hours billed also include the process of preparing EPIC's numerous exhibits, drafting affidavits and a proposed order, and gathering and EPIC's timesheets. Moreover, EPIC's preparation of its motion for fees would have been unnecessary had DHS not opposed EPIC's motion for summary judgment on the fees issue in prior briefings in this case.

DHS argues that EPIC's fees on fees award ought to be limited to fifteen percent of any recover based on *LaShawn A. v. Barry*, Civ. No. 89-1754, 1998 WL 35243112 (D.D.C. Feb. 18, 1998). *LaShawn A.*, however was a §1983 case, not a FOIA case. And, despite the fact that it was decided more than ten years ago, no court has since cited this case (for the fifteen percent limitation or any other proposition). In fact, EPIC has been unable to locate any case law that suggests that such a limitation is customary or appropriate in a FOIA case. Hence, any such limitation would be arbitrary and should not be applied here.

**<u>CONCLUSION</u>**

As discussed above, EPIC substantially prevailed in this lawsuit, therefore triggering FOIA's fee-shifting provision. EPIC is eligible for and entitled to recover its fees and costs from the DHS in this matter. EPIC's fees are reasonable and supported by the proper documentation. The Court should award EPIC $33,729.40 in fees and costs, as well as its fees in preparing all filings subsequent to DHS's memorandum in opposition.

Respectfully submitted,

_____*/s/ John Verdi*_____

MARC ROTENBERG
JOHN VERDI
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: February 4, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of February 2011, I served the foregoing

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND

COSTS, including all exhibits and attachments, by electronic case filing upon:

    JESSE Z. GRAUMAN
    U.S. Department of Justice
    Civil Division, Federal Programs Branch

           _____/s/ John Verdi_____
           John Verdi
           *Counsel for Plaintiff*