**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ELECTRONIC PRIVACY | : | | |
| INFORMATION CENTER, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Civil Action No.: | 09-2084 (RMU) |
| v. | : | | |
| | : | Re Document Nos.: | 26, 30, 34 |
| UNITED STATES DEPARTMENT OF | : | | |
| HOMELAND SECURITY, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING AS UNTIMELY THE PLAINTIFF'S MOTION FOR RELIEF UPON RECONSIDERATION;
GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
AND COSTS; DENYING AS MOOT THE PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS
MOTION FOR ATTORNEY'S FEES AND COSTS**

**I. INTRODUCTION**

This matter is before the court on the plaintiff's motion for relief upon reconsideration

and on its motion for attorney's fees and costs. The plaintiff commenced this action pursuant to

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel the defendant, the

Department of Homeland Security ("DHS"), to release withheld documents pertaining to the

whole-body imaging technology that is used to screen air travelers.

On January 12, 2011, the court granted DHS's motion for summary judgment and denied

the plaintiff's cross-motion for summary judgment on the grounds that FOIA exemption "2-high"

appropriately protected the withheld body scanner images from disclosure. Shortly thereafter, in

*Milner v. Department of the Navy*, 131 S. Ct. 1259 (2011), the Supreme Court eradicated the 2-

high exemption. The plaintiff now moves for relief upon reconsideration as a result of this

change in law. The plaintiff further moves for attorney's fees and costs.

Because the plaintiff filed its motion for reconsideration after the prescribed time to file a notice of appeal had expired and because it had not already filed an appeal, the court denies the plaintiff's motion as untimely.  Additionally, because the court determines that the plaintiff's lawsuit catalyzed DHS's disclosure of documents, the court grants in part the plaintiff's motion for attorney's fees.  The court denies the motion for attorney's fees in part, however, because the plaintiff has requested certain inappropriate fees and fee enhancements.

## II.  BACKGROUND

### A.  Factual History

The Transportation Security Administration ("TSA"), a component of DHS, uses "body scanners," machines that produce three-dimensional images of individuals, to screen airline passengers prior to boarding airline flights.  Compl. ¶ 6.  The plaintiff submitted two separate FOIA requests to DHS in April 2009 and July 2009, seeking information regarding TSA's use of body scanning technology or "whole body imaging."  Def.'s Statement of Material Facts Not in Dispute ("Def.'s Statement") ¶¶ 1-2.  Among other things, the plaintiff sought "[a]ll unfiltered or unobscured images captured using body scanner technology."  *Id.* ¶ 2.

Although DHS produced 1,766 pages of responsive documents, it also withheld in full 2,000 images produced by the body scanners and 376 pages of TSA training materials.  Def.'s Statement ¶ 5.  According to the TSA, the 2,000 images contain "various threat objects dispersed over the bodies," Def.'s Mot., Declaration of Mark Roberts, Acting Manager of the Sensitive Security Information Branch of the TSA, ("Roberts Decl.") ¶ 20, and were "created for the purpose of testing the degree to which vendors' [body scanners] conform to the detention standards issued by TSA in its procurement specifications," *id.* ¶ 16.  TSA previously released a

"limited number of images to the public" but has determined that "any further release of images would constitute a threat [to] transportation security." *Id.* ¶ 17.  With respect to the 376 pages of TSA's security training materials that were withheld, the defendant describes the materials as instructor guides and training manuals that "were created to train TSA employees" who operate the body scanners. *Id.* ¶¶ 21-22.

## B.  Procedural History

In November 2009, the plaintiff commenced this action, alleging that DHS had failed to respond to its first FOIA request in a timely fashion.  *See* Compl. ¶¶ 24, 28-30.  Because DHS did not file a timely answer, the plaintiff filed an affidavit for entry of default judgment on January 8, 2010.  *See* Pl.'s Aff. for Default J.  DHS subsequently entered a notice of appearance and filed a motion for extension of time in which to file an answer.  *See generally* Def.'s Notice of Appearance (Jan. 12, 2010); Def.'s Mot. for Extension of Time to File Answer (Jan. 12, 2010). Good cause for an extension having been shown, the court granted DHS's request for extension of time in which to file an answer and the clerk did not enter default.  *See* Minute Order (Aug. 10, 2010).

On January 13, 2010, the plaintiff commenced a second action, again alleging that DHS had failed to respond to its second FOIA request in a timely fashion.  *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, Civ. No. 10-63, Compl. ¶¶ 23-24, 28-31.  The court consolidated the two actions.  Minute Order (Mar. 17, 2010).

DHS then moved for summary judgment, invoking FOIA exemptions 2-high and 3 with regard to the withheld training materials and images.  Def.'s Mot. for Summ. J at 10.  The plaintiff filed a cross-motion for summary judgment, challenging DHS's refusal to disclose the 2,000 images and 376 pages of training materials.  *See generally* Pl.'s Cross-Mot.

On January 12, 2011, the court granted summary judgment to DHS after determining that FOIA exemption 2-high applied because the disclosure of the withheld 2,000 images and 376 pages of training materials "would 'significantly risk circumvention of federal regulations or statutes.'"  Mem. Op. (Jan. 12, 2011) at 7 (quoting *Elliott v. U.S. Dep't of Agriculture*, 596 F.3d 842, 847 (D.C. Cir. 2000)).   In light of the application of exemption 2, the court determined that it was unnecessary to reach the issue of whether exemption 3 would also appropriately protect the withheld records.  *Id.* at 12.

On March 7, 2011, the Supreme Court, in *Milner v. Department of the Navy*, rejected FOIA exemption 2-high in its entirety as a basis of withholding records after concluding that it was created by the courts and not rooted in the FOIA statute.  131 S. Ct. 1259, 1270 (2011) ("[Exemption 2-high] in fact has no basis in text, context, or purpose of FOIA, and we accordingly reject it.").  The Supreme Court held that FOIA exemption 2 properly protects only those "records relating to issues of employee relations and human resources," *id.* at 19, such as "use of parking facilities or regulations of lunch hours, statements of policy as to sick leave, and the like," *id.* at 2 (internal citation omitted).  The Supreme Court further acknowledged that this reading of exemption 2 "upsets three decades of agency practice . . . and therefore may force considerable adjustments."  *Id.* at 18.

 On March 24, 2011, the plaintiff filed a motion for relief upon reconsideration of this court's January 12, 2011 ruling.  Pl.'s Mot. for Recons. at 4.  The plaintiff argues that because *Milner* constitutes an intervening change in the controlling law for its case, the court should reconsider its grant of summary judgment to DHS.  *Id.*  In response, DHS asserts that the plaintiff's motion is untimely and, in the alternative, that FOIA exemption 3 applies and properly

protects the records it withheld.[1]  Def.'s Mem. in Opp'n to Pl.'s Mot. for Recons. at 2 ("Def.'s

Mem.").  The plaintiff has also filed a motion for attorney's fees and costs, *see generally* Pl.'s

Mot. for Atty's Fees, a motion which the defendant opposes, *see generally* Def.'s Opp'n to Pl.'s

Mot. for Atty's Fees ("Def.'s Atty's Fees Opp'n").  With the plaintiff's motions now ripe for

review, the court turns to the applicable legal standards and the parties' arguments.

## III.  ANALYSIS

### A.  The Court Denies as Untimely the Plaintiff's Motion For Relief Upon Reconsideration

#### 1.  The Plaintiff's Motion Is Not Properly Brought Under Rule 54(b)

##### a.  Legal Standard for Rule 54(b)

A district court may revise its own interlocutory decisions "at any time before the entry

of judgment adjudicating all the claims and the rights and liabilities of all the parties."  FED. R.

CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citing the

Advisory Committee Notes to Federal Rule of Civil Procedure 60(b)).  The standard for the

court's review of an interlocutory decision differs from the standards applied in reviewing final

judgments under Federal Rules of Civil Procedure 59(e) and 60(b).  *Compare Muwekma Tribe v.

Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) (noting that "motions for [relief upon]

reconsideration of interlocutory orders, in contrast to motions for [relief upon] reconsideration of

final orders, are within the sound discretion of the trial court") *and United Mine Workers v.

Pittston Co.*, 793 F. Supp. 339, 345 (D.D.C. 1992) (discussing the standard applicable to motions

to grant relief upon reconsideration of an interlocutory order) *with LaRouche v. Dep't of*

---

[1]     Because the court determines that the plaintiff's motion for relief upon reconsideration is
untimely, *see infra* Part.III.A., the court does not reach the question of whether FOIA exemption
3 otherwise applies.

*Treasury*, 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000) (analyzing the defendant's motion for relief from judgment under Rule 60(b)) *and Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996) (ruling on the plaintiff's motion to alter or amend judgment pursuant to Rule 59(e)).  A motion pursuant to Rule 59(e), to alter or amend a judgment after its entry, is not routinely granted.  *Harvey*, 949 F. Supp. at 879.  The primary reasons for altering or amending a judgment pursuant to Rule 59(e) or Rule 60(b) are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam); FED. R. CIV. P. 60(b); *LaRouche*, 112 F. Supp. 2d at 51-52.

By contrast, relief upon reconsideration of an interlocutory decision pursuant to Rule 54(b) is available "as justice requires."  *Childers*, 197 F.R.D. at 190.  "As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court."  *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted).  These considerations leave a great deal of room for the court's discretion and, accordingly, the "as justice requires" standard amounts to determining "whether [relief upon] reconsideration is necessary under the relevant circumstances."  *Id.*  Nonetheless, the court's discretion under Rule 54(b) is limited by the law of the case doctrine and "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Singh*, 383 F. Supp. 2d at 101 (internal citations omitted).

### b.  Rule 54(b) Does Not Apply Because the Court's January 12, 2011 Order Was a Final Judgment, Not an Interlocutory Decision

The plaintiff brings its motion under Rule 54(b), asserting that the Supreme Court's holding in *Milner* requires the court to reconsider its Order granting summary judgment to DHS. Pl.'s Mot. for Recons. at 4.  The plaintiff argues that Rule 54(b) is an appropriate vehicle for requesting such reconsideration because, in light of the pending motion for statutory attorney's fees, the court's Order should not be considered a "final judgment," but rather an interlocutory decision.  Pl.'s Mot. for Recons. at 4.

DHS contends that an outstanding motion for attorney's fees does not upset the finality or appealability of this court's Order, which DHS maintains was a final decision on the merits. Def.'s Opp'n to Pl.'s Mot. for Recons. at 6.  Thus, according to the defendant, the plaintiff's motion is inappropriately brought under Rule 54(b), which is reserved for the reconsideration of interlocutory and not final decisions.  *Id.* at 7, 9.

If a court has resolved the merits of a case through a final order and only a statutory request for attorney's fees remains, the merits of the case are no longer pending for appeal purposes and the judgment is considered final and immediately appealable.  *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) ("As a general matter . . . we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain."); *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 452 n.14 (1982) ("[T]he collateral character of the fee issue establishes that the outstanding fee question does not bar recognition of a judgment finally disposing of the merits as 'final' and 'appealable.'"); *Schultz v. Crowley*, 802 F.2d 498, 502, 502 n.1 (D.C. Cir. 1986) ("[O]ne necessary consequence of characterizing requests for statutory attorney's fees as separate from and collateral to judgments on the merits is that the

pendency of such requests can have no effect on the finality (and thus the appealability) of a judgment finally disposing of the merits of a case."). Stated otherwise, the court does not consider demands for payment of attorney's fees as impacting the finality of a court's decision. *Moody Nat'l Bank of Galveston v. G.E. Life & Annuity Assurance Co.*, 383 F.3d 249, 250 (5th Cir. 2004) ("Motions addressing costs and attorney's fees . . . are generally made pursuant to Rule 54, are considered collateral to the judgment, and do not toll the time period for filing an appeal."). This rule applies equally to requests for attorney's fees made both before and after the court issues a judgment on the merits, and applies "with full force" to fee requests authorized by statutory provisions. *Schultz,* 802 F.2d at 502 n.1.

As noted, on January 12, 2011, the court issued an order in this case granting summary judgment to DHS and denying the plaintiff's cross-motion for summary judgment. *See generally* Order (Jan. 12, 2011). Upon entry of the court's Order, the only remaining issue for adjudication was the plaintiff's motion for attorney's fees and costs.[2] The court's January 12, 2011 Order therefore constitutes a final judgment for purposes of appeal. *See White*, 455 U.S. at 452 n.14. Because the court's January 12, 2011 Order constitutes a final judgment as opposed to an interlocutory order, the plaintiff's motion seeking relief upon reconsideration of that Order is not properly brought under Rule 54(b), which can only be used to seek reconsideration of interlocutory orders. *See supra* Part III.A.1.a. Accordingly, the court turns to consider the

---

[2]     Upon a timely motion, the court is authorized under Rule 58(e) to toll the appeal period for a final decision until a party's motion for attorney's fees has been resolved. *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1058-59 (9th Cir. 2010) (discussing Fed. R. App. P. 4(a)(4)(A)(iii) and Fed. R. Civ. P. 58(e)). Such tolling is not, however, automatic, *see Kira, Inc. v. All Star Maint., Inc.*, 294 F. App'x. 139, 141 (5th Cir. 2008) (noting that the district court may, in its discretion, extend the time to appeal pursuant to Rule 58(e)), and Rule 58(e) cannot be invoked to extend the appeal period once the appeal period has run, *see Amo v. Baccash*, 2008 WL 5179022, at *2 (C.D. Cal. 2008). Here, no such order was ever requested by the parties or entered in this case.

plaintiff's motion under Rule 60(b), the proper procedural vehicle to alter or amend a final

judgment.

### 2. The Court Construes the Plaintiff's Motion for Relief Upon Reconsideration as a Rule 60(b) Motion

#### a. Legal Standard for Relief Under Rule 60(b)

In its discretion, the court may relieve a party from an otherwise final judgment pursuant

to any one of six reasons set forth in Rule 60(b). FED. R. CIV. P. 60(b); *Lepkowski v. Dep't of*

*Treasury*, 804 F.2d 1310, 1311-12 (D.C. Cir. 1986). First, the court may grant relief from a

judgment involving "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P.

60(b)(1). Relief under Rule 60(b)(1) turns on equitable factors, notably whether any neglect was

excusable. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

Second, the court may grant relief where there is "newly discovered evidence" that the moving

party could not have discovered through its exercise of due diligence. FED. R. CIV. P. 60(b)(2).

Third, the court may set aside a final judgment for fraud, misrepresentation or other misconduct

by an adverse party. *Id.* 60(b)(3); *Mayfair Extension, Inc. v. Magee*, 241 F.2d 453, 454 (D.C. Cir.

1957). Specifically, the movant must show that "such 'fraud' prevented him or her from fully

and fairly presenting his or her case," and that "the fraud is attributable to the party or, at least, to

counsel." *Richardson v. Nat'l R.R. Passenger Corp.*, 150 F.R.D. 1, 7 (D.D.C. 1993) (internal

citations omitted). Fourth, the court may grant relief in cases in which the judgment is "void."

FED. R. CIV. P. 60(b)(4). A judgment may be void if the court lacked personal or subject matter

jurisdiction in the case, acted in a manner inconsistent with due process or proceeded beyond the

powers granted to it by law. *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 871

(4th Cir. 1999). Fifth, the court may grant relief if the "the judgment has been satisfied, released,

or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it

prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (noting that not all judgments having continuing consequences are "prospective" for the purposes of Rule 60(b)(5)).  Sixth, the court may grant relief from a judgment for "any . . . reason that justifies [such] relief." FED. R. CIV. P. 60(b)(6).  Using this final catch-all reason sparingly, courts apply it only in "extraordinary circumstances." *Pioneer Inv. Servs. Co.*, 507 U.S. at 393.

A party proceeding under one of the first three reasons must file its Rule 60(b) motion within a "reasonable time," not to exceed one year after the judgment at issue. FED. R. CIV. P. 60(c)(1).  A party relying on one of the remaining three reasons may file its Rule 60(b) motion within a "reasonable time." *Id.*  The party seeking relief from a judgment bears the burden of demonstrating that it satisfies the prerequisites for such relief. *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002).

### b. The Plaintiff's Motion Was Not Brought Within a Reasonable Time Under Rule 60(b)(1)

The plaintiff argues that even if Rule 54(b) is inapplicable, its motion is properly construed as a timely Rule 60(b)(1) motion.  Pl.'s Reply in Supp. of Pl.'s Mot. for Recons. ("Pl.'s Reply") at 2.  According to the plaintiff, a motion filed pursuant to Rule 60(b)(1) is timely so long as it is filed within one year of the court's final judgment. *Id.*  The plaintiff concludes that because it has filed its Rule 60(b)(1) motion within one year of this court's Order, it is timely. *Id.*

DHS, on the other hand, contends that a court may, in reconsidering its prior decision under Rule 60(b)(1), address post-judgment changes in law only if the motion for relief upon reconsideration was filed before the period to appeal its prior decision had expired.  Def.'s Opp'n. at 12-13.  It argues that because the plaintiff filed its motion 71 days after the Order was entered,

at a point when the 60-day appeal period had already expired, the plaintiff's motion is untimely and should be denied. *Id.* at 15.

As described above, Rule 60(b)(1) provides for relief upon reconsideration to protect against "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). In *D.C. Federation of Civil Associations v. Volpe*, the Circuit interpreted a judicial "mistake" under Rule 60(b)(1) as allowing district courts to provide relief upon reconsideration of a final judgment in circumstances where there has been a change in the controlling law since the issuance of the final judgment.[3] 520 F.2d 451, 453 (D.C. Cir. 1975). A motion under Rule 60(b)(1) must, however, be filed within a "reasonable time," not to exceed one year after the judgment at issue. FED. R. CIV. P. 60(c)(1). Notably, "reasonable time" may be less than one year, depending upon the circumstances of a case. *See, e.g.*, *Brown v. Rubin*, 1997 WL 362494, at *1 (D.C. Cir. 1997) (affirming the district court's denial of a Rule 60(b)(1) motion because the motion was untimely even though it was raised within the one-year limit of Rule 60(c)(1)); *United States v. Theodorovich*, 102 F.R.D. 587, 590 (D.D.C. 1984) (holding that the defendant's Rule 60(b)(1) motion, filed four months after the court's entry of judgment, was not filed within "reasonable time").

Although this Circuit has not directly opined on what constitutes a "reasonable time" to file a Rule 60(b)(1) motion that is based on an intervening change in law, its decision in *Volpe* nonetheless provides some guidance. In *Volpe*, the Circuit determined that the district court should have reconsidered its final judgment after the appellant properly filed a Rule 60(b)(1)

---

[3]     Although the majority of circuits allow a party to file a Rule 60(b)(1) motion for relief upon reconsideration for a judicial mistake of the law, not all circuits agree that Rule 60(b)(1) is a proper procedural vehicle to address judicial mistakes. *See Fisher v. Kadant, Inc.*, 589 F.3d 505, 513 n.5 (1st Cir. 2009) (noting that a mistake of law cannot be regarded as a "mistake" within the purview of Rule 60(b)(1)); *McKnight v. U. S. Steel Corp.*, 726 F.2d 333, 338 (7th Cir. 1984) (holding that the appropriate mechanism for addressing mistakes of law is the appeal process, and that Rule 60(b)(1) does not apply).

motion.  520 F.2d at 453.  In reaching its conclusion, the Circuit explained that reconsideration

pursuant to Rule 60(b)(1) was appropriate because, *inter alia*, it was clear that the movant had

filed its motion within the period to appeal the final judgment.  *Id.* ("There is no question here of

action by the losing party in the District Court after the lapse of the time for appeal. . . . ").  Later,

in reflecting on its holding in *Volpe*, the Circuit explained that it had "allow[ed] correction of

substantive legal errors *during the appeal period*" in the "unique situation where the controlling

law of the circuit had changed between the time of the judgment and the time of the motion."

*Ctr. for Nuclear Responsibility v. U.S. Nuclear Regulatory Comm'n*, 781 F.2d 935, 939-40 (D.C.

Cir. 1986) (emphasis added) (citing *Volpe*, 520 F.2d at 453).  Such language supports the

conclusion that Rule 60(b)(1) motions based on a change in the controlling law are considered

filed within a "reasonable time" if they are filed within the appeal period.

 Indeed, more recently, in *Brown v. Rubin*, the Circuit affirmed the district court's denial

of a Rule 60(b)(1) motion for judicial mistake because the movant's "motion for relief from

judgment was untimely, as the district court's errors should have been raised within the time to

seek an appeal of the judgment."  1997 U.S. App. LEXIS 16370, at *2-3 (D.C. Cir. May 15,

1997) (noting that the *Volpe* court made it a point to explain that that case was not a situation in

which the movant had sought reconsideration "after lapse of the time for appeal").  Similarly, in

*Brown v. Reich*, the Circuit determined that "the district court did not abuse its discretion in

denying relief" upon reconsideration "because the motion for reconsideration was not filed until

after the time for appeal had expired."  1997 WL 68320, at *1 (D.C. Cir. Mar. 4, 1997)

(observing that although the *Volpe* decision allows for relief "where there is an intervening

change in controlling law," that case had dealt with circumstances in which "the motion was

filed before the time to appeal had expired" (citations omitted)); *see also Scott v. Casoria-Scott*,

2006 WL 1274763, at *1 (D.D.C. May 8, 2006) (holding that a Rule 60(b)(1) motion for relief upon reconsideration due to a mistake of law was untimely because it was filed outside of the period for appeal); *Hall v. Cent. Intelligence Agency*, 2004 U.S. Dist. LEXIS 27666, at *9-11 (D.D.C. Apr. 22, 2004) (denying relief upon reconsideration under Rule 60(b)(1) because the motion was not filed within time to appeal).

Similarly, several other circuits have held that a Rule 60(b)(1) motion is filed within a reasonable time only if it is filed within the appeal period or, if filed outside of the appeal period, when an appeal has been noticed or filed.[4] *See, e.g.*, *Griffin v. Ortiz*, 286 F. App'x 538, 540 (10th Cir. 2008) ("[Rule 60(b)(1)] cannot be used to raise legal error in a judgment when filed after the time for appeal has expired." (citing *Morris v. Adams-Millis Corp*., 758 F.2d 1352, 1358-60 (10th Cir. 1985))); *Eglinton v. Loyer*, 340 F.3d 311, 334 (6th Cir. 2003) ("We have held that 'reasonable time' under 60(b) means that if a reason to set aside the judgment is known within the time for filing notice of appeal, a motion should be brought under Rule 60(b)(1) during that period." (citing *Barrier v. Beaver*, 712 F.2d 231, 243-35 (6th Cir. 1983))); *Aziz v. Univ. of Arkansas*, 198 F.3d 249, 249 (8th Cir. 1999) (affirming the district court's denial of the movant's Rule 60(b)(1) motion in part because the motion alleged error that "could have been raised on appeal from the underlying judgment, [but] was not made within the [appeal period]"); *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 840-841 (11th Cir. 1982) (determining that a court may correct its judgment when controlling law has changed by granting relief pursuant to Rule 60(b)(1), even if the motion for relief upon reconsideration was filed after the appeal period, but only if a timely appeal has been filed); *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir.

---

[4]     Indeed, the court is not aware of any case in which a court has reconsidered its final judgment notwithstanding that the Rule 60(b)(1) movant filed its motion outside the appeal period and failed to file a timely appeal.

1981) (holding that a Rule 60(b)(1) motion filed on the basis of judicial "mistake" was untimely because it was filed outside of the appeal period, and noting that "[when] the time for appeal h[as] passed . . . the interest in finality must be given great weight"); *In re Texlon Corp.*, 596 F.2d 1092, 1100 (2d Cir. 1979) (holding that Rule 60(b)(1) encompassed judicial error only on the "very special facts" of the Supreme Court handing down a decision eleven days after the entry of judgment and where the movant filed a motion for reconsideration within the appeal period).[5]

Finally, the Supreme Court and the Circuit have expressed concern in allowing a party to reopen a judgment pursuant to Rule 60(b) if that party made a "free, calculated and deliberate" decision not to appeal or to voluntarily abandon an appeal.  *See Delta Foods Ltd. v. Republic of Ghana,* 265 F.3d 1068, 1071 (D.C. Cir. 2001) (asserting that "reopening a judgment under Rule 60(b) is precluded where the movant has voluntarily abandoned his appeal, and the only ground for the motion to reopen is an asserted later change in the judicial view of applicable law"[6] (quoting *Polites v. United States*, 364 U.S. 426, 431 (1960))); *id.* (denying relief under Rule 60(b) notwithstanding that only two months after the appeal period expired there had been a "'substantive change in the law' from which the moving party might benefit").  The Supreme Court specifically noted that its ruling in *Ackerman v. United States* carried "relevant and persuasive force" in determining whether Rule 60(b) relief is available in light of a change in controlling law when the moving party has not appealed.  *Polites v. United States*, 364 U.S. 426,

---

[5]     *But see Johnson v. Provident Bank/PCFS*, 2008 U.S. App. LEXIS 10234, at *8 (5th Cir. May 12, 2008) (holding that in considering a Rule 60(b) motion, the appeal period does not create a "per se outer boundary for what constitutes 'reasonable time' under Rule 60(c)").

[6]     Although the Circuit's decision in *Delta Food Ltd v. Republic of Ghana* does not reference a specific provision of Rule 60(b), the party had sought relief upon reconsideration because, as here, there had "been a substantive change in the law" that purportedly affected the judgment of the district court."  265 F.3d 1068, 1070 (D.C. Cir. 2001).

432 (1960) (citing *Ackerman v. United States*, 340 U.S. 193, 198 (1960)) (declining to ultimately determine whether "when an appeal has been abandoned or not taken because of a clearly applicable adverse rule of law, relief under Rule 60(b) is inflexibly to be withheld when there has later been a clear and authoritative change in governing law").  In turn, *Ackerman* emphasized that "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."  340 U.S. at 197.

The facts presented in the instant case are similar to those that the Eleventh Circuit confronted in *Parks v. U.S. Life & Credit Corp.*  677 F.2d 838.  In *Parks*, the district court had granted judgment to the plaintiff, and the defendant decided not to appeal.  *Id.* at 839.  Sometime thereafter, there was a change in the applicable law that would have proved extremely favorable for the defendant.  *Id.*  Less than a year after the district court had issued its judgment and after the appeal period had expired, the defendant moved for relief upon reconsideration pursuant to Rule 60(b)(1).  *Id.*  "The district court denied the motion acknowledging that a change in controlling case law may warrant relief under Rule 60(b)[(1)] but correctly holding that no controlling case law existed at the time of the original judgment."  *Id.*

The Eleventh Circuit affirmed, reasoning that a district court may properly reconsider its prior judgment and grant relief pursuant to a Rule 60(b) motion when a change of law occurs after the appeal period has expired if an appeal is pending.  *Id.* at 840 (explaining that "[j]udicial economy and common sense dictated filing a 60(b) motion before the trial court rather than arguing the new law before the appeals court" (quoting *Lairsey v. Advance Abrasives* Co., 542 F.2d 928 (5th Cir. 1976))).  But where no such appeal was pending, the Eleventh Circuit held that Rule 60(b)(1) does not provide for reconsideration simply because the legal landscape has changed within a year of the judgment.  *Id.* at 840-41.  Reasoning that the "strong interest in the

finality of litigation" demands such an outcome, the *Parks* Court explained that allowing

reconsideration under Rule 60(b)(1) for a change in controlling law would result in "chaos"

because "all judgments would not be final for a year," and a judgment's "enforceability would be

conditioned on no change in the law." *Id*.

Here, as in *Park*, the plaintiff failed to timely preserve its right of appeal.  The court's

final judgment in favor of the defendant was entered on January 12, 2011, triggering the 60-day

appeal period.  FED. R. APP. P. 4(a)(1)(B).  Consequently, the time to appeal the Order expired on

March 14, 2011.  *See* FED. R. CIV. P. 6(a)(1)(C) (noting that if the period to appeal closes on a

weekend day or holiday, the period continues to run until the end of the next day that is not a

Saturday, Sunday or legal holiday).  One week before the appeal period expired, on March 7,

2011, the Supreme Court issued its decision in *Milner v. Department of the Navy*, thereby

changing the law upon which the court had relied in granting summary judgment to DHS.  *See*

*Milner*, 131 S. Ct. at 1259.

Yet the plaintiff, despite knowing that *Milner* had been granted certiorari by the Supreme

Court, *see* Pl.'s Reply in Support of its Mot. for Summ. J. at 6-7 (discussing *Milner*, which at that

time was pending on the Supreme Court's docket), did not file its motion for relief upon

reconsideration until ten days after the appeal period closed, *see generally* Pl.'s Mot. for Recons.

Additionally, the plaintiff, for an unarticulated reason, chose not to file a timely appeal even as a

decision in *Milner* was on the horizon.  *See Ackerman*, 340 U.S. at 198 ("Petitioner cannot be

relieved of such a choice because hindsight seems to indicate to him that his decision not to

appeal was probably wrong, considering the outcome of [a later, favorable] case.  There must be

an end to litigation someday, and free, calculated, deliberate choices are not to be relieved

from.").  Such an appeal would have been a proper mechanism by which the plaintiff could have

raised its challenge based on a change in controlling law.[7]  *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 n.5 (D.C. Cir. 1992) (noting that intervening changes in law are among the "exceptional circumstances" warranting consideration for the first time on appeal); *Tinker Nat'l Bank v. Union Sav. Bank*, 400 F.2d 771, 772 (D.C. Cir. 1968) (remanding to district court for reconsideration based on intervening change in law).

Granting any reconsideration at this stage would allow for a *de facto* extension of the plaintiff's appeal period.  *See Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1358 (10th Cir. 1985) (noting that allowing a Rule 60(b)(1) motion outside of the appeal period would permit the motion to "serve as an appeal, which would be untimely otherwise").  In turn, allowing the plaintiff to artificially extend its appeal time period in this fashion would embrace an interpretation of the reasonable time limits for a Rule 60(b)(1) motion that would undermine the finality of the court's judgment and promote uncertainty.  *See Parks*, 677 F.2d at 840-41.  The court declines to adopt such an interpretation.

In sum, the court determines that a Rule 60(b)(1) motion brought due to a change in controlling law is timely only if either the movant has already filed an appeal or if the movant files its motion for relief within the appeal period.  *See Delta Foods Ltd,* 265 F.3d at 1071.

---

[7]    In addition not to filing a timely appeal, the court observes that the plaintiff did not move to stay its case pending a decision in *Milner*, even though it was aware that the decision was forthcoming.

Accordingly, the court denies the plaintiff's Rule 60(b)(1) motion as untimely.[8]

### c. The Plaintiff's Motion Was Not Properly Brought Under Rule 60(b)(6)

The plaintiff argues, as a last resort, that if the court were to determine that Rule 60(b)(1) is not an appropriate vehicle for relief, then relief is still appropriate under Rule 60(b)(6), which provides for relief from a judgment for "any . . . reason that justifies [such] relief." Pl.'s Reply at 6; *see also* FED. R. CIV. P. 60(b)(6). DHS disagrees, arguing that Rule 60(b)(6) is not an appropriate vehicle to bring the plaintiff's motion for reconsideration in the event that the court construes the plaintiff's motion as a Rule 60(b)(1) motion for relief. Def.'s Opp'n. at 11 n.5.

Rule 60(b)(6) is only available when "the motion . . . is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). Additionally, changes in case law that occur after a final judgment has been entered are generally not the type of "extraordinary circumstances" which warrant 60(b)(6) reconsideration. *Gonzalez v. Crosby*, 545 U.S. 524, 536-37 (2005) (holding that a change in statutory interpretation after petitioner's case was "no longer pending" was not sufficiently extraordinary to merit reconsideration under Rule 60(b)(6), especially because petitioner had failed to pursue his appeal); *Acree v. Republic of Iraq*, 2009 WL 1953503, at *1 (D.C. Cir. Feb. 17, 2009) (holding that a change in law effected by the Supreme Court after

---

[8]   The plaintiff does not appear to argue that its failure to file a timely Rule 60(b)(1) motion is the result of "excusable neglect," instead limiting its arguments to why relief is appropriate based on judicial "mistake." *See* Pl.'s Reply at 4. Nevertheless, for the sake of thoroughness, the court notes that "for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence," as opposed to "reasons beyond [the movant's] control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 393 (1993) (stating that "a party's failure to file on time for reasons beyond his or her control is not considered to constitute 'neglect'" under Rule 60(b)(1)). Thus, any argument by the plaintiff that it did not file a timely appeal or motion Rule 60(b)(1) as a result of excusable neglect cannot be based on the timing and substance of the Supreme Court decision in *Milner*, an event clearly not in the plaintiff's control. *See id.* Beyond noting *Milner*, the plaintiff provides no explanation for its failure to file a timely appeal or a timely motion for relief upon reconsideration, much less any reason which would constitute excusable neglect under Rule 60(b)(1). *See generally* Pl.'s Reply.

the Circuit had issued final judgment was not sufficiently extraordinary to warrant

reconsideration under Rule 60(b)(6)); *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007)

(vacating in part the district court's order because there were no "extraordinary circumstances"

existed). *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 54 (D.D.C. 2007) ("[I]f a change in law after a

judgment was rendered was grounds to vacate a final judgment, final judgments would cease to

exist.").

　　　As discussed herein, the plaintiff's motion was properly raised as a Rule 60(b)(1) motion.

*See supra* Part.III.A.2.b; *Volpe*, 520 F.2d at 453. Further, the change in law presented by *Milner*

is not considered an "extraordinary circumstance" under Rule 60(b)(6). *See Acree v. Republic of

Iraq*, 2009 WL 1953503, at *1. Thus, the court determines that the plaintiff's may not seek relief

upon reconsideration under Rule 60(b)(6).

### B.　The Court Grants in Part and Denies in Part the Plaintiff's
### Motion for Attorney's Fees

### 1.　Legal Standard for Attorney's Fees and Costs under FOIA

　　　Pursuant to 5 U.S.C. § 552(a)(4)(E)(i), the court may assess "reasonable attorneys fees

and other litigation costs reasonably incurred in any case . . . in which the complainant has

substantially prevailed." To award attorney's fees under FOIA, a court must undertake a two-

step inquiry. First, the court must determine whether the claimant is eligible for attorney's fees.

*Pyramid Lake Paiute Tribe v. U.S. Dep't of Justice*, 750 F.2d 117, 119 (D.C. Cir. 1984). To be

eligible for fees, the claimant must "substantially prevail" in the underlying FOIA litigation. *Id.*

A party may "substantially prevail" by either obtaining relief through "a judicial order, or an

enforceable written agreement or consent decree," 5 U.S.C. § 552(a)(4)(E)(ii)(I), or by eliciting a

"voluntary or unilateral change in position by the agency, if the complainant's claim is not

insubstantial," *id.* § 552(a)(4)(E)(ii)(II). Thus, "[a]n agency cannot foreclose an award of

attorney's fees and costs by complying with a FOIA request during the pendency of litigation."
*Md. Dep't of Human Res. v. Sullivan*, 738 F. Supp. 555, 563 (D.D.C. 1990).

Second, the court must determine that the plaintiff is "entitled" to an award of attorney's

fees and costs. *See id.* In deciding whether a claimant is entitled to an award of attorney's fees

and costs, the court analyzes four factors: "(1) the benefit to the public, if any, derived from the

case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest

in the records sought; and (4) whether the government's withholding of the records had a

reasonable basis in law." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364 (D.C. Cir. 1977). The second

and third factors "are closely related and are often evaluated together." *Sullivan*, 738 F. Supp. at

563 n.11 (citing *Fenster v. Brown*, 617 F.2d 740, 743 (D.C. Cir. 1979)). "None of these factors

are dispositive," *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 20 (D.D.C. 2004), and

"[e]ntitlement is at the discretion of the district court," *Sullivan*, 738 F. Supp. at 565.

### 2. The Plaintiff Substantially Prevailed in Its FOIA Suit

The plaintiff asserts that it is eligible for attorney's fees because it has "substantially

prevailed" under FOIA. Pl.'s Mot. for Atty's Fees at 5. More specifically, the plaintiff contends

that this lawsuit caused DHS to release documents during the pendency of litigation that it had

previously withheld without a reasonable legal basis. *Id.* at 7. DHS does not reject the plaintiff's

claim that it substantially prevailed, and instead argues that even if the plaintiff is eligible for

fees, it is not "entitled" to them, as discussed below. Def.'s Atty's Fees Opp'n at 8; *see infra*

Part III.B.3.

In order for a court to award attorney's fees, it must first determine that a plaintiff is

eligible for fees because it has "substantially prevailed" in its suit. 5 U.S.C. § 552(a)(4)(E)(ii)(II).

One way in which a plaintiff may "substantially prevail" is if its lawsuit elicits a "voluntary or

unilateral change in position by the agency." *Id.*  The key question under this "catalyst theory" is whether "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981).  Although "the mere filing of the complaint and the subsequent release of documents is insufficient to establish causation," *Weisburg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984), "it is certainly a salient factor" in the analysis, *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 2009 WL 1743757, at *3 (D.D.C. 2009).  If, however, "rather than the threat of an adverse court order . . . an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit." *Church of Scientology of Cal.*, 653 F.2d at 587.

Here, the plaintiff's lawsuit has clearly elicited a "voluntary or unilateral change in [DHS's] position."  5 U.S.C. § 552(a)(4)(E)(ii)(II).  The plaintiff filed its two FOIA requests with TSA on April 14, 2009 and July 2, 2009, respectively.  Pl.'s Mot. for Atty's Fees at 2.  Yet it was not until the plaintiff filed suit in this court on November 5, 2009, that TSA finally produced its first responsive disclosure on December 1, 2009, with the release of hundreds of pages of non-exempt documents to follow.  *Id.* at 4.  Indeed, DHS does not dispute that it failed to disclose responsive records to the plaintiff prior to the commencement of this litigation, and it does not claim to have conducted any substantive searches for records prior to the commencement of litigation.  *See generally* Def.'s Atty's Fees Opp'n.  Nor did DHS seek to take advantage of the statutory mechanisms available to extend its response time.  *See* 5 U.S.C. § 552(a)(6)(B)(i) (providing for an extension for "unusual circumstances").  Although DHS has subsequently shown that a portion of the records in its possession were properly withheld from

the plaintiff pursuant to then-valid FOIA exemption categories, *see* Mem. Op. (Jan. 12, 2011) at

15, it has not made a similar showing for the approximately 1,766 pages of non-exempt

documents ultimately produced to the plaintiff during this litigation, *see generally* Def.'s Atty's

Fees Opp'n.

Similarly, although DHS alleges in its opposition that its failure to disclose non-exempt

documents was due to "backlog as well as administrative error," Def.'s Atty's Fees Opp'n at 10,

these generic statements – without any evidence demonstrating that a backlog existed or that the

agency performed its due diligence in processing the plaintiff's FOIA requests – are insufficient

to show that DHS experienced "unavoidable delay" despite "due diligence in the administrative

process," *Church of Scientology of Cal.*, 653 F.2d at 588.[9]  Given DHS's long record of non-

compliance to the plaintiff's FOIA requests, followed by DHS's disclosure of a substantial

quantity of non-exempt records in response to this suit, the court concludes that the plaintiff

obtained relief with regard to the non-exempt records by catalyzing a voluntary change in DHS's

conduct.  The plaintiff has thus "substantially prevailed" and is eligible for attorney's fees.  *See,*

*e.g.*, *Judicial Watch, Inc.*, 2009 WL 1743757, at *9 (D.D.C. 2009) (awarding fees based on the

catalyst theory of recovery).  Accordingly, the court turns to inquire as to whether the plaintiff is

entitled to attorney's fees and costs under FOIA.

---

[9]     *Cf. Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 322 (D.D.C. 2011) (holding that
the plaintiff did not substantially prevail because the defendant agency had conducted multiple
searches and several substantive rounds of document review and referral prior to the
commencement of the suit); *Lovell v. Dep't of Justice*, 589 F. Supp. 150, 154 (1984) (holding that
detailed documentation of the defendant agency's search revealed that its delay in responding to
the FOIA request was due to "unavoidable delay accompanied by due diligence in the
administrative process" and that it did not "ignore" or "negligently fail" to respond to the
plaintiff's inquiries).

### 3.  The Plaintiff is Entitled to Attorney's Fees

### a.  Public Benefit

The plaintiff claims that the public benefitted from its FOIA requests because the

materials released by DHS in the course of this litigation received media coverage, thereby

providing citizens with useful information for making vital political choices.  Pl.'s Mot. for

Atty's Fees at 6.  DHS responds that the materials released during this litigation were largely

already in the public domain and thus were not of public benefit.[10]  Def.'s Atty's Fees Opp'n at 9.

The "public benefit" factor supports an award of attorney's fees if the complainant's

victory is "likely to add to the fund of information that citizens may use in making vital political

choices."  *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995).  Examples of FOIA

disclosures that courts have held as having conferred a public benefit include disclosures that

"br[ought] into question the practices and policies of the U.S. Customs Service with respect to

the seizure of counterfeit goods," *Playboy Enters. v. U.S. Customs Serv.*, 959 F. Supp. 11, 16

(D.D.C. 1997), or that caused the dissemination of information relating to the government's

Terrorist Surveillance Program, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 2011 WL 1195789,

at *1 (D.D.C. 2011).  Although the court must consider "the extent to which the information

released is already in the public domain," *Nw. Coal. for Alternatives to Pesticides v. Browner*,

965 F. Supp. 59, 64 (D.D.C. 1997), it is "only material that has met a threshold level of public

---

[10]     DHS also alleges that the plaintiff has not complied with Local Civil Rule 7(m)'s "meet and
confer" requirement.  Def.'s Atty's Fees Opp'n at 5.  The plaintiff responds that Local Civil Rule
7(m) is inapplicable to requests for statutory attorney's fees, Mot. for Leave to File Am. Mot. for
Fees at 2, but it has nevertheless filed a motion for leave to amend its motion for attorney's fees
to include a statement of compliance with Rule 7(m) for the sake of "encourag[ing] the efficient
adjudication of [its] fee request on the merits."  *Id.* at 1.  Because Local Civil Rule 7(m) is
inapplicable in the limited context of requests for statutory attorney's fees, *see Tripoli Rocketry
Ass'n v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 698 F. Supp. 2d 168, 173 (D.D.C.
2010), the court denies the plaintiff's motion for leave to amend its motion for attorney's fees as
moot.

dissemination [that] will not further public understanding within the meaning of [FOIA],"

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998) (internal citations omitted).

The records disclosed to the plaintiff in the course of this litigation have provided a

public benefit in that they were covered extensively in the news and cited frequently as a news

source during the public debate surrounding the use of whole body imaging devices in airports.

*See, e.g.*, Jeffrey Rosen, *Why the TSA Pat-Downs and Body Scans are Unconstitutional*, WASH.

POST, Nov. 28, 2010,

http://www.washingtonpost.com/wpdyn/content/article/2010/11/24/xAR2010112404510.html;

Matthew L. Wald, *Mixed Signals on Airport Scanners*, N.Y. TIMES, Jan. 12, 2010,

http://www.nytimes.com/2010/01/13/us/13scanners.html.  While DHS notes that a portion of the

records obtained by the plaintiff had already been published in the public realm before the

litigation, Def.'s Atty's Fees Opp'n at 9, the plaintiff explains that those records which had not

yet been disclosed contained a great quantity of additional information that is significant to the

public, including information relating to the body scanning machines' capacity to transfer images,

information relating to the machines' programming security and information relating to the

machines' adjustable privacy levels, *see* Pl.'s Atty's Fees Reply at 7-8.  Thus, the court holds

that the records released in the course of this litigation has "further[ed] public understanding,"

*Campbell*, 164 F.3d at 36, in that the thrust of the information obtained by the plaintiff is "likely

to add to the fund of information that citizens may use in making vital political choices," *Cotton*,

63 F.3d at 1120.[11]

### b. Commercial Benefit and Nature of Interest

The plaintiff asserts that it is not a commercial actor within the meaning of FOIA and that

it did not seek records from DHS for commercial benefit.  Pl.'s Mot. for Atty's Fees at 7.

Instead, it argues that the nature of its interest is "scholarly" and "journalistic," weighing in favor

of a fee award.  *Id.*  DHS does not directly challenge these assertions.  Def.'s Atty's Fees Opp'n

at 8 ("Defendant also assumes arguendo that the "commercial benefit" and "nature of the

complainant's interest" prongs likely favor EPIC.").

In analyzing a motion for attorney's fees, the commercial benefit to the complainant and

the nature of the complainant's interest in the records sought are factors that "are closely related

and often considered together."  *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C.

Cir. 1992).  When a litigant seeks records for commercial benefit, "an award of attorney's fees is

generally inappropriate."  *Id.*  Fee recovery is often appropriate, however, when the plaintiff is a

nonprofit public interest group.  *Alliance for Responsible CFC Policy, Inc. v. Costle*, 631 F. Supp.

1469, 1471 (D.D.C. 1986) (citing S.Rep. No. 854, 93rd Cong., 2d Sess. 19 (1974)).  Additionally,

"FOIA suits which are motivated by scholarly, journalistic, or public interest concerns are the

proper recipients of fee awards."  *See Tax Analysts v. U.S. Dep't of Justice*, 759 F. Supp. 28, 30

(D.D.C. 1991), *aff'd*, 965 F.2d 1092 (1992).

---

[11]    The public debate surrounding the use of body scanner technology in airports has sparked
attention not only in the media, *see, e.g.*, Alex Altman, *TSA Scrambles to Combat the Outcry
Over Body Scanning*, TIME, Nov. 23, 2010,
http://www.time.com/time/nation/article/0,8599,2032786,00.html; Alexa Halsey III and Derek
Kravitz, *Protests of TSA Airport Pat-Downs, Body Scanners Don't Delay Thanksgiving Travel*,
WASH. POST, Nov. 25, 2010, http://www.washingtonpost.com/
wp-dyn/content/article/2010/11/24/AR2010112406989.html, but also in Congress, *see* H.R. Rep.
No. 112-128, pt. II (2011) (discussing Subcommittee on National Security, Homeland Defense
and Foreign Operations hearing entitled "TSA Oversight Part I:  Whole Body Imaging" held
March 16, 2011).

As the plaintiff argues (and DHS does not rebut), the plaintiff is a "501(c)(3) non-profit public interest research center . . . [that] derived no commercial benefit from its FOIA request or lawsuit." Pl.'s Mot. for Atty's Fees at 7. Its aims, which include dissemination of information regarding privacy issues to the public, Compl. ¶ 3 (Nov. 5, 2009), fall within the scholarly and public-interest oriented goals promoted by FOIA, *Tax Analysts*, 759 F. Supp. at 30. Thus, the "commercial benefit" and "nature of interest" elements weigh in favor of granting the plaintiff's motion for attorney's fees.

### c. Reasonable Basis in Law for Withholding

The plaintiff claims that DHS had no reasonable legal basis for withholding the documents that it ultimately released in the course of litigation. Pl.'s Mot. for Atty's Fees at 7. DHS responds that TSA did not "withhold" documents within the meaning of FOIA's fees provision, but rather, that there was a delay in releasing records due to administrative error and a backlog of requests. Def.'s Atty's Fees Opp'n at 9. DHS further alleges that the plaintiff cannot recover fees absent a showing of bad faith in withholding by the agency. *Id.*

In deciding whether a plaintiff is entitled to attorney's fees, the court must consider whether the agency's opposition to disclosure "had a reasonable basis in law" and whether "the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy v. Cent. Intelligence Agency*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (quoting *La Salle Extension Univ. v. Federal Trade Comm'n*, 627 F.2d 481 (D.C. Cir. 1980)). "The question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Id.* at 1163. It is insufficient for an agency simply to claim that if "offered no resistance" and quickly responded

to a FOIA request upon being subjected to suit.  *Davy*, 550 F.3d at 1163; *see also Judicial Watch, Inc.*, 2009 WL 1743757, at *6 (awarding fees because the defendant agency gave no response to the plaintiff for three months leading up to litigation and then released documents one day before its responsive pleading was due).  As the Circuit has explained, FOIA's fee provision is intended to incentivize the government to "promptly turn over – before litigation is required – any documents that it ought not withhold.  That purpose will be ill-served if the government can prevail on [the reasonable basis] factor by saying nothing and forcing the requester to sue, only then to offer 'no resistance.'"  *Davy*, 550 F.3d at 1165.

In this case, beyond participating in an early conference call to discuss the scope of the plaintiff's requests, DHS did not provide the plaintiff with any information concerning the status of its FOIA requests.  *See* Def.'s Atty's Fees Opp'n at 10.  This lack of communication by DHS continued even through the administrative appeal process.  Pl.'s Atty's Fees Reply at 12.  At no point did DHS inform the plaintiff of an administrative backlog or seek to take advantage of statutory mechanisms by which it could extend its time to respond to the FOIA requests.  *See generally* Def.'s Atty's Fees Opp'n; *see also* 5 U.S.C. § 552(a)(6)(B)(i) (providing for an extension for "unusual circumstances").  Further, DHS has not shown that it acted pursuant to the law when it initially withheld the hundreds of pages of documents that were ultimately produced to the plaintiff in the course of this litigation.[12]  *See generally* Def.'s Atty's Fees Opp'n.  Thus, because DHS's administrative delay and a generic claim of a FOIA backlog do not form a

---

[12]     The "reasonable basis in law" factor may be dispositive in cases where the court grants summary judgment.  *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 521 (D.C. Cir. 2011) (citing *Davy*, 550 F.3d at 1162).  Although DHS did have a "reasonable basis in law" to withhold some records, specifically, those for which the court granted it summary judgment, *see* Mem. Op. (Jan. 12, 2011) at 15, DHS does not argue that the records it ultimately disclosed to the plaintiff were withheld for reasons that could withstand summary judgment, *see generally* Def.'s Atty's Fees Opp'n.

"reasonable basis in law" for withholding in these circumstances, *see Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985) ("FOIA does not contain a statutory exception for administrative inefficiency."); *see also Bricker v. FBI*, 54 F. Supp. 2d 1, 4 (D.D.C. 1999) ("[A]gencies should not be allowed to hide behind the FOIA backlog."), and because DHS has not provided any other reasonable basis in the law for its failure to respond to the plaintiff's two FOIA requests, the court determines that this factor also weighs in favor of granting the plaintiff's motion for attorney's fees.

In sum, each of the four factors relevant to an attorney's fees analysis – the public benefit derived from the case, the commercial benefit to the complainant, the nature of the complainant's interest and whether the agency's withholding of records had a reasonable basis in the law – weighs in favor of the plaintiff.  Accordingly, the court determines that the plaintiff is entitled to an award of attorney's fees under FOIA.

### 4. Reasonable Award

### a. Base Fee (Lodestar) Calculation

The plaintiff requests costs and fees in the amount of $28,224.50.  Pl.'s Mot. for Atty's Fees at 8.  As a part of this calculation, the plaintiff requests "fees on fees," or fees for the time it spent litigating to obtain attorney's fees.  Pl.'s Mot. for Atty's Fees at 13.  The plaintiff grounds its base fee calculation in the *Laffey* Matrix, *id.* at 10, a schedule of hourly rates based predominantly on an attorney's years of experience that is used frequently in this jurisdiction to calculate "reasonable" attorney's fees, *Covington v. District of Columbia*, 57 F.3d 1101, 1105, 1109 (D.C. Cir. 1995).

DHS contends that the plaintiff improperly calculated its fees by including fees that are related to its failed motions and to its review of records that were produced by DHS in the course

of litigation. Def.'s Atty's Fees Opp'n at 18-23. Additionally, DHS contends that the plaintiff applied improper billing rates by including invoices for an individual who had not yet been admitted to practice law, and by applying 2010-2011 rates to all of the work performed, despite the fact that much of the relevant work was performed in 2009. *Id.* at 15-18. DHS also claims that the plaintiff billed for more than the appropriate amount for its preparation of its initial complaints. *Id.* at 23-26. Lastly, DHS objects to the plaintiff's request for fees on fees, noting that the question of whether such fees are available in FOIA cases is still an unresolved legal question. *Id.* at 27.

Upon finding that a plaintiff is both eligible and entitled under FOIA, a court must analyze whether the amount of the fee request is reasonable. *Heard v. District of Columbia*, 2006 WL 2568013, at *18 (D.D.C. Sept. 5, 2006). This reasonableness requirement applies equally to fees accrued during litigation of the underlying claim and to fees accrued during litigation of attorney's fees. *See Sierra Club v. Envtl. Prot. Agency*, 769 F.2d 796, 808 (D.C. Cir. 1985) (holding that hours "reasonably expended" in preparing a fee petition are compensable). Indeed, it is a common practice in this jurisdiction to award fees on fees in FOIA cases. *See, e.g.*, *Heard*, 2006 WL 2568013, at *19; *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Veteran Affairs*, 1999 WL 33740260, at *2 (D.D.C. Apr. 13, 1999).

A reasonable attorney's fees award is determined by calculating the "lodestar" amount, which is the number of hours reasonably worked multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Public interest attorneys may be awarded fees according to the prevailing market rates in the community, *Blum v. Stenson*, 465 U.S. 886, 886 (1984), and the Circuit has held that the "use of the broad *Laffey* Matrix may be by default the most accurate evidence of a reasonable hourly rate," *Covington*, 57 F.3d at 1114 n.5. An appropriate award of

attorney's fees against the government is generally calculated based on billing rates at the time that work was performed, as opposed to the time of the fee award. *Nw. Coal. for Alternatives to Pesticides*, 965 F. Supp. at 66. Additionally, work performed during the pre-litigation administrative phase of a FOIA request is not recoverable under FOIA. *Id.* at 65 (holding that work performed prior to filing of the complaint was not compensable); *Newport Aeronautical Sales v. Dep't of the Navy*, 1985 U.S. Dist. LEXIS 20679, at *10 (D.D.C. Apr. 16,1985) (stating that FOIA "only provides for the recovery of fees for services rendered in litigation" and "precludes an award of fees for services rendered at an administrative level").

In assessing whether an attorney's billed hours have been reasonably expended, courts must verify that the attorneys did not "waste or otherwise unnecessarily spend time on the matter," *In re Donovan*, 877 F.2d 982, 990 (D.C. Cir. 1989), and exercised good "billing judgment," *Hensley*, 461 U.S. at 434. Furthermore, when assessing fees for time spent preparing fee petitions, "courts have an obligation to scrutinize the hours spent preparing the fee petitions to insure that the total [amount]. . . does not represent a windfall for the attorneys." *Heard*, 2006 WL 2568013, at *19 (internal citations omitted).

Finally, a court should deny fees for time unsuccessfully expended when "the plaintiff has failed to prevail on a claim that is distinct in all respects from [its] successful claims." *Id.* at 440. Thus, where the claims asserted are "truly fractionable," *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1328 n.13 (D.C. Cir. 1982) (citing *Copeland v. Marshall*, 641 F.2d 880, 892 n.18 (D.C. Cir. 1980)), the court will not compensate for "nonproductive time or for time expended on issues on which [the] plaintiff ultimately did not prevail," *see Weisburg*, 745 F.2d at 1499 (reversing because, *inter alia*, the district court had failed to consider appropriate reductions for unsuccessful motions). But "[w]here a lawsuit

consists of related claims," *Weisburg*, 745 F.2d at 1499, such that they were "part and parcel of one matter," *Copeland*, 641 F.2d at 892 n.18, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised," *Weisburg*, 745 F.2d at 1499.  In that type of situation, the court must focus on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* at 435.

As an initial matter, the court notes that both parties have effectively assented to the use of the *Laffey* Matrix as an appropriate baseline for any fee award.  Pl.'s Mot. for Atty's Fees at 10; Def.'s Atty's Fees Opp'n at 11.  Thus, the court will apply the *Laffey* Matrix rates that correspond to the dates that the relevant work was performed.  *See Nw. Coal. for Alternatives to Pesticides*, 965 F. Supp. at 66 ("Attorneys' fees awarded against the United States government must be based on the prevailing market rates at the time the services were *performed*." (emphasis in original)).  Further, because the plaintiff does not refute that one of its attorneys, Ms. Ginger McCall, conducted work on this litigation prior to her admittance to the bar, the court applies the "paralegal/clerk" *Laffey* rate to this time.  *See, e.g.*, *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 175 (D.D.C. 2010) (concluding that a paralegal rate was adequate compensation for a recent law graduate who had not yet been admitted to the bar).

Additionally, the court concludes that the plaintiff's request for attorney's fees warrants a reduction due to several instances of duplicative or excessive billing.  Specifically, both Mr. John Verdi and Ms. McCall attended the complaint filing, a task for which only one attorney was required.  *See* Pl.'s Mot. for Atty's Fees, Exs. 3, 1:7; 4, 1:14.  Further, because both complaints in this case consist largely of boilerplate language and an uncomplicated factual history, the court concludes that twenty hours spent between them is unreasonable.  *See generally* Compl.;

*Elec. Privacy Info Ctr. v. Dep't of Homeland Sec.*, Civ. No. 10-cv-63 (D.D.C. Jan. 13, 2010) (Compl.).  Thus, the court declines to compensate the plaintiff for the hour that Ms. McCall spent filing the complaint, and for two of the approximately eight hours that Ms. McCall spent reviewing sample complaints and drafting the two complaints in this case.  *See* Pl.'s Mot. for Atty's Fees, Ex. 4 at 1.

Next, the court considers DHS's assertion that the plaintiff should be denied fees for its failed default judgment and summary judgment motions.  Def.'s Atty's Fees Opp'n at 18-19.  As noted above, the court will deny fees for a claim on which the plaintiff did not prevail so long as that claim is fractionable from its successful claims, *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1328 n.13, and it will not award fees for "nonproductive time," *see Weisburg*, 745 F.2d at 1499.

The plaintiff's motion for summary judgment was unsuccessful, as it did not lead to the release of any withheld records.  Mem. Op. (Jan. 11, 2011) at 15 (granting DHS's motion for summary judgment and denying the plaintiff's cross-motion for summary judgment because all contested records were properly withheld by DHS); *see also Weisburg*, 745 F.2d at 1499 (reversing for fee reductions to account for unsuccessful motions).  Because the plaintiff's unsuccessful motion for summary judgment can be reasonably separated from the portion of the litigation that catalyzed the release of responsive records, and because the plaintiff's time spent on that motion was unproductive, the court will not award fees related to the summary judgment litigation.  Thus, the court declines to compensate the plaintiff for the 3.5 hours spent by Mr. Verdi opposing DHS's motion for summary judgment and cross-moving for summary judgment, and for the eight hours spent by Ms. McCall on the same.

With respect to the plaintiff's request for fees associated with its motion for default judgment, the court notes that the plaintiff requests fees for the preparation of both its affidavit in support of default and the actual motion for default judgment.  Pl.'s Mot. for Atty's Fees, Ex. 3 at 1; *id.*, Ex. 4 at 19-20.  Although the plaintiff's affidavit for entry of default did not ultimately result in the entry of default, it may have encouraged DHS to release its records.  Indeed, DHS's final disclosure did not occur until April 15, 2010, approximately three months after the plaintiff filed its affidavit for default.  *See* Def.'s Mot. for Summ. J., Decl. of Kevin J. Janet, FOIA Officer for the TSA ¶ 14; Pl.'s Aff. for Entry of Default (Jan. 8, 2010).  Because the plaintiff's affidavit for entry of default predated DHS's final responsive disclosures, the court is persuaded that the half-hour invested in it cannot be reasonably segregated from the hours spent by the plaintiff that led it to "substantially prevail" in its action.  *See* Pl.'s Mot. for Atty's Fees, Ex. 3 at 1; *cf. Weisburg*, 745 F.2d at 1499 (suggesting that the district court should have reduced fees in light of the "numerous nonproductive and repetitive motions on issues which he ultimately did not prevail").

Turning to the plaintiff's request for fees associated with its motion for default judgment, the court notes that default was never entered because the defendant immediately showed good cause for its failure to file a timely answer.  *See* Minute Order (Aug. 10, 2010).  The plaintiff therefore never filed its motion for default judgment, notwithstanding that it had expended billable time in preparing this motion.  Because the court must not award fees for unnecessary work, *In re Donovan*, 877 F.2d 990, the court declines to award fees for this motion (specifically, the 7.4 hours reportedly spent by Mr. Verdi and Ms. McCall drafting, revising, and reviewing this motion).  The court does, however, award the plaintiff fees for the 5.7 hours that it spent

defending its affidavit for entry of default and responding to DHS's motion to file an untimely answer.  *See* Pl.'s Mot. for Atty's Fees, Ex. 3 at 1; *id.*, Ex. 4 at 1.

Next, the court considers whether the plaintiff may be compensated for reviewing documents released by DHS during the course of litigation that were responsive to its FOIA requests.  The defendant argues that had this document review been conducted during the administrative phase of litigation, this time would not have been recoverable and therefore should not be awarded at this stage either.  Def.'s Atty's Fees Opp'n at 22-23.  Although work performed during administrative proceedings prior to litigation is not recoverable under FOIA, *Nw. Coal. for Alternatives to Pesticides*, 965 F. Supp. at 65, it does not follow that reviewing documents during the course of active litigation is necessarily part of such an administrative process.  Indeed, it would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation.  The court thus awards fees related to the plaintiff's review of DHS's disclosures.

Finally, the court considers the plaintiff's request for fees associated with the approximately twenty-two hours that it spent preparing and defending its motion for attorney's fees.  As previously noted, hours "reasonably expended" in preparing a fee petition are compensable.  *See Sierra Club*, 769 F.2d at 808.  Because the court determines, upon close scrutiny of the record, that the hours spent by the plaintiff on these tasks were reasonably expended and do not constitute a "windfall" for the attorneys, the court will award "fees on fees." *See Heard*, 2006 WL 2568013, at *19.

#### b. Fee Enhancements and Reductions

Both parties propose either discretionary enhancements or reductions to the lodestar amount. The plaintiff requests a 20 percent enhancement of the lodestar in light of its "unique expertise in litigating FOIA cases" and its "unusually exhaustive administrative filings." Pl.'s Mot. for Atty's Fees at 10-11. DHS objects to any such increase, arguing that the *Laffey* Matrix already accounts for expertise by assigning higher rates for attorneys with more experience, and that, in any event, no special expertise was required to litigate this case. Def.'s Atty's Fees Opp'n at 12-15. DHS further asserts that an enhancement based on the administrative filings is inappropriate because exhaustion of administrative remedies is a prerequisite to filing a FOIA suit. *Id.* at 14-15. Finally, DHS argues that the plaintiff's fee request was unreasonable and that the court should reduce any award by 50 percent to discourage excessive requests. *Id.* at 30.

Once a lodestar amount has been calculated, courts have discretion to adjust the fee award upward or downward. *Hensley*, 461 U.S. at 424, 433-34. Examples of cases in which upward enhancements may be appropriate include cases in which "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted," or in "extraordinary circumstances in which an attorney's performance involves an exceptional delay in the payment of fees." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673-75 (2010). Upward enhancements may also be appropriate when "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value." *Id.* As a general matter, however, courts only award higher rates to account for lawyers whose specialty "require[es] technical or other education outside the field of American law." *Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 191-92 (D.D.C. 2007) (citing *Waterman Steamship Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119, 1124 (D.C. Cir. 1990)); *see also Vollmer*, 102 F.3d at

598 ("[I]f expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing . . . law in technical fields would be entitled to fee enhancements.").

By contrast, reductions in the lodestar amount may be appropriate when a party requests "outrageously unreasonable" attorney's fees. *Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)).  Indeed, courts have discretion in such circumstances to completely deny a fee award in order to deter parties from making "unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Id.*  If a party has less egregiously overbilled, courts may "impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been." *Id.* (citing *Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981)).

In this case, any expertise that the plaintiff's attorneys have in FOIA litigation appears to have resulted from "experience, not from specialized training," and thus a fee enhancement is not warranted. *In re Sealed Case 00-5116*, 254 F.3d at 235-36.  The *Laffey* Matrix rates have been consistently upheld as reasonable, *Covington*, 57 F.3d at 1114 n.5, and incorporate higher fees for greater experience, *Nw. Coal. for Alternatives to Pesticides*, 965 F. Supp. at 65 n.4, and would therefore compensate the plaintiff sufficiently in this case.  The court therefore declines to award a fee enhancement to the plaintiff's attorneys for their asserted expertise in FOIA litigation.

With regard to the plaintiff's argument that its "unusually exhaustive administrative filings" make it eligible for a fee enhancement, Pl.'s Mot. for Atty's Fees at 10-11, the court notes that work performed at the administrative level is not compensable under FOIA, *Nw. Coal.*

*for Alternatives to Pesticides*, 965 F. Supp. at 65.  Accordingly, the plaintiff's request for a 20 percent increase in fees is denied.

The court similarly declines DHS's request to reduce the plaintiff's award by 50 percent. Any deficiencies that the court has noted in the plaintiff's fee request have not rendered the plaintiff's request "outrageously unreasonable."  *Cf. Envtl. Def. Fund*, 1 F.3d at 1259 (denying fees billed by one attorney because she had spent an "outrageously excessive amount of time" on certain tasks, including billing over three hours on a task that should take one half hour, billing 31.3 hours for the preparation of a one-and-one-half page letter containing no detailed legal analysis, and spending almost a full work day "reviewing" a five-page draft motion).  After carefully reviewing the invoices submitted by the plaintiff, the court concludes that the plaintiff's fee request in this case does not approach a level of impropriety that would prompt the court to further reduce the plaintiff's attorney's fee award.

### 5.  Fee Award Summary

In summary, the court holds that the plaintiff is entitled to $21,482.00 in fees and costs, as detailed in the chart below.  DHS shall pay this full amount to the plaintiff within 60 days of the date of the Order accompanying this Memorandum Opinion.

| Item | Fee |
|------|-----|
| Litigation Fees, Marc Rotenberg, 2009 – 2010<br>($465 x 2.7 hours) | $1,255.50 |
| Litigation Fees, Marc Rotenberg  2010 – 2011<br>($475 x 3.5 hours) | $1,662.50 |
| Litigation Fees, John Verdi, 2009 – 2010<br>($330 x 19.9 hours) | $6,567.00 |
| Litigation Fees, John Verdi, 2010 – 2011<br>($335 x 3.6 hours) | $1,206.00 |
| Litigation Fees, Ginger McCall, 2009 – 2010 (Law Clerk)<br>($130 x 8.3 hours) | $1,079.00 |
| Litigation Fees, Ginger McCall, 2009 – 2010 (Attorney)<br>($225 x 23.8 hours) | $5,355.00 |
| Litigation Fees, Ginger McCall, 2010-2011<br>($230 x 15.9 hours) | $3,657.00 |
| Costs<br>    Filing Fee, Complaint filed November 5, 2009<br>    Filing Fee, Complaint filed January 13, 2010 | $700.00 |
| **Total:** | **$21,482.00** |

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for relief upon reconsideration.  The court also denies in part and grants in part the plaintiff's motion for attorney's fees and denies as moot the plaintiff's motion for leave to amend its motion for attorney's fees.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 12th day of September, 2011.

RICARDO M. URBINA
United States District Court Judge